GARTH T. VINCENT (SBN 146574)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702
Email: *garth.vincent@mto.com*

AMY TOVAR (SBN 230370)
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, CA  94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077
Email: *amy.tovar@mto.com*

Attorneys for Defendants
KAM HING ENTERPRISES, INC.; SUNHAM HOME
FASHIONS, LLC; HOWARD YUNG; and ARTHUR
COURBANOU

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| E&E CO., LTD., A California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KAM HING ENTERPRISES, INC.; SUNHAM HOME FASHIONS, LLC; JJ INTERNATIONAL TRADING COMPANY; HOWARD YUNG, ARTHUR COURBANOU; and DOES 1-100, inclusive,<br><br>Defendants. | CASE NO.  3:08-CV-00871-MMC<br><br>DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(B)(6) AND 12(B)(2) AND TO STRIKE IMPROPER PRAYER FOR RELIEF PURSUANT TO FED. R. CIV. PROC. 12(F); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>[Declarations of Howard Yung and Arthur Courbanou in Support of Motion to Dismiss Pursuant to 12(b)(2) and Request for Judicial Notice filed concurrently herewith]<br><br>DATE:  April 11, 2008<br><br>TIME:  9:00 a.m.<br><br>CTRM:  7 |

MOTION TO DISMISS & STRIKE
3:08-CV-000871

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on April 11, 2008 at 9:00 a.m., Defendants Kam Hing Enterprises, Inc., Sunham Home Fashions, LLC, Howard Yung, and Arthur Courbanou ("Defendants") will and hereby do move the Court for:

[1]    An Order dismissing with prejudice Plaintiff's First Cause of Action – for "Unfair Competition" under California Business & Professions Code § 17200 – pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that the cause of action fails to state a claim upon which the Court may grant Plaintiff relief;

[2]    An Order striking from Plaintiff's First Cause of Action its prayer for "restitution and/or disgorgement," pursuant to Federal Rule of Civil Procedure (12)(f), on the ground that Plaintiff cannot recover these remedies as a matter of law;

[3]    An Order dismissing with prejudice Plaintiff's Second Cause of Action – for "Restraint of Trade" under California Business & Professions Code §§ 16720 *et seq.* – pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that the cause of action fails to state a claim upon which the Court may grant Plaintiff relief;

[4]    An Order dismissing with prejudice Plaintiff's First and Second Causes of Action as to Defendants Howard Yung and Arthur Courbanou pursuant to Federal Rule of Civil Procedure 12(b)(2), on the ground that this Court lacks personal jurisdiction over them.

This Motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declarations of Howard Yung and Arthur Courbanou, Request for Judicial Notice, and Proposed Order that are being filed concurrently with this Motion; all pleadings and documents on file in this action; and such other materials that the Court may properly consider prior to deciding this Motion.

4609919.1

MOTION TO DISMISS & STRIKE
3:08-CV-000871

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 3

II.   FACTUAL BACKGROUND .............................................................. 5

III.  ARGUMENT ...................................................................................... 7

A.    The Complaint Cannot Survive A Motion To Dismiss Without Facts That Plausibly Support A Claim For Relief .................................................... 7

B.    E&E Fails To Plead A Cartwright Act Violation Based On Exclusive Dealing .............. 7

      1.    E&E Fails To State A Plausible Claim That The Alleged Exclusive Agreements Harmed Competition In The Textile Market ...................................... 8

      2.    E&E Cannot State A Cartwright Act Violation Merely By Trumpeting Antitrust Buzzwords ................................................................ 11

C.    E&E Fails To Plead A Violation Of The UCL ...................................... 13

      1.    E&E Cannot Use The UCL To Plead Around Its Failure To Establish A Cartwright Act Violation.................................................... 14

      2.    E&E's Allegations About Sunham's Underpayment of Taxes Fail To Satisfy The UCL's Requirements for Pleading Unlawful Or Unfair Conduct ............................................................................. 14

D.    E&E Fails To Plead That It Suffered Any Injury That Would Entitle It To Monetary Relief Under The UCL ........................................................ 17

E.    Defendants Yung and Courbanou Are Not Subject To Personal Jurisdiction In California.......................................................................................... 19

IV.   CONCLUSION ................................................................................ 21

MOTION TO DISMISS & STRIKE
3:08-CV-000871

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Barry Wright Corp. v. ITT Grinnell Corp.,*
724 F.2d 227 (1st Cir. 1983) .................................................................................. 8

*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1955 (2007) .................................................................... 4, 7, 11, 12

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ........................................................................................... 20

*C.B.& D.M. Entm't., Inc. v. Galardi,*
No. C 03CV2112, 2007 WL 4219409 (C.D. Cal. Nov. 28, 2007)........................ 18

*Calder v. Jones,*
465 U.S. 783 (1984) ........................................................................................... 20

*Certain Underwriters at Lloyd's, London v. Real Estate Prof'ls Ins. Co.,*
No. CV 06-4783 CAS (JWJ), 2007 WL 4249078 (C.D. Cal. Nov. 26, 2007) ...................... 15

*Colombia, S.A. v. Hall,*
466 U.S. 408 (1984) ...................................................................................... 19, 20

*Colt Studio, Inc. v. Badpuppy Enter.,*
75 F. Supp. 2d 1104 (C.D. Cal. 1999) ............................................................... 21

*Conley v. Gibson,*
355 U.S. 41 (1957) ............................................................................................... 7

*Davis v. Metro Prods., Inc.,*
885 F.2d 515 (9th Cir. 1989) ............................................................................. 20

*Dole Food Co., Inc. v. Watts,*
303 F.3d 1104 (9th Cir. 2002) ........................................................................... 21

*Eastern Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n, Inc.,*
357 F.3d. 1 (1st Cir. 2004) ................................................................................... 8

*Fieler v. Chrysler Corp.,*
No. C 93-3797 BAC, 1994 WL 478721 (N.D. Cal. Aug. 24, 1994) ..................... 11

*Flynt Distrib. Co., Inc. v. Harvey,*
734 F.2d 1389 (9th Cir. 1984) ........................................................................... 19

*Formula One Licensing, B.V v. Purple Interactive Ltd.,*
No. C 00-2222 MMC, 2001 U.S. Dist. LEXIS 2968 (N.D. Cal. Feb. 6, 2001) ..................... 14

*G&C Auto Body, Inc. v. Geico Gen. Ins. Co.,*
2007 WL 4350907 ............................................................................................. 19

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,*
284 F.3d 1114 (9th Cir. 2002)............................................................................ 19

*In re Late Fee and Over-Limit Fee Litigation,*
528 F. Supp. 2d 953 (N.D. Cal. 2007) ........................................................... 12, 14

*In re Netflix Antitrust Litig.,*
506 F. Supp. 2d 308 (N.D. Cal. 2007) ............................................................... 12

**TABLE OF AUTHORITIES**
(continued)

Page

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ................................................................................................ 19

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde,*
    466 U.S. 2 (1984) ......................................................................................... 8, 9, 10

*Jensen Enters., Inc. v. Oldcastle, Inc.,*
    No. C 06-00247 SI, 2006 WL 2583681 (N.D. Cal. Sept. 7, 2006) .......................... 18

*JM Computer Servs., Inc. v. Schlumberger Tech., Inc.,*
    No. C 95-20349 JW, 1996 WL 241607 (N.D. Cal. May 3, 1996) .......................... 12

*Kellam Energy, Inc. v. Duncan,*
    668 F. Supp. 861 (D. Del. 1987) ............................................................................ 13

*Kingray v. Nat'l Basketball Ass'n,*
    188 F. Supp. 2d 1177 (S.D. Cal. 2002) .................................................................. 13

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.,*
    127 S. Ct. 2705 (2007) ............................................................................................. 8

*MAI Sys. Corp. v. UIPS*
    856 F.Supp. 538 (N.D. Cal. 1994) ......................................................................... 18

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.,*
    319 F. Supp. 2d 1059 (C.D. Cal. 2003) .................................................................. 18

*O.S.C. Corp. v. Apple Computer, Inc.,*
    792 F.2d 1464 (9th Cir. 1986) ............................................................................... 11

*Omega Envtl., Inc. v. Gilbarco, Inc.,*
    127 F.3d 1157 (9th Cir. 1997) ..................................................................... 8, 10, 11

*Stein v. Pacific Bell Telephone Co.,*
    173 F. Supp. 2d 975 (N.D. Cal. 2001) ................................................................... 14

*Sybersound Records, Inc. v. UAV Corp.,*
    No. 06-5521, 2008 WL 509245 (9th Cir. Feb. 27, 2008) ........................................ 16

*United States v. E.I. du Pont de Nemours & Co.,*
    351 U.S. 377 (1956) .................................................................................................. 9

*Walker v. USAA Casualty Ins. Co.,*
    474 F. Supp. 2d 1168 (E.D. Cal. 2007) .................................................................. 18

*Western Parcel Express v. United Parcel Service of America, Inc.,*
    190 F.3d 974 (9th Cir. 1999) ................................................................................. 13

*Ziegler v. Indian River County,*
    64 F.3d 470 (9th Cir. 1995) .................................................................................... 19

**STATE CASES**

*Berryman v. Merit Property Mgmt., Inc.,*
    152 Cal. App. 4th 1544 (2007) ............................................................................... 15

*Buckland v. Threshold Enters. Ltd.,*
    155 Cal. App. 4th 798 (2007) ................................................................................. 18

*Cel-Tech Commc'ns, Inc., v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) ................................................................................ 4, 11, 15, 16

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363 (2001).................................................................. 8, 14

*Chicago Title Ins. Co. v. Great W. Fin. Corp.*,
    69 Cal. 2d 305 (1968) ........................................................................... 8, 12

*Day v. AT&T Corp.*,
    63 Cal. App. 4th 325 (1998)..................................................................... 18

*Exxon Corp. v. Superior Court*,
    51 Cal. App. 4th 1672 (1997)................................................................. 8, 10

*Kolling v. Dow Jones & Co., Inc.*,
    137 Cal. App. 3d 709 (1982)........................................................................ 7

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .............................................................................. 17

*Kraus v. Trinity Mgmt. Servs., Inc.*,
    23 Cal. 4th 116 (2000) ................................................................................ 17

*Madrid v. Perot Sys. Corp.*,
    130 Cal. App. 4th 440 (2005)................................................................... 4, 18

*Motors, Inc. v. Times-Mirror Co.*,
    102 Cal. App. 3d 735 (1980)......................................................................... 7

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
    151 Cal. App. 4th 688 (2007)....................................................................... 19

*People's Choice Wireless, Inc. v. Verizon Wireless*,
    131 Cal. App. 4th 656 (2005)....................................................................... 16

*Redwood Theaters, Inc. v. Festival Enters., Inc.*,
    200 Cal. App. 3d 687 (1988)..................................................................... 8, 10

*Rolley, Inc. v. Merle Norman Cosmetics, Inc.*,
    129 Cal. App. 2d 844 (1954)........................................................................ 10

*Roth v. Rhodes*,
    25 Cal. App. 4th 530 (1994).......................................................................... 8

*Violante v. Cmtys. Sw. Dev. & Const. Co.*,
    138 Cal. App. 4th 972 (2006)........................................................................ 15

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ........................................................................ 13

Cal. Bus. & Prof. Code § 17204 ........................................................................ 18

Cal. Civ. Proc. Code § 410.10........................................................................... 19

Cartwright Act, Cal. Bus. & Prof. Code §§ 16720 *et. seq.* ................................ 7

MOTION TO DISMISS & STRIKE
3:08-CV-000871

**TABLE OF AUTHORITIES**
(continued)

Page

**OTHER AUTHORITIES**

2007 Major Shippers Report, United States Department of Commerce, Office of
Textiles & Apparel ............................................................................................. 5, 9

Tashima, Wagstaffe, Cal. Prac. Guide Fed. Civ. Proc. Before Trial
(Rutter Group 2007) ......................................................................................... 5, 17

MOTION TO DISMISS & STRIKE
3:08-CV-000871

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

It is hornbook law that the antitrust and unfair competition laws exist to protect

4

competition not competitors.  But this case is not about harm to competition.  Indeed, no plausible

5

claim can be made that the conduct at issue in this case harms competition in the multi-billion

6

dollar textile market in which the parties compete.  Instead, this lawsuit involves an attempt by

7

one participant in a highly competitive market to deal a blow to a rival.  For the following

8

reasons, the Court should reject Plaintiff's attempt to misappropriate laws designed to protect

9

competition for its own personal gain.

10

*First*, Plaintiff E&E Co., Ltd. ("E&E"), an importer and distributor of textiles,

11

alleges in the Complaint that one of its competitors, the Sunham Group,[1] engaged in

12

anticompetitive business practices in violation of California's Cartwright Act and Unfair

13

Competition Law ("UCL").   In particular, E&E alleges that the Sunham Group entered into

14

exclusive dealing arrangements with "some" unidentified manufacturers in China.  Compl. ¶ 14.

15

But E&E fails to allege facts to support a plausible claim that this conduct harmed competition in

16

the massive textile market.  Harm to competition is the bedrock of any antitrust claim predicated

17

on an allegation of exclusive dealing, a vertical arrangement which is ordinarily considered

18

*procompetitive*.  E&E's exclusive dealing theory fails because it cannot state a plausible claim

19

that by entering into arrangements with *some* unidentified Chinese manufacturers participating in

20

the global textile marketplace, a single textile distributor like the Sunham Group, alleged to have

21

annual sales in the several *millions*, can substantially harm competition in this multi-*billion* dollar

22

textile market.

23

*Second*, E&E does not allege a sufficient factual basis to state valid claims under

24

25

[1] The Complaint defines the Sunham Group as the combination of Defendant Kam Hing Enterprises, Inc. ("Kam Hing") and Defendant Sunham Home Fashions, LLC ("Sunham").

26

Throughout the Complaint, Sunham and Kam Hing are effectively treated as a single entity. Sunham and Kam Hing are in fact distinct entities with separate business operations.  On a

27

motion to dismiss, however, Defendants must assume E&E's allegations to be true.  Therefore, for the purpose of this motion, Defendants will adopt the same term E&E uses to refer to Kam

28

Hing and Sunham combined.

- 3 -

MOTION TO DISMISS & STRIKE
3:08-CV-000871

1  the Cartwright Act or UCL.  In violation of the Supreme Court's decision in *Bell Atlantic Corp. v.*

2  *Twombly*, 127 S. Ct. 1955 (2007), E&E simply mouths the obligatory reverse-engineered

3  accusations of an exclusive dealing arrangement but fails to provide "enough facts to state a claim

4  to relief that is plausible on its face." *Id.* at 1974.

5  *Third*, E&E claims that the Sunham Group and the remaining defendants (two of

6  Sunham's officers and an alleged business partner) violated the UCL by "unlawfully" and

7  "unfairly" participating in a scheme abroad to evade taxes due in the United States.  To state a

8  claim under the "unlawful" prong of the UCL, a plaintiff must identify a particular underlying

9  law that the defendant allegedly violated.  E&E fails to allege that the purported tax scheme

10  violates any underlying law, and thus E&E's "unlawful" theory fails.  To state a claim under the

11  "unfair" prong of the UCL, E&E must show that the Sunham Group's alleged underpayment of

12  taxes threatens an incipient violation of an antitrust law, violates the policy or spirit of one of

13  those laws, or otherwise significantly harms or threatens competition.  *Cel-Tech Commc'ns, Inc.,*

14  *v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).  Because E&E cannot show that the

15  alleged underpayment of taxes does any of these,  E&E's "unfairness" theory fails as well.

16  *Fourth*, E&E fails to plead it suffered any injury which would entitle it to

17  monetary relief under the UCL.  The only monetary remedy available under the UCL is

18  restitution, which is "limited to the return of property or funds in which the plaintiff has an

19  ownership interest." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 453 (2005).  The only

20  injury E&E alleges it suffered is "competitive injury in the form of lost sales." Compl. ¶ 19.

21  Hypothetical lost sales, in which E&E has no ownership interest, cannot support a claim for

22  restitution.  Thus, even if E&E had pled sufficiently a cause of action under the UCL – which it

23  has not – it would not be entitled to any monetary relief.

24  *Fifth*, while both of E&E's causes of action fail on their merits as to all

25  Defendants, the Complaint is also subject to dismissal under Federal Rule of Civil Procedure

26  12(b)(2) as to defendants Howard Yung and Arthur Courbanou.  Neither individual has sufficient

27  minimum contacts with California.  The Court thus lacks a proper basis for asserting personal

28  jurisdiction over them.

- 4 -

1    In sum, E&E's Complaint fails on numerous grounds and this Court should

2    dismiss this action with prejudice and strike E&E's improper prayer for relief.

3    **II.    FACTUAL BACKGROUND**

4    The textile market is a multi-billion dollar per year industry.  Last year, $22.5

5    billion worth of non-apparel textiles were imported into the United States alone.[2]  China is the

6    single largest exporter of non-apparel textiles to the United States, having exported nearly $10

7    billion worth of such goods into the United States in 2007.  *Id.*

8    E&E and the Sunham Group are competitors in this global textile market.  They

9    purchase textiles abroad and sell them to major retailers in the United States.  Compl. ¶ 10.  The

10   Sunham Group occupies a tiny fraction of the massive textile market:  Each year, the Sunham

11   Group sells several million dollars of textile goods that are ultimately sold in California stores

12   such as Mervyns, Bed Bath & Beyond, Macy's, Kohl's, and Linens-n-Things.  *Id.* ¶ 11.

13   California is the Sunham Group's largest and most lucrative marketplace.  *Id.* ¶ 12.

14   On December 12, 2007, E&E filed the instant action in Alameda County Superior

15   Court, and Defendants subsequently removed it to federal court on the basis of diversity

16   jurisdiction.  Among the defendants named in the Complaint are the defendants who bring this

17   Motion:  (1) Kam Hing; (2) Sunham; (3) Howard Yung, Owner of Kam Hing and Chief

18   Executive Officer of Sunham; and (4) Arthur Courbanou, Chief Financial Officer and Chief

19   Operating Officer of Sunham (collectively "Defendants").  Compl. ¶¶ 2-4, 5-6; *see also* Howard

20   Yung Decl. ¶ 2; Arthur Courbanou Decl. ¶ 2.[3]  The Complaint also names as a defendant J.J.

21   International Trading Company ("J.J. International"), a Hong Kong-based entity which, to

22   Defendants' knowledge, has not yet been served.  Compl. ¶ 5.  The Complaint states two causes

23

24   [2] *See* 2007 Major Shippers Report, United States Department of Commerce, Office of Textiles & Apparel, *available at* http://otexa.ita.doc.gov/MSRcat.htm and

25   http://otexa.ita.doc.gov/msr/catV2.htm.  The cited data is subject to judicial notice.  Schwarzer, Tashima, Wagstaffe, Cal. Prac. Guide Fed. Civ. Proc. Before Trial Ch. 9-D at 9:219 (Rutter

26   Group 2007) (reports of an administrative body are subject to judicial notice) (citing *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).  *See* Request for Judicial Notice In Support Of Defendants' Motion To Dismiss Complaint filed concurrently herewith.

27   [3] The Declarations of Howard Yung and Arthur Courbanou are submitted in support of their

28   motion to dismiss for lack of personal jurisdiction.

- 5 -

of action – a Cartwright Act claim as to the Sunham Group and a UCL claim as to all defendants – both of which are predicated on conduct allegedly occurring entirely overseas.  E&E seeks various forms of relief including damages, statutory damages, injunctive relief, restitution, and disgorgement of profits.  Compl. ¶ 19, page 6 (prayer for relief).

The conduct challenged in the Complaint includes alleged "demands" made by the Sunham Group of "some manufacturers in China" that they enter into "exclusive dealing arrangements." Compl. ¶ 14.  The Complaint, however, does not allege that these unidentified manufacturers agreed to conduct business only with the Sunham Group.  *Id.*  Instead, E&E merely contends that the Sunham Group "extracts" agreements from these manufacturers that they will "only sell *certain* products to Sunham's competitors" and that they will "not [] sell products to E&E." *Id.* (emphasis added).  The Complaint, however, does not provide any information about the number of manufacturers involved, their names, or the volume of their sales.  The Complaint also fails to provide factual support as to when and where the alleged agreements were reached and what products they cover.

The Complaint further alleges that Defendants participate in a purported tax evasion scheme that gives the Sunham Group an inappropriate advantage in the market.  Compl. ¶¶ 15-16.  According to the Complaint, J.J. International – an alleged sham company controlled by Defendant Howard Yung – serves as the Sunham's Group's "exclusive overseas agent for purposes of sourcing product." Compl. ¶ 15.  E&E alleges that the Sunham Group pays a 15% markup on all purchases of products from J.J. International for distribution in the United States.  This, E&E contends, allows the Sunham Group to "falsely increase[] its cost of goods and lower[] its reported profits by approximately 15%." *Id.*  As a result, E&E concludes, the Sunham Group avoids paying taxes that would otherwise be due to the Internal Revenue Service.  *Id.*

As a result of this conduct, E&E asserts that it and other unnamed "[l]egitimate California textile distributors" have "lost and will continue to lose sales" to the Sunham Group.  But E&E does not allege that it or any other textile distributor has been foreclosed from purchasing textiles from China or any other country.  Compl. ¶ 19.  To the contrary, E&E admits that it continues to purchase textiles in China and sell them to retailers in the United States.

4609919.1

Compl. ¶ 10. Moreover, E&E does not allege that consumer choice has been reduced, output has decreased, or the price of textiles has increased as a result of the alleged misconduct. In fact, E&E effectively alleges that the price the ultimate consumer pays for textiles has *decreased* because the Sunham Group can "undersell" competitors. Compl. ¶ 15, *see also* Compl. ¶ 24 (asserting that "the price of textile goods has been affected," but not stating how).

## III.   ARGUMENT

### A.   The Complaint Cannot Survive A Motion To Dismiss Without Facts That Plausibly Support A Claim For Relief

Just last Term, the Supreme Court clarified the standards that govern motions to dismiss under Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In particular, the Court admonished that "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted). The Court expressly disavowed as "an incomplete, negative gloss on an accepted pleading standard," the oft-repeated statement from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Id.* at 1968-69. *Twombly* holds that a complaint must be dismissed if plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

### B.   E&E Fails To Plead A Cartwright Act Violation Based On Exclusive Dealing

To state a cause of action for a combination in restraint of trade under the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720 *et seq.*, a plaintiff must establish: (1) the formation and operation of the conspiracy; (2) illegal acts done pursuant thereto; and (3) damage proximately caused by such acts. *Kolling v. Dow Jones & Co., Inc.*, 137 Cal. App. 3d 709, 718 (1982); *see also Motors, Inc. v. Times-Mirror Co.*, 102 Cal. App. 3d 735, 724 (1980) (a "cause of action for restraint of trade under the Cartwright Act . . . must allege both a purpose to restrain trade and injury to the business of the plaintiff traceable to actions in furtherance of that purpose."). Because E&E fails to plead a plausible claim that the alleged exclusive dealing

- 7 -

arrangements constitute an illegal conspiracy that caused damage cognizable under antitrust law, its cause of action under the Cartwright Act must be dismissed.

### 1.    E&E Fails To State A Plausible Claim That The Alleged Exclusive Agreements Harmed Competition In The Textile Market

There are "well-recognized economic benefits to exclusive dealing arrangements." *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997).[4] *See also Eastern Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n, Inc.*, 357 F.3d 1, 8 (1st Cir. 2004) (exclusive agreements "may be highly efficient – to assure supply, price stability, outlets, investment, best efforts or the like – and pose no competitive threat at all"); *Redwood Theatres, Inc. v. Festival Enters., Inc.*, 200 Cal. App. 3d 687, 701 (1988) (vertical exclusive arrangements are "not often subject to antitrust challenges"). The Supreme Court's recent decision in *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 127 S. Ct. 2705 (2007) is premised on the economic understanding that vertical restraints, such as exclusive dealing agreements, are ordinarily *procompetitive*, not anticompetitive.

As a result, exclusive dealing arrangements are evaluated under the rule of reason. *Omega*, 127 F.3d at 1162; *Roth v. Rhodes*, 25 Cal. App. 4th 530, 542 (1994); *Barry Wright Corp. v. ITT Grinnell Corp.*, 724 F.2d 227, 236 (1st Cir. 1983) (contracts to purchase are judged under the rule of reason because "virtually *every* contract to buy forecloses or excludes alternative sellers from *some* portion of the market.") (emphasis in original). A rule of reason analysis begins with the identification of the relevant market: A plaintiff must "delineate a relevant market and show that the defendant plays enough of a role in that market to impair competition significantly." *Exxon Corp. v. Superior Court*, 51 Cal. App. 4th 1672, 1682 (1997). Indeed, exclusive agreements are only unlawful when their "probable effect is to foreclose competition in a substantial share of the line of commerce affected." *Omega*, 127 F.3d at 1162 (citations omitted)); *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 44 (1984) (O'Connor, J.

---

[4] "Since the Cartwright Act and the federal Sherman Act share similar language and objectives, California courts often look to federal precedents under the Sherman Act for guidance." *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 369-70 (2001); *see also Redwood Theaters, Inc. v. Festival Enters., Inc.*, 200 Cal. App. 3d 687, 694 (1988); *Chicago Title Ins. Co. v. Great W. Fin. Corp.*, 69 Cal. 2d 305, 315 (1968).

4609919.1

1    concurring) ("Exclusive dealing is an unreasonable restraint on trade only when a significant

2    fraction of buyers or sellers are frozen out of a market by the exclusive deal.").

3            Here, E&E defines the relevant market as the market for "textiles,"[5] but fails to

4    plead facts to support a plausible claim that the exclusive arrangements alleged in the Complaint

5    foreclose competition in a significant portion of that expansive and intensively competitive

6    market. As Justice O'Connor stated in her oft-cited concurrence in *Jefferson Parish*, "[i]n

7    determining whether an exclusive dealing contract is unreasonable, the proper focus is on the

8    structure of the market for the products or services in question – the number of sellers and buyers

9    in the market, the volume of their business, and the ease with which buyers and sellers can

10    redirect their purchases or sales to others." 466 U.S. at 45. Antitrust laws are not concerned with

11    vertical exclusive dealing arrangements made by modest players in large and competitive

12    markets: "When the sellers of services are numerous and mobile, and the number of buyers is

13    large, exclusive dealing arrangements of narrow scope pose no threat of adverse economic

14    consequences." *Id.*

15            The textile market is a robust, geographically dispersed market with untold

16    participants. As stated above, $22.5 billion worth of non-apparel textiles were imported into the

17    United States last year alone.[6] Nearly $10 billion worth of these textiles alone came from China.

18    *Id.* Notwithstanding E&E's conclusory allegation that "competition in the textile market has been

19    restrained and suppressed" and "the price of textile goods has been affected," E&E does not and

20    cannot plausibly claim that a single distributor like the Sunham Group can harm competition in

21    such a massive market simply by entering into exclusive arrangements with "some" unidentified

22    overseas manufacturers. Compl. ¶ 14. As a matter of simple economics, it is impossible that

23    vertical agreements between a few manufacturers and a single distributor that sells several

24    _____

25    [5] Defendants do not dispute E&E's definition of the relevant market. A product market must
     include all "commodities reasonably interchangeable by consumers for the same purposes."
     *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956).

26    [6] *See* Exhibit A to Request for Judicial Notice, 2007 Major Shippers Report, also *available at*
27    http://otexa.ita.doc.gov/msr/catV2.htm. Of course, the figures cited about the size of the market
     are conservative because imports of textiles into the United States do not reflect all textiles
28    purchased in the global market.

- 9 -

MOTION TO DISMISS & STRIKE
3:08-CV-000871

1    *millions* of dollars worth of textile goods in its "largest and most lucrative marketplace,"

2    Compl. ¶ 12, could "impair competition significantly" in the multi-*billion* dollar textile industry.

3    *Exxon*, 51 Cal. App. 4th at 1682.

4          A vertical exclusive dealing claim must be dismissed where, as here, a defendant's

5    market share is too insignificant to foreclose competition in a substantial share of the relevant

6    market.  In *Redwood Theaters* the court of appeal affirmed summary judgment on a Cartwright

7    Act claim brought by a movie theater against a film distributor who had a three percent market

8    share – exponentially higher than any share of the textile market that might plausibly be attributed

9    to the Sunham Group.  200 Cal. App. 3d at 714.  The court found as a matter of law that the film

10   distributor's market share was too small to render its exclusive arrangements with the plaintiff's

11   competitors a substantial threat to competition.  *Id.*; *see also Rolley, Inc. v. Merle Norman*

12   *Cosmetics, Inc.*, 129 Cal. App. 2d 844, 851-52 (1954) (affirming demurrer where cosmetic

13   company's exclusive deals with four retailers were too insignificant to stifle competition in a

14   competitive market); *Omega*, 127 F.3d at 1164-65 (no probable injury to competition in "highly

15   concentrated market" boasting "increasing output, decreasing prices, and significantly fluctuating

16   market shares among the major manufacturers").

17         The facts pled in the Complaint about the type of restraint (vertical exclusive

18   dealing), the relevant market (textiles), and the amount of the Sunham Group's sales in that

19   market (millions) combined with judicially noticeable facts about the overall size of the market

20   (billions) compel the conclusion that E&E cannot plausibly claim that competition has been

21   harmed substantially.  Just as in *Jefferson Parish*, "[e]ven without engaging in a detailed analysis

22   of the size of the relevant markets we may readily conclude that there is no likelihood that the

23   exclusive dealing arrangement challenged here" will substantially harm competition in the market

24   for textiles.  466 U.S. at 46. Because E&E cannot plausibly demonstrate that the Sunham Group's

25   alleged arrangements with the unnamed Chinese manufacturers increase costs to consumers, limit

26   consumer choice, or otherwise affect competition in a harmful and substantial way, E&E's

27   Cartwright Act claim must be dismissed.

28         Moreover, the fact that E&E makes the vague and conclusory allegation that it was

- 10 -

MOTION TO DISMISS & STRIKE
3:08-CV-000871

1  precluded from dealing with certain unidentified manufacturers and lost sales as a result of the

2  alleged exclusive arrangements is of no concern to antitrust laws. "Injury to an antitrust plaintiff

3  is not enough to prove injury to competition." *O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d

4  1464, 1469 (9th Cir. 1986); *see also Cel-Tech Commc'ns, Inc., v. Los Angeles Cellular Tel. Co.*,

5  20 Cal. 4th 163, 186 (1999) ("Injury to a competitor is not equivalent to injury to competition;

6  only the latter is the proper focus of antitrust laws."). Even if E&E could prove that it suffered

7  some injury as a direct result of the alleged arrangements, that injury would not substitute for

8  demonstrating a substantial harm to competition. *Fieler v. Chrysler Corp.*, No. C 93-3797 BAC,

9  1994 WL 478721, at *2 (N.D. Cal. Aug. 24, 1994) ("replacement of one supplier by another, even

10 if financially harmful to the former supplier, does not constitute antitrust injury.").

11          E&E's status as a distributor only makes its position weaker: Exclusive dealing

12 arrangements involving "distributors rather than end-users are generally less cause for

13 anticompetitive concern." *Omega*, 127 F.3d at 1162. Indeed, vertical exclusive arrangements at

14 the distributor level do not foreclose competition in the relevant market "[i]f competitors can

15 reach the ultimate consumers of the product by employing existing or potential alternative

16 channels of distribution." *Id.* at 1163. E&E has not, and cannot plausibly, claim that there are no

17 alternative channels through which it and other textile distributors can purchase textiles to resell

18 to consumers. With an infinite number of manufacturers throughout the world market, E&E and

19 other textile distributors can readily purchase textiles through other suppliers to continue to reach

20 the ultimate consumers. Indeed, E&E even admits in the Complaint that it continues to purchase

21 textiles in China and sell its goods to retailers in the United States. Compl. ¶ 10.

22              2.     **E&E Cannot State A Cartwright Act Violation Merely By Trumpeting
                       Antitrust Buzzwords**
23

24          E&E's Cartwright Act claim also fails because the Complaint fails to allege

25 "factual allegations" that "raise a right to relief above the speculative level." *Twombly*, 127 S. Ct.

   at 1965. Instead, in direct violation of *Twombly*, E&E provides no more than "labels and
26

27 conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* E&E's failure

   to plead anything more than conclusory allegations provides a separate and independent basis
28

- 11 -

1   upon which the Court should dismiss this case. *See also Chicago Title Ins. Co. v. Great W. Fin.*

2   *Corp.*, 69 Cal. 2d 305, 316-18 (1968) (demanding a high degree of particularity in the pleading of

3   Cartwright Act violations); *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 320 (N.D. Cal.

4   2007) ("Cartwright Act claims are properly dismissed where the complaint makes conclusory

5   allegations of a combination and does not allege with factual particularity that separate entities

6   maintaining separate and independent interests combined for the purpose to restrain trade.")

7   (citation omitted).

8         E&E alleges that the Sunham Group "demands exclusive dealing arrangements

9   with some manufacturers in China." Compl. ¶ 14.  But E&E provides no factual support for this

10  conclusory claim:  E&E fails to identify the manufactures to whom Sunham allegedly made these

11  demands, when the demands were made, the duration of the exclusive arrangements that resulted,

12  or the categories and volume of product they covered.  To assert a claim for exclusive dealing

13  under the Cartwright Act, a plaintiff must allege a factual predicate for a claim, including the

14  specific customers, agreements, or products supposedly involved.  In *In re Late Fee and Over-*

15  *Limit Fee Litigation*, 528 F. Supp. 2d 953 (N.D. Cal. 2007), the plaintiff alleged conclusory

16  allegations about the defendants entering into an agreement, but "provide[d] no details as to

17  when, where, or by whom th[e] alleged agreement was reached." *Id.* at 962.  The court found that

18  the plaintiffs' "stray statements" about an agreement were insufficient to state a claim under both

19  the Sherman and Cartwright Acts. *Id.* at 962-66 (citing *Twombly*, 127 S. Ct. at 1971, n.10); *see*

20  *also JM Computer Servs., Inc. v. Schlumberger Tech., Inc.*, No. C 95-20349 JW, 1996 WL

21  241607, at *4 (N.D. Cal. May 3, 1996) (exclusive dealing claim too conclusory where it "failed to

22  identify an agreement with a specific person or entity and does not identify the parts, services, or

23  contracts involved in the alleged exclusive dealing.").

24         In addition, E&E's allegations relating to harm to competition are no more than

25  bare legal conclusions, which is not surprising considering that, as demonstrated above, it is

26  entirely implausible that competition in the vast textile market has been substantially harmed as a

27  result of the exclusive arrangements alleged here.  E&E recites the conclusion that the purported

28  arrangements have affected competition in the textile market, but provides no factual support for

1    its assertion.  Compl. ¶ 24 ("competition in the textile market has been restrained and suppressed"

2    and "the price of textile goods has been affected.").  Courts have rejected conclusory attempts like

3    these to plead actual harm to competition.  *Kingray v. Nat'l Basketball Ass'n*, 188 F. Supp. 2d

4    1177, 1197 (S.D. Cal. 2002) (dismissing antitrust claim where plaintiffs' allegations of actual

5    harm were "bare legal conclusions" ).

6          In any event, E&E has not actually alleged that Sunham entered into an exclusive

7    dealing contract with any Chinese manufacturers.  To assert a claim for exclusive dealing the

8    agreements challenged as "exclusive" must in fact be exclusive.  *Western Parcel Express v.*

9    *United Parcel Service of America, Inc.*, 190 F.3d 974, 976 (9th Cir. 1999) (no exclusive dealing

10   where contract does not preclude dealing with competitors); *Kellam Energy, Inc. v. Duncan*, 668

11   F. Supp. 861, 883-84 (D. Del. 1987) ("[T]o constitute actionable exclusive dealing, a contract

12   must apply to all purchases that the buyer will make").  E&E's Complaint makes clear that the

13   agreements at issue are anything but exclusive.  Indeed, E&E admits that the unidentified Chinese

14   manufacturers continue to transact business with other purchasers and/or distributors of textiles.

15   E&E does not allege that the manufacturers will *only* sell to the Sunham Group, but rather that

16   "they will only sell *certain products* to Sunham's competitors" and "have agreed not to sell

17   products to E&E."[7]  Compl. ¶ 14 (emphasis added).  To be an exclusive deal a party must agree

18   to "deal *only* with" one other party.  *Western Parcel Express*, 190 F.3d at 976 (citing L. Sullivan,

19   Law of Antitrust § 163, at 471 (1977)) (emphasis added).  Because E&E does not allege that a

20   single manufacturer has agreed to sell exclusively to the Sunham Group, E&E's exclusive dealing

21   claim must be dismissed.

22       **C.     E&E Fails To Plead A Violation Of The UCL**

23          California Business and Professions Code Section 17200, otherwise known as the

24   UCL, prohibits "unlawful, unfair or fraudulent" business practices.  Cal. Bus. & Prof. Code

25   § 17200.  Here, E&E's claim is based on allegedly "unlawful" and "unfair" business practices.

_____

[7] In fact, E&E does not even allege that any of the unidentified Chinese manufacturers have
refused to sell *any* products to E&E.  E&E's vague assertion that some unidentified
manufacturers have agreed not to "sell products" does not establish that they have refused to sell
any products whatsoever to E&E.

4609919.1

Compl. ¶ 18.   As set forth below, E&E has not stated a claim under either the "unlawful" or "unfair" prongs of the UCL.

### 1.    E&E Cannot Use The UCL To Plead Around Its Failure To Establish A Cartwright Act Violation

E&E asserts a claim under the UCL alleging that the very same "exclusive dealing arrangements" that underlie the antitrust claim also constituted unlawful and unfair business practices.   Compl. ¶ 19.   This claim is thus necessarily "derivative of the antitrust claims." *Formula One Licensing, B.V v. Purple Interactive Ltd.*, No. C 00-2222 MMC, 2001 WL 34792530, at *4 (N.D. Cal. Feb. 6, 2001).   Claims under § 17200 based solely on failed antitrust claims, however, cannot stand.   "Where a Plaintiff fails to state an antitrust claim, and where an unfair competition claim is based upon the same allegations, such [unfair competition] claims are properly dismissed." *Id.* at *13.   *See also Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) ("the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair'"); *Late Fee and Over-Limit Fee Litig.*, 2007 WL 4106353, at *10 (no cognizable UCL claim where plaintiff's theory was "explicitly premised" on an alleged violation of antitrust laws which the court determined had not been violated); *Stein v. Pacific Bell Telephone Co.*, 173 F. Supp. 2d 975, 987 (N.D. Cal. 2001) (dismissing § 17200 claim because it was predicated on the same conduct as dismissed antitrust claims), *vacated on other grounds*, 172 Fed. Appx. 192 (9th Cir. 2006).   Thus, for the same reasons that the alleged exclusive dealing arrangements are not an unreasonable restraint of trade under the Cartwright Act, they are not unlawful or unfair under the UCL.[8]

### 2.    E&E's Allegations About Sunham's Underpayment of Taxes Fail To Satisfy The UCL's Requirements for Pleading Unlawful Or Unfair Conduct

E&E also asserts that Defendants violated the UCL by unlawfully and/or unfairly evading tax obligations in the United States.   Compl. ¶¶ 15, 16, 19.   To assert a claim for

---

[8] In addition, even if E&E could show this Court has personal jurisdiction over Messrs. Yung and Courbanou, which, as discussed below, it cannot, E&E's theory of unfair competition premised on such alleged exclusive dealing agreements entered into by the Sunham Group must be dismissed as to Messrs. Yung and Courbanou because the Complaint fails to allege any facts to support their involvement with these alleged agreements. Compl. ¶¶ 14, 23.

- 14 -

MOTION TO DISMISS & STRIKE
3:08-CV-000871

1   unlawful conduct under the UCL a plaintiff must identify a practice that violates some other law:

2   "[S]ection 17200 borrows violations of other laws and treats them as unlawful practices that the

3   [UCL] makes independently actionable." *Cel-Tech*, 20 Cal. 4th at 180; *see also Berryman v.*

4   *Merit Property Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) ("a violation of another law is a

5   predicate for stating a cause of action under the UCL's unlawful prong"). Here, E&E has failed to

6   identify any underlying law violated by Defendants. To the contrary, while the Complaint

7   contends Defendants are participants in an "unlawful" plot involving sham corporations created

8   for the purpose of evading tax obligations, Compl. ¶¶ 15,16, 19, it fails to identify a single law

9   violated by any defendant, much less "plead facts to support" a conclusion that a particular law

10  was violated. *Berryman,* 152 Cal. App. 4th at 1554. A conclusory assertion that Defendants have

11  acted unlawfully is insufficient to state a claim under the UCL's unlawful prong. *Violante v.*

12  *Cmtys. Sw. Dev. & Const. Co.*, 138 Cal. App. 4th 972, 980 (2006) (granting demurrer on

13  unlawfulness claim where plaintiff had not alleged any violation of any underlying borrowed

14  statute); *Certain Underwriters at Lloyd's, London v. Real Estate Prof'ls Ins. Co.*, No. CV 06-

15  4783 CAS (JWJ), 2007 WL 4249078, at *7 (C.D. Cal. Nov. 26, 2007) (plaintiff failed to state a

16  claim for unlawful business practice claim where it failed to identify the statute defendants

17  allegedly violated).

18          E&E likewise fails to establish that Defendants acted unfairly in connection with

19  any alleged unpaid tax obligations. As the Supreme Court held in *Cel-Tech*,

20          "[w]hen a plaintiff who claims to have suffered injury from a direct
            competitor's 'unfair' act or practice invokes section 17200, the
21          word 'unfair' in that section means conduct that threatens an
            incipient violation of an antitrust law, or violates the policy or spirit
22          of one of those laws because its effects are comparable to or the
            same as a violation of the law, or otherwise significantly threatens
23          or harms competition."

24          20 Cal. 4th at 187.

25          E&E fails to demonstrate that its allegations about Defendants' purported

26  underpayment of taxes satisfy the *Cel-Tech* definition of unfairness. E&E does not allege that

27  Defendants' alleged underpayment of taxes threatens an incipient violation of antitrust law.

28  Moreover, E&E cannot state a plausible claim that the alleged activity violates the policy or spirit

- 15 -

MOTION TO DISMISS & STRIKE
3:08-CV-000871

1    of antitrust law or otherwise threatens or harms competition.  In *People's Choice Wireless, Inc. v.*

2    *Verizon Wireless*, 131 Cal. App. 4th 656 (2005), the court of appeals affirmed a demurrer granted

3    to defendant on a UCL claim asserted against it by competitors.  Applying the rule of *Cel-Tech*,

4    the court found that plaintiffs had failed to state a claim under the unfairness prong of the UCL

5    because it showed neither a violation of antitrust policies nor a significant threat or harm to

6    competition.  As to the latter ground, the court remarked: "What shines through most clearly in

7    the complaint is that [the defendant's] conduct has injured the [plaintiffs].  But, as *Cel-Tech*

8    teaches, injury to competitors is not the same as injury to competition." *Id.* at 668.

9              E&E does not allege that competition in the textile market has been harmed as a

10   result of Defendants' alleged underpayment of taxes.  It does not allege that prices have risen for

11   consumers.  To the contrary, it effectively alleges that Defendants' alleged tax practices have

12   resulted in *lower* prices for consumers.  Compl. ¶ 15.  Nor does it allege that consumer choice has

13   been reduced.  E&E's failure to identify such harmful effects to competition is not surprising:

14   E&E cannot plausibly claim that the Sunham Group's alleged underpayment of taxes harmed

15   competition in the multi-billion dollar textile market.  Indeed, for the same reasons that E&E

16   cannot demonstrate harm to competition in connection with its exclusive dealing allegations,

17   E&E cannot demonstrate harm to competition on its "tax evasion" theory either.

18             Moreover, as under the Cartwright Act, even if E&E could demonstrate that *it* lost

19   sales as a direct result of the Sunham Group's calculation of profits for tax purposes, such an

20   injury would be insufficient to sustain a UCL cause of action premised on unfair business

21   practices.  Indeed, as the Ninth Circuit recently made clear, an allegation that a defendant gained

22   a business advantage over a competitor by reducing its costs and increasing its profits through

23   improper means fails to state an unfairness claim unless the plaintiff can demonstrate an incipient

24   violation of antitrust laws or harm to competition. *Sybersound Records, Inc. v. UAV Corp.*, No.

25   06-5521, 2008 WL 509245, at *12-13 (9th Cir. Feb. 27, 2008).  In *Sybersound*, the Ninth Circuit

26   affirmed the dismissal of a UCL claim brought by karaoke record producer against competitors

27   whom plaintiff alleged failed to properly pay royalties and acquire licenses for their karaoke

28   recordings and falsely told customers that plaintiff's recordings infringed copyrights.  2008 WL

MOTION TO DISMISS & STRIKE
3:08-CV-000871

1   509245, at *12-13.  Although the plaintiff alleged that it "lost money as a direct result" of these

2   unfair business practices, the Ninth Circuit found the plaintiff's allegations of an inappropriate

3   advantage were not enough to plead an unfairness claim under the UCL  because they failed to

4   show an incipient violation of antitrust law.  *Id.* at 13.   Likewise, here, E&E's conclusory

5   allegations that it suffered a competitive disadvantage *vis-a-vis* the Sunham Group, and lost sales

6   as a result of Defendants' tax practices, fall short of satisfying *Cel-Tech's* requirements.

      **D.**    **<u>E&E Fails To Plead That It Suffered Any Injury That Would Entitle It To</u>**
7               **<u>Monetary Relief Under The UCL</u>**

8            Not only has E&E failed to plead that Defendants are liable under the UCL, E&E

9   fails to plead that it has suffered any injury which would entitle it to monetary relief under that

10  law.  E&E claims it is entitled to "full restitution and/or disgorgement of all revenues, earnings,

11  profits, compensation, and benefits that may have been obtained by defendant as a result of"

12  Defendants' alleged unfair business practices.  Comp. ¶ 19.  The Court should strike this

13  inappropriate prayer for relief pursuant to Federal Rule of Civil Procedure 12(f).  Scwharzer,

14  Tashima, and Wagstaffe at 9:389 ("A motion to strike may be used to strike the prayer for relief

15  where the damages sought are *not recoverable as a matter of law*.") (emphasis in original) (citing

16  cases).

17           As an initial matter, E&E's prayer for disgorgement fails because "restitution is

18  the only monetary remedy expressly authorized" by the UCL.  *Korea Supply Co. v. Lockheed*

19  *Martin Corp.*, 29 Cal. 4th 1134, 1149-50 (2003) (non-restitutionary disgorgement is not an

20  available remedy in UCL actions) (citation omitted).

21           Moreover, to be cognizable under § 17200, a claim for "restitution" must involve

22  money actually paid to the defendant as a result of an actionably unlawful, unfair or fraudulent

23  business practice.  *Korea Supply Co.*, 29 Cal. 4th at 1149-50.  Specifically, Business and

24  Professions Code § 17203 authorizes a court to order a defendant to "return money obtained

25  through an unfair business practice to those persons in interest from whom the" money was taken.

26  *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 126-27 (2000).  Courts have made clear that

27  "in the context of the UCL, 'restitution' is limited to the return of property or funds in which the

28

4609919.1

MOTION TO DISMISS & STRIKE
3:08-CV-000871

1  plaintiff has an ownership interest." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 453

2  (2005); *see also Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 340 (1998) ("The offending party

3  must have obtained something to which it was not entitled *and* the victim must have given up

4  something which he or she was entitled to keep.").

5           E&E does not allege that it paid any moneys to Defendants or that Defendants are

6  in possession of property in which Plaintiff has an ownership interest.  Instead, E&E merely

7  alleges that it "suffered competitive injury in the form of lost sales." Comp. ¶ 19.  Courts have

8  recognized that Plaintiffs have no ownership interest in lost sales or profits and therefore injuries

9  such as these cannot support a claim for restitution.  In *National Rural Telecommunications*

10 *Cooperative v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1078-82 (C.D. Cal. 2003), the court

11 dismissed the plaintiff's claim for restitution under the UCL.  Because the claim was based on a

12 theory of lost profits, the court found that it was nothing more than a camouflaged – and

13 inappropriate – claim for damages.  *Id.* at 1079, 1091-92.; *see also Jensen Enters., Inc. v.*

14 *Oldcastle, Inc.*, No. C 06-00247 SI, 2006 WL 2583681, at *8 (N.D. Cal. Sept. 7, 2006)

15 (dismissing UCL claim alleging only lost sales and profits); *C.B.& D.M. Entm't., Inc. v. Galardi*,

16 No. C 03CV2112, 2007 WL 4219409, at *5 (C.D. Cal. Nov. 28, 2007) (dismissing claim for

17 restitution premised on loss of revenue due to competitor's alleged unfair economic advantage);

18 *MAI Sys. Corp. v. UIPS*, 856 F. Supp. 538, 542 (N.D. Cal. 1994) ("Compensation for a lost

19 business opportunity is a measure of damages and not restitution to the alleged victims.").

20          In seeking lost sales, E&E is asking for property that was never in its possession

21 and in which it has no vested ownership interest.  As a result, the Court should strike E&E's

22 prayer for restitution.  *Madrid*, 130 Cal. App. 4th at 445 (sustaining demurrer to complaint where

23 plaintiff "alleged no viable theory upon which he could obtain restitution.").[9]

24 [9] For these same reasons, it is not clear that E&E has standing to assert a cause of action under the
   UCL.  To have standing under the UCL a plaintiff must have "suffered an injury in fact and [] lost
25 money or property as a result of" the alleged misconduct. Bus. & Prof. Code § 17204.  Some
   courts have found that to satisfy this requirement a plaintiff must have suffered an injury for
26 which it would be entitled to recover restitution. *Walker v. USAA Casualty Ins. Co.*, 474 F. Supp.
   2d 1168, 1172 (E.D. Cal. 2007) (finding that UCL standing requirement "should be construed
27 identically" with requirement for showing entitlement to restitution); *Buckland v. Threshold*
   *Enters. Ltd.*, 155 Cal. App. 4th 798, 817 (2007) ("Because the remedies for individuals under the
28 UCL are restricted to injunctive relief and restitution, the import of the requirement [that plaintiffs

- 18 -

4609919.1

MOTION TO DISMISS & STRIKE
3:08-CV-000871

**E.    Defendants Yung and Courbanou Are Not Subject To Personal Jurisdiction In California**

On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendants. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). There are two steps to this inquiry: The plaintiff must demonstrate both that there is jurisdiction over the defendant under the forum state's long-arm statute and that the exercise of personal jurisdiction is consistent with federal due process requirements. *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984). To meet this burden at the current stage of these proceedings, the plaintiff must make a *prima facie* showing that jurisdiction is appropriate. *Ziegler*, 64 F.3d at 473. Because E&E has not, and cannot, meet this *prima facie* burden with respect to Messrs. Yung and Courbanou, they must be dismissed for lack of personal jurisdiction.

"California's long-arm [statute] permits the exercise of jurisdiction to the limits of due process. Thus … analysis of personal jurisdiction under California's long-arm [statute] and the Constitution collapse into one." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) (citing Cal. Civ. Proc. Code § 410.10). Federal due process permits a court to exercise personal jurisdiction over a non-resident defendant only if the defendant has sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This constitutional requirement can be met either by demonstrating that the court has "general jurisdiction" or "specific jurisdiction" over the defendant. *Helicoptores Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). To sustain personal jurisdiction on the basis of general jurisdiction, a plaintiff must demonstrate that the defendant has maintained "continuous and

---

show 'lost money or property' under § 17204] is to limit standing to individuals who suffer losses of money or property that are eligible for restitution."); *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 716 (2007) (plaintiff had standing to bring UCL claim because plaintiff pleaded that the alleged misconduct resulted in diminution in the value of its assets and other *vested* interests). *But see G&C Auto Body, Inc. v. Geico Gen. Ins. Co.*, 2007 WL 4350907, at *4 (finding restitution requirement to be more narrow than the standing requirement). Thus, for the same reasons E&E is not entitled to recover restitution, it lacks standing under the UCL.

4609919.1

MOTION TO DISMISS & STRIKE
3:08-CV-000871

1    systematic general business contacts" with the forum state. *Id.* at 416. To instead meet the

2    specific jurisdiction test, a plaintiff must show that "the defendant has purposefully directed his

3    activities at residents of the forum, and the litigation results from alleged injuries that arise out of

4    or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)

5    (internal quotation marks omitted).

6           E&E cannot meet either of these tests as to either Mr. Yung or Mr. Courbanou.

7    Neither individual has conducted any business in California in recent years (Courbanou Decl. ¶ 3,

8    Yung Decl. ¶ 3), and thus certainly has not engaged in a continuous and systematic course of

9    business in the State. Mr. Yung is the Owner of Kam Hing and Chief Executive Officer of

10   Sunham. (Yung Decl. ¶ 2). He lives in New Jersey and works in New York. (*Id.*) Mr. Yung has

11   not been to California for business purposes in at least five years. (*Id.* ¶ 4). Mr. Courbanou is the

12   Chief Financial Officer and Chief Operating Officer of Sunham. (Courbanou Decl. ¶ 2). He lives

13   and works in New York and has not been to California since before he started working for

14   Sunham in 2006. (*Id.* ¶¶ 2, 4). During the recent past, neither Mr. Courbanou nor Mr. Yung has

15   attended meetings in California, entered into contracts with California residents, or otherwise

16   conducted business activities in California. (Yung Decl. ¶ 4; Courbanou Decl. ¶ 4).

17          The fact that Kam Hing and Sunham have not challenged personal jurisdiction is

18   immaterial to whether Messrs. Yung and Courbanou are themselves subject to local jurisdiction:

19   "Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*,

20   465 U.S. 783, 790 (1984); *see also Davis v. Metro Prods., Inc.*, 885 F.2d 515, 521 (9th Cir. 1989)

21   (the mere fact that a corporation is subject to local jurisdiction does not necessarily mean that its

22   nonresident officers and directors are as well). Neither Mr. Yung nor Mr. Courbanou has

23   "purposefully directed" any activities at residents of the forum, let alone activities that gave rise

24   to the purported injuries that are at issue in this litigation. To the contrary, the allegations in the

25   Complaint relating to Messrs. Yung and Courbanou concern purported conduct taken in their

26   official capacities as corporate officers and thus cannot be attributed to them as individual acts

27   creating personal jurisdiction. Compl. ¶¶ 15-16 (implicating Messrs. Courbanou and Yung in a

28   purported tax evasion scheme involving the business defendants). "For jurisdictional purposes,

- 20 -

MOTION TO DISMISS & STRIKE
3:08-CV-000871

1  the acts of corporate officers and directors in their official capacities are the acts of the

2  corporation exclusively and are thus not material for purposes of establishing minimum contacts

3  as to the individuals." *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal.

4  1999). Moreover, the allegations against them, which concern purchases made by a New York

5  entity from overseas corporations and tax obligations connected to those transactions, do not

6  involve activities "expressly aimed" at California. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104,

7  1111 (9th Cir. 2002). For these reasons, it is statutorily and constitutionally impermissible for

8  this Court to exercise personal jurisdiction over Mr. Yung or Mr. Courbanou.

9  **IV.    CONCLUSION**

10          For the reasons stated herein, E&E Complaint should be dismissed with prejudice,

11  and E&E's prayer for monetary relief under the UCL should be stricken.

12

13  Dated: March 7, 2008                    Munger, Tolles & Olson LLP
                                            GARTH T. VINCENT
                                            AMY TOVAR

14

15

16  By:_____/s/_____
                                            AMY TOVAR

17  Attorneys for Defendants
    KAM HING ENTERPRISES, INC.;

18  SUNHAM HOME FASHIONS, LLC;
    HOWARD YUNG; and ARTHUR

19  COURBANOU

20

21

22

23

24

25

26

27

28