SHARTSIS FRIESE LLP
ROBERT CHARLES WARD (Bar #160824)
rward@sflaw.com
NICHOLAS A. PILGRIM (Bar #232108)
npilgrim@sflaw.com
One Maritime Plaza, Eighteenth Floor
San Francisco, CA  94111
Telephone:  (415) 421-6500
Facsimile:  (415) 421-2922

Attorneys for Plaintiff
E&E Co., Ltd., a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| E&E CO., LTD., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>KAM HING ENTERPRISES, INC.; SUNHAM HOME FASHIONS, LLC; JJ INTERNATIONAL TRADING COMPANY; HOWARD YUNG; ARTHUR COURBANOU; and DOES 1-100, inclusive,<br><br>Defendants. | Case No.  3:08-00871 MMC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(B)(6) AND 12(B)(2) AND TO STRIKE IMPROPER PRAYER FOR RELIEF PURSUANT TO FED. R. CIV. PROC. 12(F); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          April 25, 2008<br>Time:         9:00 a.m.<br>Judge:        Hon. Maxine M. Chesney<br>Courtroom:  7, 19th Fl. |

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................. 3

    A.   The Sunham Group Coerces Chinese Manufacturers to Boycott Its Rival ............ 3

    B.   Using Shell Corporations and Unlawful Accounting Practices, the Sunham Group Engages in Unfair Business Practices ........................................................ 3

III. LEGAL ARGUMENT ....................................................................................... 4

    A.   The Complaint States a Cause of Action Under Twombly Because a Plausible Antitrust Violation is Alleged ................................................... 4

    B.   E&E Has Set Forth Facts Establishing a Conspiracy in Violation of the Cartwright Act .............................................................................................. 6

        1.   The Boycott Orchestrated by the Sunham Group Constitutes a Per Se Violation of the Cartwright Act .......................................... 7

        2.   Because the Sunham Group is Purposefully Restricting Competition, the "Relevant Market" is Irrelevant to the Boycott Claim ............................................................................................... 10

    C.   E&E Has Successfully Stated a Cause of Action for Exclusive Dealing Under the Cartwright Act ...................................................................... 11

        1.   Redwood Theatres Completely Undercuts the Sunham Group's 12(b)(6) Motion ............................................................................. 12

        2.   Discovery is Required To Determine Essential Issues Concerning the Relevant Market Notwithstanding Defendants' Incorrect Factual Assertions and Misleading Arguments ....................................... 15

        3.   Any Pro-competitive Effects of the Exclusive Contracts Constitute a Disputed Fact That Cannot Be Resolved in a 12(b)(6) Motion ............ 17

    D.   The Cases Involving Summary Judgment Motions or Different Economic Theories of Antitrust Law Cited By the Sunham Group are Inapposite ............... 18

    E.   The Sunham Group's Argument That More Specificity is Required is Meritless ................................................................................................... 20

    F.   The Complaint Successfully States a Cause of Action Under the UCL With Two Distinct Theories ................................................................................ 22

    G.   It is Premature to Decide Whether Yung and Courbanou Have Enough Contacts with California to Support Jurisdiction ......................................... 24

IV.  CONCLUSION ................................................................................................ 25

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C08-00871 MMC

OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bell Atlantic Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) ................................................................................................ 4

*Fieler v. Chrysler Corp., Number C 9303797 BAC,*
    1994 WL 478721 (N.D. Cal. Aug. 24, 1994) ............................................................. 15

*G&C Automobile Body, Inc. v. Geico General Insurance Co.,*
    2007 U.S. Dist. LEXIS 91327 ................................................................................... 23

*GTE New Media Services v. BellSouth Corp.,*
    199 F.3d 1343 (D.C. Cir. 2000) ................................................................................. 25

*Glen Holly Entertainment Inc. v. Tektronix Inc.,*
    352 F.3d 367 (9th Cir. 2003) ............................................................................... 4, 12

*Hospital Building Co. v. Trustees of Rex Hospital,*
    96 S. Ct. 1848 (1976) .................................................................................................. 6

*Jefferson Parish Hospital District Number 2 v. Hyde,*
    104 S. Ct. 1551 (1984) ............................................................................................... 20

*JM Computer Services, Inc. v. Schlumberger Technologies, Inc., Number C 95-20349,*
    1996 WL 241607 (N.D. Cal. May 3, 1996) ............................................................... 21

*Kellam Energy, Inc. v. Duncan,*
    668 F. Supp. 861 (D. Del. 1987) ............................................................................... 18

*Kingray v. NBA,*
    188 F. Supp. 2d 1177 (S.D. Cal. 2002) ..................................................................... 15

*Klor's v. Broadway-Hale Stores,*
    79 S. Ct. 705 (1959) .................................................................................................. 11

*Knevelbaard Dairies v. Kraft Foods, Inc.,*
    232 F.3d 979 (9th Cir. 2000) .............................................................................. 10, 24

*In re Late Fee and Over Limit Fee Litigation,*
    528 F. Supp. 2d 953 (N.D. Cal. 2007) ...................................................................... 20

*Northwest Wholesale Stationers v. Pacific Stationery,*
    105 S. Ct. 2613 (1985) ................................................................................................ 7

*O.S.C. Corp. v. Apple Computer, Inc.,*
    792 F.2d 1464 (9th Cir. 1986) ................................................................................... 18

*Sunbelt Television, Inc. v. Jones Intercable, Inc.,*
    795 F. Supp. 333 (C.D. Cal. 1992) ........................................................................... 15

*In re Tableware Antitrust Litigation,*
    363 F. Supp. 2d 1203 (N.D. Cal. 2005) ............................................................ 4, 6, 11

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- ii -

OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

*U.S. v. Montano,*
   250 F.3d 709 (9th Cir. 2001)...................................................................... 23

*U.S. v. Bontrager,*
   1995 U.S. App. LEXIS 23776 (9th Cir. 1995) ........................................ 23

*Western Parcel Express v. UPS, Inc.,*
   190 F.3d 974 (9th Cir. 1999)...................................................................... 18

*White v. Trans Union LLC,*
   462 F. Supp. 2d 1079 (C.D. Cal. 2006) ...................................................... 23

**STATE CASES**

*Amarel v. Connell,*
   202 Cal. App. 3d 137 (1988)................................................................. 6, 11

*Barquis v. Merchants Collection Association,*
   7 Cal. 3d 94 (1972) ...................................................................................... 23

*Bert G. Gianelli Distributing Co. v. Beck & Co.,*
   172 Cal. App. 3d 1020 (1985)................................................................. 9, 17

*Cellular Plus, Inc. v. Superior Court,*
   14 Cal. App. 4th 1224 (1993) ...................................................... 4, 6, 7, 21, 23

*Exxon Corp. v. Superior Court,*
   51 Cal. App. 4th 1672 (1997) .................................................................... 18

*Hudgins v. Neiman Marcus Group, Inc.,*
   34 Cal. App. 4th 1109 (1995) .................................................................... 22

*Kolling v. Dow Jones & Co.,*
   137 Cal. App. 3d 709 (1982)................................................... 8, 15, 17, 18, 22

*Magnecomp Corp. v. Athene Co.,*
   209 Cal. App. 3d 526 (1989) ...................................................................... 24

*Marin County Bd of Realtors, Inc. v. Palsson,*
   16 Cal. 3d 920 (Cal. 1976) ...................................................................... 1, 7

*Mihlon v. Superior Court,*
   169 Cal. App. 3d 703 (1985) ...................................................................... 24

*Oakland-Alameda C'ty Builders' Exchange v. F.P. Lathrop Construction Co.,*
   4 Cal. 3d 354 (Cal. 1971) .......................................................................... 10

*People's Choice Wireless, Inc. v. Verizon Wireless,*
   131 Cal. App. 4th 656 (2005) .................................................................... 19

*People v. Nat. Association of Realtors,*
   120 Cal. App. 3d 459 (1981)................................................................. 12, 22

*People v. Santa Clara Valley Bowling Proprietors' Association,*
   238 Cal. App. 2d 225 (1965)................................................................. 8, 12

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- iii -

*Peters v. Saunders*,
    1996 Cal. App. LEXIS 1179 (Cal. App. Dec. 19, 1996) ........................................ 10

*Redwood Theatres v. Festival Enterprises*,
    200 Cal. App. 3d 687 (1988)................................................................ 11, 14

*Rolley, Inc. v. Merele Norman Cosmetics, Inc.*,
    129 Cal. App. 2d 844 (1954) ................................................................ 19

*Roth v. Rhodes*,
    25 Cal. App. 4th 530 (1994) ................................................................ 19

*Saunders v. Superior Court*,
    27 Cal. App. 4th 832 (1994) ............................................................ 22, 23

*Saxer v. Philip Morris, Inc.*,
    54 Cal. App. 3d 7 (1975)................................................................ 7, 22

**FEDERAL STATUTES**

FRCP 9(b) ........................................................................................ 21

**STATE STATUTES**

Cal. Bus. & Prof. Code §16756 .................................................... 5, 12, 20

Cal. Bus. & Prof. Code. § 17200 ........................................................ 25

Cal. Bus. & Prof. Code § 17204 .................................................... 22, 23

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C08-00871 MMC

OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

Plaintiff E&E Co., Ltd. ("E&E") respectfully submits this memorandum in opposition to the Notice of Motion and Motion to Dismiss ("Motion") filed by Defendants Kam Hing Enterprises, Inc., Sunham Home Fashions, LLC, JJ International Trading Company, Howard Yung, and Arthur Courbanou (collectively "the Sunham Group"), pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(2) and 12(f), respectfully showing as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Long established antitrust principles militate against the dismissal of the complaint filed by E&E ("Complaint") in this action.  *First*, contrary to the Sunham Group's assertions, both customers and competitors benefit from antitrust laws designed to protect competition.  As the California Supreme Court has expressly observed, "[a]nother beneficiary of antitrust law is the competitor himself.  The preservation of competition, while indirectly aiding society by producing lower prices and higher quality goods and services, directly aids the scrupulous trader by insuring him a fair opportunity to compete on the market.  An anticompetitive practice 'is not to be tolerated merely because the victim is just one merchant whose business is so small that his destruction makes little difference to the economy.'"[1]

*Second*, a plaintiff injured by anticompetitive conduct does not need to define a relevant market in its complaint when a per se antitrust violation is challenged.  *Third*, "the conspiracy or combination necessary to support an antitrust action can be found where a supplier or producer, by coercive conduct, imposes restraints to which distributors involuntarily adhere.  If a single trader pressures customers . . . an unlawful combination is established."  Likewise,  the reverse is true: "[i]f a single firm succeeds in inducing one important supplier to cease dealing with a would-be competitor, the resulting accommodation 'would display all the essential elements of a boycott.'"

The Sunham Group's failure to acknowledge these bedrock principles of antitrust law permeates its Motion.  Similarly, the Motion's reliance on inapposite cases ignores clearly

---

[1]    *Marin County Bd of Realtors, Inc. v. Palsson*, 16 Cal. 3d 920, 935 (Cal. 1976) (citing *Klor's v. Broadway-Hale Stores*, 359 U.S. 207, 213 (1959)).

defined California case law, which establishes that E&E has alleged a viable cause of action under the Cartwright Act, setting forth all the necessary elements: (1) the formation and operation of a conspiracy; (2) wrongful acts done pursuant thereto; and (3) damage resulting from such acts.

Indeed, the Complaint not only states a viable cause of action, but it depicts a quintessential example of the sort of archaic, naked restraint on trade that inspired the creation of the antitrust laws in the first place. Essentially, Chinese manufacturers are coerced into complying with the Sunham Group's boycott demands for fear of, among other things, losing access to "the Sunham Group's largest and most lucrative marketplace," *i.e.*, California. Motion at 5. The result is that some manufacturers refuse to deal with E&E, a would-be competitor, and the Sunham Group necessarily faces less competition than it would have but for its purposefully anticompetitive behavior. Accordingly, the Sunham Group, as the primary orchestrator of the above-described boycott, is liable for per se violations of the Cartwright Act. Moreover, because the Sunham Group's restraint on trade is unreasonable, it is liable for antitrust violations under the rule of reason analysis as well, notwithstanding its misleading attempt to juxtapose its alleged sales of certain types of textiles to retail stores in the single state of California with a multi-billion dollar global market for all non-apparel textiles imported into the country.

The Sunham Group's Motion must also be denied because it relies on facts that are in dispute, and discovery is necessary for E&E to learn about the extent and breadth of the collusive agreements, the Sunham Group's revenues in California, its market share and similar facts. Discovery is also required to refute the Sunham Group's self-serving and unsupported affirmative defense that its exclusive dealing arrangements have pro-competitive effects.

Additionally, the Motion's arguments with respect to personal jurisdiction concerning defendants Yung and Courbanou are (1) flawed because intentional conduct is alleged, and (2) premature in the absence of focused discovery to determine, among other things, what assets, property, or other connections these individuals have in California. Finally, because the Complaint alleges unlawful behavior including antitrust violations and tax fraud, E&E has successfully stated a cause of action under California's Unfair Competition Law ("UCL").

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

## II.    FACTUAL BACKGROUND

### A.    The Sunham Group Coerces Chinese Manufacturers to Boycott Its Rival.

E&E and the Sunham Group sell Chinese-manufactured textiles to California retailers and consumers.  Compl. ¶ 10.  On information and belief, the Sunham Group sells several millions dollars worth of goods to retail stores in California on an annual basis.  *Id.* ¶ 11.  Many of the retailers that the Sunham Group sells to, stores such as Bed Bath & Beyond, Macy's, Kohl's, and Linens-n-Things, have a principal place of business and/or many outlet stores in California.  *Id.* ¶ 11.  Defendants concede that "California is the Sunham Group's largest and most lucrative marketplace."  Motion at 5.  Similarly, the Sunham Group acknowledges that it views E&E as a "rival" in its lucrative California market.  *Id.* at 3:7.

Although the Sunham Group sells millions of dollars worth of goods to California retailers, it purchases the textiles that it sells from Chinese manufacturers.  Compl. ¶ 10.  In an effort to maintain its market share against competitors such as E&E, the Sunham Group engages in certain illegal and/or unfair practices.  *Id.* ¶ 13.  For example, the Sunham Group has singled out E&E and demanded that Chinese companies with whom the Sunham Group does business not do business with E&E.  *Id.* ¶ 14.  Using its access to the large and lucrative California marketplace as leverage, the Sunham Group wrongfully demands exclusive dealing arrangements with some manufacturers in China, and specifically requires that certain manufacturers not do business with plaintiff.  *Id.*  ¶ 23.  The Sunham Group also extracts agreements from manufacturers not to sell certain products to its competitors.  *Id.* ¶ 14.  As a result, some manufacturers in China have agreed not to sell products to E&E in response to the Sunham Group's demands, and competition has been restrained and suppressed.  *Id.*  ¶¶ 23-24.

### B.    Using Shell Corporations and Unlawful Accounting Practices, the Sunham Group Engages in Unfair Business Practices.

The Sunham Group exploits shell or sham corporations to hide revenue and evade taxes that should otherwise be paid in the United States.  *Id.* ¶ 15.  Through the use and abuse of these entities, the Sunham Group purports to pay its shell companies a 15% markup on the products that it purchases in China and subsequently exports to the U.S.  *Id.*  In this fashion, the Sunham

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 3 -

1   Group artificially lowers its declared income to unlawfully evade taxes that would otherwise be

2   paid to the Internal Revenue Service.  *Id.*  Defendant Howard Yung is the primary beneficiary of

3   this tax evasion, and co-defendant Arthur Courbanou devised this deceptive scheme.  *Id.*

**III.    LEGAL ARGUMENT**

    **A.    The Complaint States a Cause of Action Under *Twombly* Because a Plausible Antitrust Violation is Alleged.**

7       Traditionally, under Ninth Circuit law, a complaint is "not subject to dismissal unless it

8   appeared beyond doubt that [the plaintiff] could prove no set of facts in support of its claims that

9   would entitle it to relief."  *Glen Holly Entertainment Inc. v. Tektronix Inc.*, 352 F.3d 367, 368 (9th

10  Cir. 2003).  The Supreme Court recently amended the 12(b)(6) standard so that a plaintiff

11  pleading a cause of action in federal court must include "only enough facts to state a claim to

12  relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

13  Hence, plausibility is key: a complaint "does not need detailed factual allegations."  *Id.* at 1964.

14      The Sunham Group's assertion that *Twombly* supports dismissal of the Complaint is

15  incorrect.  First, *Twombly* expressly stated that a complaint does not require detailed factual

16  allegations.  *Id. See also In re Tableware Antitrust Litig.*, 363 F. Supp. 2d 1203, 1204 (N.D. Cal.

17  2005) ("This standard is a liberal one that does not require a plaintiff to set forth all the factual

18  details of the claim, rather, all that the standard requires is that a plaintiff give the defendant fair

19  notice of the claim and the grounds for making that claim.").  Second, *Twombly* involved a class

20  action brought under the Sherman Act, whereas the Complaint involves a Cartwright Act claim

21  brought under California's broader state law.  *See Cellular Plus, Inc. v. Superior Court*, 14 Cal.

22  App. 4th 1224, 1242 (1993) (recognizing the broader scope and depth of the Cartwright Act).

23  Third, the Complaint alleges a per se violation under a group boycott theory.  By contrast,

24  *Twombly* did not involve an allegation that the defendants had engaged in a "purposefully anti-

25  competitive scheme."  *Cf., Glen Holly*, 352 F.3d at 376.  Fourth, and perhaps most importantly, in

26  *Twombly*, "the complaint leaves no doubt that plaintiffs rest their [Sherman Act] § 1 claim on

27  descriptions of parallel conduct and **not on any independent allegation of actual agreement**

28  **among the [defendants].**"  *Id*. at 1970 (emphasis added).  E&E, however, is not relying on a

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 4 -

1   theory of "parallel conduct" to infer that an anticompetitive agreement exists; rather, the

2   Complaint makes "independent allegations" of actual agreement and identifies the Sunham

3   Group's desire to "maintain its market share against competitors such as E&E" as the motivating

4   factor behind the boycott. Compl. ¶ 13.

5        In short, the Sunham Group overlooks the rationale and the logic embedded in *Twombly*,

6   both of which militate against granting the Motion. Although the Motion is silent on this point,

7   *Twombly* expressly recognized that an allegation of "conduct [that] indicates the sort of **restricted**

8   **freedom of action and sense of obligation** that one generally associates with agreement" would

9   in fact "state a §1 claim under this standard." 127 S. Ct. at 1966 n. 4 (emphasis added). The

10  instant Complaint satisfies this requirement in spates. In particular, the Complaint explicitly

11  alleges an agreement between manufacturers and the Sunham Group that it is the product of the

12  Sunham Group's demands that the manufacturers must refrain from doing business with its rival,

13  E&E. Compl. ¶¶ 14, 23. This is not merely parallel action suggestive of a possible agreement;

14  indeed, this is not a parallel action case. It is a straightforward boycott, a per se antitrust violation

15  because it implicates the core antitrust concern of "restricted freedom of action." *Cf.*, *Twombly*,

16  127 S. Ct. at 1970.[2]

17       Finally, as discussed in more detail below, the proper standard for determining the

18  specificity required to plead a California Cartwright Act claim is found in the explicit language of

19  the Act itself. Cal. Bus. & Prof. Code § 16756; *see infra* p. 12. Such a standard differs from the

20  Sherman Act § 1 claim discussed in *Twombly*. For a Cartwright Act claim, the "allegations must

21  be liberally construed, with a view to substantial justice. . . . We therefore treat as true all of the

22  _____

23  [2]    *Twombly* simply holds that allegations of conspiracy that are predicated solely on parallel conduct and an implied motive to conspire are insufficient, without something more, to state a cause of action under the Sherman Act. This reflects the fact that it is flawed logic to assume that because two people go for coffee at Starbucks at 9:00a.m. they must have planned to meet at Starbucks. The Court, therefore, held that there needs to be a factual context that makes it plausible not merely possible that the two coffee-getters arranged to meet at Starbucks, such as intrinsic reasons (*e.g.*, a plausible economic motive for why they would meet) or external (*e.g.*, an eye witness to the agreement) to transform mere parallel conduct into an agreement. Here, E&E is concededly the Sunham Group's "rival." Motion at 3:7. Thus, there is a huge motive and incentive on its part to "deal a blow to a rival" via the challenged boycott and/or exclusive dealing agreements. *Id.* Thus, the Complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

complaint's material factual allegations, including facts that may be implied or inferred from those expressly alleged." *Amarel v. Connell*, 202 Cal. App. 3d 137, 140-41 (1988);[3] *Accord In re Tableware*, 363 F. Supp. 2d at 1204-5 ("To this end, a plaintiff's complaint should set forth 'either direct or inferential allegations with respect to all the material elements of the claim.'") (citation omitted).   Nevertheless, to the extent that *Twombly* is persuasive authority, that case does not purport to overturn the long held principle that "in antitrust cases, where 'the proof is largely in the hands of the alleged conspirators'. . . dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly."   *Hospital Building Co. v. Trustees of Rex Hospital*, 96 S. Ct. 1848, 1853 (1976).

**B.    E&E Has Set Forth Facts Establishing a Conspiracy in Violation of the Cartwright Act.**

Accepting as true the facts set forth in the Complaint,  E&E's allegations clearly state a cause of action for a per se violation of the Cartwright Act.  To state a cause of action for conspiracy under the Cartwright Act, the Complaint must allege (1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts. *Cellular Plus*, 14 Cal. App. 4th at 1236.  "[I]n order to sufficiently state a cause of action, the plaintiff must allege in its complaint certain facts in addition to the elements of the alleged unlawful act so that the defendant can understand the nature of the alleged wrong and discovery is not merely a blind 'fishing expedition' for some unknown wrongful acts." *Id.* The question for a court is whether there are any "meaningful allegations of overt actions." *Id.*

In the instant action, the Sunham Group is not hard-pressed to identify the nature of the allegations against it, nor does the Complaint hide the "overt actions" that defendants are charged with committing.  The Complaint makes clear that the Sunham Group has been "coercing" Chinese suppliers and "demanding" that they not deal or do business with E&E if they want to work with the Sunham Group.  Compl. ¶¶ 14, 22 - 27.  E&E's allegations, therefore, successfully establish a cause of action identifying (1) the formation and operation of an anticompetitive

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

---

[3]    As it stands, this *Erie* matter is academic because the Complaint states a cause of action under either standard for the reasons stated above.

agreement (the boycott and wrongful creation of exclusive dealing arrangements); (2) wrongful results (some manufacturers in China have agreed not to sell products to E&E in response to the Sunham Group's demands); and (3) the damage resulting from the conduct (competition has been restrained and suppressed and the price of textile goods has been affected).  Compl. ¶¶ 23-24; *Cellular Plus*, 14 Cal. App. 4th at 1236; *see also Saxer v. Philip Morris, Inc.*, 54 Cal. App. 3d 7, 20 (1975) ("multifarious facts illustrative of nefarious agreements need not be alleged if the pleadings, liberally construed, are capable of an interpretation exhibiting the existence of facts constituting the combination, its object, and achievement in restraint of trade").

### 1.    The Boycott Orchestrated by the Sunham Group Constitutes a Per Se Violation of the Cartwright Act.

In California antitrust cases, the "threshold question" is whether the challenged conduct "should be judged per se violations of the Cartwright Act or reviewed under the 'rule of reason' standard."  *Marin County Bd of Realtors, Inc. v. Palsson*, 16 Cal. 3d 920, 930 (Cal. 1976).  In *Marin County*, the California Supreme Court established the test for distinguishing per se violations from those violations that are evaluated under the rule of reason standard.  *Id.* at 930.  The court indicated that per se violations encompass "certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal. . . .   Among these per se violations is the concerted refusal to deal with other traders, or, as it is often called, the group boycott."  *Id.* at 930-31.  Ultimately, the court held that the per se rule applied to situations where a "predatory practice" existed that was "directly aimed at eliminating competition."  *Id.* at 934.

In the instant action, the Complaint makes clear that the Sunham Group has been charged with orchestrating a boycott that singled out its competitors, a classic example of a "predatory practice" that subverts competition in the marketplace.  Accordingly, the per se approach should apply.  *Id.*; *see also Northwest Wholesale Stationers v. Pacific Stationery*, 105 S. Ct. 2613, 2619 (1985) ("Cases to which this Court has applied the per se approach have generally involved joint efforts by a firm or firms to disadvantage competitors by 'either directly denying or persuading or coercing suppliers or customers to deny relationships the competitors need in the competitive

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 7 -

1  struggle.").

2      The per se nature of the Sunham Group's illegal conduct is further supported by the

3  holding in *Kolling v. Dow Jones & Co.*, 137 Cal. App. 3d 709, 720-22 (1982). There, the court

4  saliently observed that "it is also now established that the conspiracy or combination necessary to

5  support an antitrust action can be found where a supplier or producer, by coercive conduct,

6  imposes restraints to which distributors involuntarily adhere. If a single trader pressures

7  customers . . . an unlawful combination is established, irrespective of any monopoly or

8  conspiracy. . . ." *Id.* at 720 (internal quotations and citations omitted). Additionally, the *Kolling*

9  court properly recognized that:

> The 'per se' doctrine means that a particular practice and the setting in which it occurs is sufficient to compel the conclusion that competition is unreasonably restrained and the practice is consequently illegal. . . . The test . . . is whether the agreement, or conduct, **interferes with the freedom of sellers or traders in such a manner as to prohibit or restrain their ability to sell in accordance with their own judgment**, and not what the particular effect the agreement or conduct, has on the actual prices.

14  *Id.* at 721-22 (emphasis added).

15     The Complaint alleges that the Sunham Group has taken "affirmative" steps by

16  demanding that its manufacturers impose a boycott targeting E&E and other competitors. These

17  allegations place this case in the realm of per se antitrust violations. *Id.* at 721 (noting that "[i]f,

18  for example, the supplier takes 'affirmative action' to bring about the involuntary acquiescence of

19  its dealers, an unlawful combination exists"). Accordingly, the per se standard is the appropriate

20  standard for evaluating the Sunham Group's predatory conduct in this action, and dismissal is not

21  warranted.[4]

22     Along these lines, the court in *Santa Clara Valley* ruled that "it is enough to show that

23  either the purpose of the combination [] or the means used [] were unlawful." *People v. Santa*

24  *Clara Valley Bowling Proprietors' Ass'n.*, 238 Cal. App. 2d 225, 240 (1965) (finding that the trial

25  court erred in applying the rule of reason and in not identifying a secondary boycott).[5] The

---

26  [4]     In reaching its holding, the *Santa Clara Valley* court specifically noted that "[t]he

27  gravamen of the offense against the Cartwright Act is the mere formation of the combination or conspiracy for the unlawful purpose of restraining trade." *Id.* at 238 (citation omitted).

28  [5]     The California Supreme Court in *Marin County* expressly approved of *Santa Clara Valley*

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 8 -

1    Complaint alleges that the challenged activities were adopted for the primary purpose of inducing

2    suppliers to cease doing business with E&E, thereby restraining and suppressing competition.

3    *See Santa Clara Valley* at 238-39.    Thus, under a solid line of California cases, the Complaint

4    sets forth a per se antitrust violation.

5        Noticeably, the Sunham Group has falsely suggested (without any evidentiary support)

6    that its exclusive dealing arrangement is a pro-competitive vertical restraint.  Motion at 8:12-13.

7    While it may be true that some vertical restraints can be pro-competitive, the group boycott at

8    issue in this case was imposed by Sunham Group on manufacturers for the sole purpose of

9    disadvantaging its rival and suppressing competition.  A plaintiff can "sustain a group boycott

10   theory of per se illegality with respect to restraints that are vertically imposed [with] a showing

11   that the restraint imposed by the manufacturer was not only conceived of and initiated by those in

12   direct competition with the plaintiff, but that those competitors used their economic power or

13   position to influence the manufacturer to act, not for its own advantage, but solely for the

14   advantage of those competitors."  *Bert G. Gianelli Distributing Co. v. Beck & Co.*, 172 Cal. App.

15   3d 1020, 1047 (1985), *overruled on other grounds by Dore v. Arnold Worldwide, Inc.,* 39 Cal.

16   4th 384 (Cal. 2006).  "[I]f the action of a manufacturer . . . is taken at the direction of its

17   customer, the restraint becomes primarily horizontal in nature in that one customer is seeking to

18   suppress its competition [therefore constituting a per se violation]."  *Id.* at 1045-46 (citation

19   omitted).

20       In sum, the Complaint identifies specific conduct on the part of defendants, *e.g.*, the

21   coercion of manufacturers by the Sunham Group to boycott its competitors.  These allegations,

22   therefore, satisfy *Gianelli* by establishing "some forbidden anti-competitive or monopolistic

23   objective" necessary to sustain a per se vertical restraint.  *Id*. at 1045-46.[6]    Additionally,

24   California law recognizes that, "[f]or a secondary boycott to violate the antitrust laws the

---

26   as an example where the per se rule was properly applied because of the coercive nature of the
     defendants' conduct.  16 Cal. 3d at 933, n. 9.

27   [6]     That the *Gianelli* court subsequently affirmed summary judgment after concluding that the
     plaintiffs had failed to adduce evidence of any anti-competitive or monopolistic objective
28   motivating defendants **after discovery** had run its course, does not change this rationale.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

defendant need not conspire with fellow competitors against the target competitor. A boycott by a single trader constitutes the necessary combination in restraint of trade if it is carried out through coercion, threats or intimidation upon the target's suppliers." *Peters v. Saunders*, 1996 Cal, App, LEXIS 1179, at * 4 (Cal. App. Dec. 19, 1996) (citations omitted).

### 2.  Because the Sunham Group is Purposefully Restricting Competition, the "Relevant Market" is Irrelevant to the Boycott Claim.

As demonstrated above, the Sunham Group's actions constitute a group boycott and a per se violation of antitrust laws. The California Supreme Court has long recognized, "[w]e need not belabor the obvious point in noting that group boycotts are illegal per se under traditional antitrust principles. . . . 'Group boycotts, or concerted refusals by traders to deal with other traders, have long been held to be in the forbidden category.'" *Oakland-Alameda C'ty Builders' Exchange v. F.P. Lathrop Constr. Co.*, 4 Cal. 3d 354, 365 (Cal. 1971).

Critically, when a per se violation is alleged, no inquiry into the "relevant market" is required. In a case that is particularly instructive, *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 982 (9th Cir. 2000), the court addressed an antitrust case originally brought in state court under the Cartwright Act where "the plaintiff milk producers claim that the defendant cheese makers conspired successfully to depress the prices they paid for milk produced in California." The Ninth Court reversed a dismissal of the action that had been granted after the defendants removed the case to federal court. In reaching its holding, the court recognized that, "[w]hen a per se violation . . . has occurred, there is no need to define a relevant market or to show that the defendants had power within the market." *Id.* at 986; *In re Tableware*, at 1206 (where a per se violation is alleged, "plaintiffs need not plead a relevant market"). On this rock of antitrust jurisprudence, the Sunham Group's motion founders.

Admittedly, courts invoke per se violations less frequently because sophisticated parties have had decades to study U.S. antitrust law and adjust their behavior accordingly. Few parties today openly coerce suppliers to boycott their competitors because antitrust law makes clear such conduct is illegal. Defendants, nevertheless, have been imposing archaic forms of antitrust behavior on suppliers in China with the direct goal of foreclosing competition. Compl. ¶¶ 14, 22-

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 10 -

24.  This type of collusive conduct, which impacts the California marketplace, is conclusively presumed to be unreasonable.  *Knevelbaard*, 232, F.3d at 986; *Klor's  v. Broadway-Hale Stores*, 79 S. Ct. 705, 709 (1959) (boycotts "have long been held to be in the forbidden category").

### C.   E&E Has Successfully Stated a Cause of Action for Exclusive Dealing Under the Cartwright Act.

In addition to a boycott claim that constitutes a per se violation of antitrust laws, the Complaint also states a cause of action under the Cartwright Act for unreasonable exclusive dealing contracts.   *See* Compl. ¶ 14 ("the Sunham Group demands exclusive dealing arrangements with some manufacturers in China").   Where an exclusive dealing arrangement does not involve a boycott motivated by an anticompetitive purpose, such conduct is generally reviewed under the rule of reason test.  *See generally, Redwood Theatres v. Festival Enters.*, 200 Cal. App. 3d 687, 698-707 (1988) (discussing same).  Although the rule of reason test only enters into consideration if a defendant charged with per se violations establishes pro-competitive justifications for its conduct, E&E has successfully pleaded a Cartwright Act cause of action under this standard as well.  *See In re Tableware*, 363 F. Supp. 2d at 1205-6.

The Complaint alleges that the Sunham Group has demanded and extracted unreasonable exclusive dealing arrangements with manufacturers that single out its rival, E&E.  Because some manufacturers have refused to do business with E&E as a result of these coerced agreements, the Sunham Group has suppressed competition and affected the price of textiles sold in California. Under the broad terms of the Cartwright Act, the allegations set forth, particularly when liberally construed, state a cause of action.  *Id.* at 1204; *Amarel*, 202 Cal. App. 3d at 140-41 ("In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice. . . .  We therefore treat as true all of the complaint's material factual allegations, including facts that may be implied or inferred from those expressly alleged.").

Tellingly, the Sunham Group fails even to cite the express language of the Cartwright Act that controls for purposes of this Motion.

In any indictment, information or complaint for any offense named in this chapter,

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 11 -

1    it is sufficient to state the purpose or effects of the trust or combination, and that
     the accused is a member of, acted with, or in pursuance of it, or aided or assisted in
2    carrying out its purposes, without giving its name or description, or how, when and
     where it was created.
3

4    Cal. Bus. & Prof. Code §16756.

5        The Complaint satisfies the requirements of Section 16756 of the Act because it "state[s]

6    the purpose or effects of the trust or combination," and alleges that the Sunham Group not only

7    aided in carrying out its purposes, but demanded the combination to begin with.  *Id.*  Although the

8    Sunham Group ignores the wording of the Cartwright Act, the express language of the statute is

9    fatal to their arguments that the Complaint needs to identify with specificity details that are not

10   called for under the terms of the statute.  *See* Motion at 6:11-14; 12:8-3.  "When a statute is clear

11   on its face it is both unnecessary and improper to engage in the murky interpretation process. . . .

12   It is the Legislature's responsibility to determine what is wise or practical . . .  and where there is

13   no uncertainty or ambiguity on the face of a statute the court should apply it according to its plain

14   meaning."  *People v. Nat. Ass'n of Realtors*, 120 Cal. App. 3d 459, 475 (1981).

15       **1.    *Redwood Theatres* Completely Undercuts the Sunham Group's
                 12(b)(6) Motion.**
16

17       The Sunham Group's contention that for an exclusive dealing agreement to exist, "a party

18   must agree to 'deal only with' one party" is tautological and incorrect as a matter of law.  Motion

19   at 13:13-17.  Under the Cartwright Act, "[it] is the restrictive nature of the agreement, not the fact

20   of exclusivity, which is objectionable. . . .  It matters not that the plaintiff was not forced to

21   purchase his entire requirements. . . ."  *Santa Clara*, 238 Cal. App. 2d at 238  (citation omitted).

22       Similarly, the Sunham Group is incorrect when it argues that E&E's claim allegedly fails

23   as a matter of law because E&E has procured products from other Chinese manufacturers that

24   were not part of the group boycott.  Motion at 6:26-28.  Contrary to the Sunham Group's

25   contention, E&E does not have to plead that it cannot acquire textiles from any manufacturer to

26   state a cause of action.  *Id.*; *Glen Holly*, 352 F.3d at 375 (noting that a plaintiff "need not prove an

27   actual lessening of competition in order to recover.  Competitors may be able to prove antitrust

28   injury before they actually are driven from the market and competition is thereby lessened").  To

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 12 -

hold otherwise would permit anticompetitive behavior to continue until it succeeds in eradicating competition altogether. The law, of course, does not require inactivity in the face of ongoing antitrust violations. *See id.* Moreover, whether E&E has been able to procure textiles from Chinese manufacturers outside the boycott (and if not, what alternative sources it has been forced to turn to) constitute disputed facts that can not be presumed by Defendants at the pleading stage.[7]

One of the cases relied upon by the Sunham Group in support of its Motion, *Redwood Theatres*, demonstrates the fundamental flaw in Defendants' logic. In *Redwood Theatres*, the court reviewed whether summary judgment was properly granted in a case in which a small motion picture exhibitor brought suit against another exhibitor and four major film distributors. The plaintiff alleged that the defendant distributors had entered into unwritten agreements to license the first-run feature films to the defendant exhibitor, even though the plaintiff made better bids to exhibit the films at its local theater. *Id.* Although the defendants argued that plaintiff was able to receive *non* first-run films, the court agreed with the plaintiff's theory that its inability to lease first-run films due to the defendants' conduct created a triable issue for a jury to decide regarding its antitrust claim.

The court used an analogy that explained in part its rationale. According to the court, "[i]magine a series of contract bridge tournaments in which the king of spades and queen of hearts . . . are consistently removed from the hand of one player and replaced by a numbered card. Although the player may win some hands, he is sure to place low in the competitive standings, tournament after tournament, no matter how skillfully he plays." *Id.* at 707. In other words, even if the conspiracy orchestrated by the Sunham Group permits E&E to obtain other products from different manufacturers in China, that would be the beginning, rather than the end of the rule of reason analysis to determine whether the exclusive agreements, nevertheless, unreasonably restrain trade. *See id.* at 708 ("If this hypothesis is correct, the presence of exclusive dealing

---

[7]     The Sunham Group's claim that E&E "admits [that it] continues to purchase textiles in China" is factually inaccurate. Motion at 11:20. The Complaint contains no such admission. Instead, Paragraph 10 establishes that E&E and the Sunham Group are competitors both in purchasing goods from Chinese manufacturers and in selling goods to major U.S. retailers. Compl. ¶ 10.

OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

agreements between theatre circuits and major distributors may entrench the position of established motion picture exhibitors and pose formidable barriers to entrepreneurs. . . . Both the legislative history and subsequent interpretation of the Sherman Act reveal that it was intended to prohibit unreasonable restraints on the freedom of entrepreneurs to enter new markets or to expand a small market share."). For example, if the Sunham Group has successfully locked up key suppliers or suppliers of key products, an unreasonable restraint exists, and discovery is necessary to confirm or disprove this thesis. *Id.*

*Redwood Theatres* thoroughly demonstrates that it would be improper to dismiss E&E's Complaint at the pleading stage because questions of fact dictate the result under the rule of reason test. It is true, as the Sunham Group claims, that the court affirmed a summary judgment disposition on the rule of reason claim. It did so, however, only for the third co-defendant, Orion, which had a three percent market share "[b]ased on ticket sales . . . for the five-year period at issue." *Id.* at 714. The court explained its ruling as to Orion, not based on market share solely, but on the fact that Orion was "a new entrant and a relatively marginal participant in the industry [thus] it would be anomalous to hold that it was responsible for imposing barriers to fair competition among exhibitors." *Id.* Needless to say, in the instant case, there has been no discovery to shed light on the parties' sales figures and market share unlike *Redwood Theatres*, which was at the summary judgment stage. In addition, Defendants' arguments are premised on incorrect factual assertions and conclusions that are in dispute. *See infra* pp. 14-17.

Moreover, as the *Redwood Theatres* court noted, "plaintiffs have won a share of the cases by successfully proving collusion among distributors and competing exhibitors to deprive them of remunerative first-run films." 200 Cal. App. 3d at 698. Under this reasoning, collusion among manufacturers and a competing distributor to deprive the distributor's rivals states a plausible cause of action. *Id.*

Additional California authority bolsters the conclusion that the Complaint states a cause of action under the rule of reason test. For example, in *National Association*, the court applied the rule of reason test to evaluate whether the defendants' conduct was unreasonably anticompetitive. *Id.* Significantly, the court noted that "[i]t is not necessary to show suppression of all

- 14 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

competition." *Id*. at 478.  Instead, conduct "may yet be unlawful where **joint activity conflicts with the public interest in preserving competition**." *Id*. (emphasis added).

Here, the Complaint indicates that competition has been thwarted and suppressed as a result of the Sunham Group's coerced agreements.  Compl. ¶¶ 23-24.  The unreasonable effect of this restraint on trade as alleged in the Complaint (independent from its anticompetitive purpose) is sufficient to state a rule of reason antitrust violation under the Cartwright Act.  *Id. See also Sunbelt Television, Inc. v. Jones Intercable, Inc.,* 795 F. Supp. 333, 336 (C.D. Cal. 1992) (plaintiff properly pleaded an antitrust violation where plaintiff alleged that the basis for defendants' conduct was its "desire to restrain, inhibit and handicap competition").  Crucially, the elements of harm both to competition and to E&E that are pleaded in the Complaint distinguishes this lawsuit from case law cited in the Motion like *Fieler v. Chrysler Corp.*, No. C 9303797 BAC, 1994 WL 478721, at *2 (N.D. Cal. Aug. 24, 1994), where the court granted a motion to dismiss because the plaintiff "fail[ed] to show an injury to competition, as opposed to an injury to [plaintiff's] business."  *See also Kingray v. NBA,* 188 F. Supp. 2d 1177, 1196 (S.D. Cal. 2002) (dismissing complaint where plaintiffs "contend they are not required to allege intent to harm competition").

### 2.    Discovery is Required To Determine Essential Issues Concerning the Relevant Market Notwithstanding Defendants' Incorrect Factual Assertions and Misleading Arguments.

The Sunham Group misconstrues fundamental principles of antitrust law when it urges the court to dismiss the exclusive dealing claim as a matter of law on the basis of its alleged lack of market power and the putative "pro-competitive" effects of its vertical restraints.

> To prove an exclusive dealing arrangement unlawful, the distributor **must show that it was intended to, or actually did, unreasonably restrain trade.**  The 'rule of reason' permits certain restraints upon trade to be found reasonable.  In order to determine whether the restrictions are reasonable, 'the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint, and its effect, actual or probable.  The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts. Whether a restraint of trade is reasonable is a **question of fact to be determined at trial**.'

*Kolling*, 137 Cal. App. 3d at 726, 727 (internal citations omitted) (emphasis added).

S**HARTSIS** F**RIESE** LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

1    The Complaint alleges that the Sunham Group extracted agreements in order to suppress

2    competition.  This satisfies the first prong under *Kolling* to establish that an exclusive dealing

3    arrangement is unlawful.  *Id.*  With respect to the second, alternative prong, which involves

4    determining if the exclusive arrangements unreasonably restrained trade, the Motion entirely

5    overlooks the factual nature of this inquiry.  Instead, the Sunham Group seeks to define a relevant

6    market on terms that are favorable to itself but not supported by any actual evidence.  This

7    attempt to convert its Motion into a summary adjudication of disputed facts is improper,

8    particularly where discovery is required on pivotal issues such as Defendants' sales and market

9    share.

10    In particular, the Sunham Group's artful attempt to define the market as a "global" or

11    nationwide market for textiles, irrespective of where they are sold, is unsupported by either

12    California case law or economic theory.  First, the Complaint does not state that the global or

13    nationwide market for textiles is the appropriate relevant market in this action.  Instead, the

14    Complaint merely alleges that the "Sunham Group sells several million dollars of textile goods

15    that ultimately are sold in retail stores **in California**." Compl. ¶ 11 (emphasis added).  Second,

16    the Sunham Group's attempt to juxtapose their "alleged" but unverified sales figures in California

17    of certain types of textiles to a billion dollar national or global market for all non-apparel textiles

18    in misleading in the extreme.[8]  Although the Sunham Group argues (without support) that its

19    market share is small, its website states that Sunham Home Fashions is "among the largest

20    importers of home textile products in the U.S." *See http://site.sunham.com/about/.*  Discovery

21    alone will resolve which of the Sunham Group's inconsistent statements is truthful.

22    The Sunham Group also relies on other disputed facts and unsupported conclusions to

23    support its Motion.  For example, the Sunham Group's Motion rests on its claim that "it is

24    impossible that vertical agreements between a few manufacturers and a single distributor . . .

25

---

26    [8]    The precise dollar value of the Sunham Group's annual sales nationwide is clearly an issue only discovery can resolve.  However, it is misleading, at the very least, to misrepresent the

27    factual allegations in the Complaint regarding Defendants' sales to retail stores in California, and then to transplant this "several million dollar" allegation to the multi-billion non-apparel textile

28    market nationwide for imported goods, as the Sunham Group attempts to do.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C08-00871 MMC

OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

could impair competition significantly in the multi-billion dollar textile industry."  Motion at 9-10.  This argument relies entirely on an improper juxtaposition of California versus national sales, and other disputed facts that cannot be resolved in a motion to dismiss.  For example, there has been no discovery on the extent or duration of the collusive agreements, whether only a "few manufacturers" have been locked in by the agreements, the level of the Sunham Group's revenues in California, its market share, the so-called pro-competitive effects of the agreement, and other relevant facts.

In conclusion, the issue of market share and the determination of the Sunham Group's market power is a highly fact-specific matter that hardly can be conclusively decided on a 12(b)(6) motion where the parties have not had the chance to provide evidence concerning the "nature and breadth of the market," the parties' respective market share; the nature and scope of the exclusive dealing arrangements extracted by the Sunham Group; its "reason for adopting" the agreements, and various other related considerations.  *Kolling*, 137 Cal. App. 3d at 726, 727.

### 3. Any Pro-competitive Effects of the Exclusive Contracts Constitute a Disputed Fact That Cannot Be Resolved in a 12(b)(6) Motion.

Under California law, whether challenged exclusive dealing arrangements have "pro-competitive" effects constitutes a legal defense that, if true, could defeat a claim of antitrust violations unless rebutted by the plaintiff.  *See Bert G. Gianelli Distrib. Co.,* 172 Cal. App. 3d at 1033 (identifying as one of defendants' affirmative defenses their claim that their exclusive arrangements "encouraged and promoted competition").  Because some vertical restraints have pro-competitive effects, the Sunham Group argues that its Motion should be granted.  This contention relies on fallacious logic and inapposite case law.  Although it is true that some courts have recognized pro-competitive justifications for certain vertical restraints, the Sunham Group fails to provide any economic justifications for the specific vertical restraints challenged by the Complaint.  This failure is not coincidental: no such facts can be identified in the context of a 12(b)(6) motion because the facts pleaded in the Complaint must be accepted as true.  At this stage, there is no evidence to justify the Sunham Group's self-serving conclusion that its vertical restraints necessarily have pro-competitive effects that outweigh the anticompetitive effects on

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 17 -

the market.

In short, the Complaint identifies facts depicting the unreasonableness of the Sunham Group's exclusive arrangements. Because the reasonableness of an exclusive dealing arrangement is a question of fact, even if the Sunham Group can allege any "pro-competitive" reasons to justify its agreements, such arguments, which are tantamount to an affirmative defense, should be marshaled after fact discovery has taken place. *Id.* at 1033; *Kolling*, 137 Cal. App. 3d at 727.

### D. The Cases Involving Summary Judgment Motions or Different Economic Theories of Antitrust Law Cited By the Sunham Group are Inapposite.

The Sunham Group's Motion is replete with citations to cases that are easily distinguishable from the instant action because they were resolved at the summary judgment level or after the plaintiffs had concluded their case in chief. For example, in *Exxon Corp. v. Superior Court*, 51 Cal. App. 4th 1672, 1682 (1997), the court simply recognized that although determination of the relevant market is generally "a question of fact," the evidence offered by the plaintiffs after discovery failed to create a triable issue with respect to the defendant's market power. Similarly, *Kellam Energy, Inc. v. Duncan*, 668 F. Supp. 861 (D. Del. 1987) is also distinguishable. That case involved a disputed contractual relationship between a gasoline supplier and a retailer where the court granted summary judgment because the plaintiff failed to "produce[] any evidence establishing that the contracts foreclosed a substantial share of competition." *Id.* at 884. The record in that case revealed that five of the plaintiff's stations were supplied by a competitor of the defendant. *Id.* The court ruled that this proved that the parties' contract could not have been coercive. *Id.*

In a similar vein, the Sunham Group's reliance on other summary judgment cases is misplaced. In *Western Parcel Express v. UPS, Inc.*, 190 F.3d 974, 976 (9th Cir. 1999), the court affirmed summary judgment because the record revealed that the disputed contracts were "volume discount contracts," not coerced exclusive arrangements. Equally, in *O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1467 (9th Cir. 1986), the court affirmed summary judgment because the defendants rebutted the allegations in the complaint with "probative

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 18 -

1    evidence supporting an alternative interpretation of a defendant's conduct," and the plaintiff

2    failed to "come forward with specific factual support of its allegations of conspiracy."

3    Defendants' reliance on *Apple Computer* is also misplaced because the court there specifically

4    recognized that "[i]t is appropriate to apply the *per se* rule when the manufacturer's primary

5    motivation for its action is anticompetitive." *Id.* That ruling from the Ninth Circuit bolsters

6    E&E's previously discussed argument that this is a per se violation case. *See supra* pp. 6-10.

7         Alternatively, a number of the cases cited in the Motion are distinguishable from the

8    present matter because they involve vastly different economic scenarios and, hence, trigger

9    different economic considerations under the rule of reason balancing test. For example, the

10   Sunham Group seeks refuge under *Roth v. Rhodes*, 25 Cal. App. 4th 530, 542 (1994), which

11   addressed whether a landlord had a legal right to lease space to only medical doctors. The court,

12   however, affirmed summary adjudication in favor of the defendant landlord because the plaintiff

13   failed to provide evidence of "any agreement between [the defendants]." *Id.* at 536-37.

14        Other cases cited by the Sunham Group include franchisor-franchisee relationships (*e.g.*,

15   *Exxon* and *Rolley, Inc. v. Merele Norman Cosmetics, Inc.*, 129 Cal. App. 2d 844 (1954)), where

16   the coercion element of an antitrust case is lacking because the parties voluntarily accepted an

17   agreement that at one point seemed attractive to them; or cases involving whether manufacturers

18   have a right to choose not to distribute their products to distributors who sell their products at cut-

19   rates, thereby lessening the value of the manufacturer's brand. *See Rolley*, 129 Cal. App. 2d at

20   846 (noting the retailers were all free to discontinue the franchise relationships "at their

21   pleasure"). In these line of cases, the courts are concerned about interbrand competition rather

22   than intrabrand competition, and are wary about telling manufacturers/franchisors how they

23   should run their business. In their own words, they do not wish to "force a company to either let

24   its competitors have all of a particular category of sales, or force it to prop up its competitors

25   financially." *People's Choice Wireless, Inc. v. Verizon Wireless*, 131 Cal. App. 4th 656, 672

26   (2005). Because the Motion relies on cases implicating different economic concerns and, hence,

27   different economic analyses models under the fact-specific rule of reason test, these cases should

28   have little weight in this action.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C08-00871 MMC

OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

1     Similarly flawed is the Sunham Group's reliance on dicta from a concurring opinion in

2  *Jefferson Parish* where Justice O'Connor opined on the appropriate standard to evaluate the

3  challenged conduct in her concurring opinion "even without engaging in a detailed analysis of the

4  size of the relevant markets." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 104 S. Ct. 1551, 1576

5  (1984) (O'Connor, J. concurring).    Critically, the matter came before the Court only after the

6  plaintiff had lost at the trial level, but won before an appeals court.    Moreover, the plurality

7  opinion had already discussed and analyzed the relevant market. *Id.* at 1568.    Thus, the parties

8  had had ample opportunity to offer competing theories on the relevant product and geographical

9  market and to muster facts supporting whether the challenged conduct had any negative impact.

10  Moreover, Justice O'Connor did not say that it was appropriate to dismiss an action without a

11  "detailed analysis," but instead simply stated that the rule of reason should apply to the

12  challenged tying conduct in that action. *Id.* at 1576.    Here, by contrast, a boycott is alleged, and

13  there is no definitive proof of facts peculiar to the Sunham Group's market share and sales.

### E.    <u>The Sunham Group's Argument That More Specificity is Required is Meritless.</u>

16     As a last resort, the Sunham Group incorrectly claims that the Complaint should be

17  dismissed because it purportedly "does not provide any information about the number of

18  manufacturers involved, their names, or the volume of their sales."    Motion at 6:11-13.    This

19  argument is flawed in several respects.    First, under the express language of the Cartwright Act,

20  "it is sufficient to state the purpose or effects of the trust or combination, and that the accused is a

21  member of, acted with, or in pursuance of it . . . **without giving its name or description, or how,**

22  **when and where it was created**."    Cal. Bus. & Prof. Code § 16756 (emphasis added).    The

23  language of the Act is fatal to the Sunham Group's argument that E&E must "provide factual

24  support as to when and where the alleged agreements were reached," and the Motion's failure to

25  reckon with the Act is a glaring example of why dismissal is not warranted.    Motion at 6:13-14.

26     Significantly, the Sunham Group's reliance on dicta from federal cases cannot defeat a

27  Cartwright Act cause of action that satisfies the statutory pleading requirements.    Thus, to the

28  extent that *In re Late Fee and Over Limit Fee Litigation*, 528 F. Supp. 2d 953, 962 (N.D. Cal.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 20 -

1    2007), supported a dismissal of allegations that "provide no details as to when, where, or by

2    whom th[e] alleged agreement was reached," that language is trumped by the express wording of

3    the Cartwright Act. That case is also distinguishable from the present matter because it involved

4    "parallel conduct that could just as well be independent action," and the court granted plaintiffs

5    leave to amend expressly to state whether any facts establishing an anticompetitive agreement

6    existed. *Id.* at 961-962.[9]

7        Furthermore, the specificity argument raised by the Sunham Group has been previously

8    analyzed and rejected by the courts.

9        In considering whether a complaint provides insufficient factual support for a
10   legally viable theory of relief, a useful thought experiment is to ask "what could
     plaintiff plead in an amended complaint to repair the defect?" The answer is often
11   illuminating. Defendants respond that "[p]laintiffs [should] allege when [the
     conspiracy] conversations took place, how many occurred, who participated,
12   where the conversations took place, [and] what topics were discussed" as well as
     specify "meeting dates," "meeting places" and name "individuals employed by *
13   * * Defendants who allegedly participated." . . . . This accurately characterizes
     what is missing from the CAC, but such allegations are commonly required only
14   under FRCP 9(b)'s heightened pleading standard -- and, by implication, are not
     required under standard Rule 8(a) notice pleading. The Supreme Court has
15   recently reaffirmed its disapproval of judicially created heightened pleading
     standards in general. . . .

16   *In re Tableware,* 363 F. Supp. 2d at 1206.

17       Finally, numerous courts have recognized "the practical inability of a typical plaintiff to

18   allege at the outset of its Cartwright Act claim the full details of an alleged price-fixing

19   agreement. Because of the well-known wrongfulness of price fixing agreements, conspirators

20   rarely make such agreements in the open or document their illicit agreements." *Cellular Plus*, 14

21   Cal. App. 4th at 1239. As California cases acknowledge, "[w]hile the complaint may not be as

22   artistically drawn as might be desired, it is the exception rather than the rule to discover a model

23   pleading in antitrust litigation. Perhaps this is the result of the very nature of the action itself.

24   _____

25   [9]    *JM Computer Services, Inc. v. Schlumberger Technologies, Inc.*, No. C 95-20349 1996
     WL 241607 (N.D. Cal. May 3, 1996) also fails to take into account the language of the
26   Cartwright Act concerning the level of specificity required to set forth a claim under California
     law. That case is also distinguishable because the plaintiff there merely alleged exclusive dealing
27   agreements existed while the Complaint discusses the motive for the agreements, the primary
     orchestrator, and the scope of the arrangements, which restrict and suppresses competition and
28   "single out" E&E. *Id.* at *4.

OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1   Antitrust schemes generally are conceived in secrecy and live their lives in relative obscurity.  It

2   is only when they are called to face their creator that they betray their theretofore seemingly

3   innocuous existence."  *Saxer*, 54 Cal. App. 3d at 26-27.  The Sunham Group should not be able to

4   avert its day of reckoning under the Cartwright Act.  *Id.*

5            **F.     The Complaint Successfully States a Cause of Action Under the UCL With**
             **Two Distinct Theories.**

6

7            In addition to targeting the Sunham Group's anticompetitive behavior under the

8   Cartwright Act, the Complaint also successfully sets forth a cause of action under the California

9   Business and Professions Code Section 17200, otherwise known as the UCL.  The UCL prohibits

10  all business practices that are "unlawful, unfair or fraudulent, not merely anticompetitive business

11  practices."  *Hudgins v. Neiman Marcus Group, Inc.*, 34 Cal. App. 4th 1109, 1126 (1995).  Having

12  properly alleged a cause of action against the Sunham Group under both the per se violation and

13  rule of reason theories of antitrust law, E&E has satisfied the "unlawful" element of the UCL.[10]

14  *National Association*, 120 Cal. App. 3d at 475, 476 (holding that a Cartwright Act violation is a

15  predicate for UCL liability).

16           E&E's Complaint also satisfies the "unlawful" and "unfair" prongs of the UCL with

17  respect to its allegations that the Sunham Group intentionally engages in tax fraud to undersell

18  competitors.  Significantly, a UCL action may be brought "by any person who has suffered injury

19  in fact and has lost money or property as a result of such unfair competition."  Cal. Bus. & Prof.

20  Code § 17204.  "It is not necessary that the predicate law provide for private civil enforcement."

21  *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994).  "Virtually any state, federal or

22  local law can serve as the predicate for an action under [Section] 17200.  *Podolsky v. First*

23  *Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996).

24           The Sunham Group does not deny that the Complaint sets forth an allegation of unlawful

25

26  _____

    [10]    The Sunham Group's footnote suggestion that E&E lacks antitrust standing is patently
27  false.  "The antitrust laws are designed to protect the public, as well as more immediate victims,
    from a restraint of trade or monopolistic practice which has anticompetitive impact on the market.
28  . . .    Thus, the antitrust laws allow private enforcement by an aggrieved party, even if the
    complainant be but a single merchant."  *Kolling*, 137 Cal. App. 3d at 724.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1   conduct with respect to the Sunham Group's "tax evasion scheme," nor does it deny that this

2   conduct amounts to a wrongful business practice. Compl. ¶¶ 15-16. Instead, the Sunham Group

3   argues that the allegation does not "identify a single law violated by any defendant. . . ." Motion

4   at 15. This attempt at sophistry is unavailing. Unlawful acts are "anything that can properly be

5   called a business practice and that at the same time is forbidden by law." *Barquis v. Merchs.*

6   *Collection Ass'n.*, 7 Cal. 3d 94, 113 (1972). California courts have concluded that receiving

7   secret rebates amounts to unlawful activity, for example. *Saunders*, 27 Cal. App. 4th at 840-41.

8   Given the broad language and intent of the UCL, there is no requirement that a specific criminal

9   statute be cited, only that the practice "is forbidden by law." *Barquis*, 7 Cal. 3d at 113. Thus, a

10  business practice relying on the use of shell corporations to hide revenue for tax evasion purposes

11  clearly constitutes unlawful activity and falls under the UCL. *See U.S. v. Montano*, 250 F.3d 709,

12  715 (9th Cir. 2001) (tax fraud abetted by the "use of fictitious entities" or "shell companies"

13  justifies longer sentencing); *U.S. v. Bontrager*, 1995 U.S. App. LEXIS 23776, at *8 (9th Cir.

14  1995) (same).

15      The Complaint plainly informs the Sunham Group of the nature of the challenged business

16  practices under the UCL so that it can defend itself. There is no greater requirement of specificity

17  to state a cause of action under California law. *Cellular Plus*, 14 Cal. App. 4th at 1236 (plaintiff

18  must allege enough facts that the defendant can understand the nature of the alleged wrong).[11]

19  Through discovery, E&E will doubtless learn more details about the specific manner in which the

20  Sunham Group has carried out its tax evasion scheme, which will permit identification of specific

21  criminal statutes if necessary. At the pleading stage, however, it is sufficient to allege facts

22  establishing "forbidden" conduct. The Complaint certainly provides specific details regarding the

23

24  _____

    [11]    E&E does not dispute the motion to strike the prayer for restitution, provided that it is
    afforded the opportunity to amend its Complaint should subsequent discovery reveal a basis for

25  this form of recovery. However, it is clear that E&E has standing for the UCL claims under
    either the antitrust or the tax fraud theories. This is because the prayer for injunctive relief

26  remains for a party that has been injured in fact, and "for purposes of injunctive relief, lost
    income is all the statute requires." *G&C Auto Body, Inc. v. Geico Gen. Ins. Co.*, 2007 U.S. Dist.

27  LEXIS 91327, at *13-14 (citing *White v. Trans Union LLC*, 462 F. Supp. 2d 1079, 1084 (C.D.
    Cal. 2006)); Compl. ¶ 19; Cal. Bus. & Prof. Code § 17204 (standing exists for any person who

28  has "lost money or property as a result of such unfair competition").

| | |
|---|---|
| Case No.<br>C08-00871 MMC | OPPOSITION TO MOTION TO DISMISS COMPLAINT;<br>MEMORANDUM IN SUPPORT THEREOF |

1  use and abuse of shell companies constituting the tax scheme sufficient to state a cause of action

2  under California law.  *See id.*

3          Finally, the mere fact that the tax fraud enables the Sunham Group to undersell

4  competition does not militate against the anticompetitive nature of this business practice.  It is

5  well recognized, for example, that price-fixing is condemned as anticompetitive behavior even if

6  there is an agreement to lower prices because of the latent threat the unfair business practice holds

7  to competition in the long-term once competition has been eviscerated by the anticompetitive

8  practices.  *Knevelbaard,* 232 F.3d at 988 (rejecting defendants' argument that "a conspiracy to

9  depress prices would not harm consumers but benefit them because "[i]t is competition. . . that

10  these statutes recognize as vital to the public interest. . . .   The public interest requires free

11  competition"); *Id.* ("Horizontal price fixing is a per se violation regardless of whether the prices

12  set are minimum or maximum.").

13      **G.      It is Premature to Decide Whether Yung and Courbanou Have Enough
                Contacts with California to Support Jurisdiction.**

14

15          In this diversity action originally brought in a California state court, the test for personal

16  jurisdiction is governed by California law.   Under California law, when "jurisdiction is

17  challenged by a nonresident defendant, the burden of proof is upon the plaintiff to demonstrate

18  that 'minimum contacts' exist between defendant and the forum state to justify imposition of

19  personal jurisdiction." *Magnecomp Corp. v. Athene Co.*, 209 Cal. App. 3d 526, 533 (1989).

20  However, "the plaintiff has the right to conduct discovery with regard to the issue of jurisdiction

21  to develop the facts necessary to sustain this burden." *Id.* (citing *Mihlon v. Superior Court*, 169

22  Cal. App. 3d 703, 710 (1985)).   E&E respectfully requests an opportunity for limited

23  jurisdictional discovery.   At present, the co-defendants' declarations scrupulously avoid

24  mentioning whether either defendant has property in this state.  Similarly, the declarations omit

25  whether Yung or Courbanou, an accountant, have bank accounts in California, have advertised or

26  sent sales or marketing material to this state, have websites marketing to or interacting with

27  California consumers, have California clients (in Courbanou's case), or have attended trade

28  shows and the like in California.  Additionally, the declarations do not discuss the nature and/or

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 24 -

1  duration of Yung or Courbanou's prior contacts with California.  For these reasons, the record is

2  unclear, and E&E requests limited discovery to identify each of the proper bases for personal

3  jurisdiction in this matter.  *Id.*; *see also GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d

4  1343, 1351-52 (D.C. Cir. 2000) (noting that jurisdictional discovery should be granted).

5          Notwithstanding a California plaintiff's entitlement to jurisdictional discovery, a

6  compelling basis exists to find that personal jurisdiction is present over Yung and Courbanou

7  even without discovery based on the intentional nature of the acts alleged in the Complaint.  As

8  the Ninth Circuit has emphasized, "where the conduct of corporate officers extends beyond

9  "untargeted negligence" and the individuals "should reasonably have known that their actions

10 'could have an effect . . . and would be felt [in a particular state],'" this constitutes purposeful

11 availment sufficient to establish personal jurisdiction over the individual shareholders.  *Davis v.*

12 *Metro Prods., Inc.*, 885 F.2d 515, 523 (9th Cir. 1989); *Id.* at 522 ("The record before us shows

13 that Smith and Miller, each 50% shareholders of Metro and its only officers and directors,

14 purposefully directed their activities toward Arizona when Metro solicited business from Arizona

15 residents.").  Thus, the fiduciary shield does not exonerate intentional acts of the corporation's

16 agents.  *Id*.

17 **IV.    <u>CONCLUSION</u>**

18         For the aforementioned reasons, E&E respectfully requests that the Motion be denied in

19 all respects, except as to the motion to strike the request for restitution under Cal. Bus. & Prof.

20 Code. § 17200.

21

22 DATED:      April 4, 2008                    SHARTSIS FRIESE LLP

23

24                                             By:*/s/ Robert Charles Ward*
                                                  ROBERT CHARLES WARD

25                                             Attorneys for Plaintiff
                                               E&E CO., LTD., a California corporation
26

27 6197\007\NPILGRIM\1501152.8

28

S<span>HARTSIS</span> F<span>RIESE</span> LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 25 -

OPPOSITION TO MOTION TO DISMISS COMPLAINT;
                                      MEMORANDUM IN SUPPORT THEREOF