GARTH T. VINCENT (SBN 146574)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:      (213) 683-9100
Facsimile:      (213) 687-3702
Email: *garth.vincent@mto.com*

AMY TOVAR (SBN 230370)
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, CA  94105-2907
Telephone:      (415) 512-4000
Facsimile:      (415) 512-4077
Email: *amy.tovar@mto.com*

Attorneys for Defendants
KAM HING ENTERPRISES, INC.; SUNHAM HOME
FASHIONS, LLC; HOWARD YUNG; and ARTHUR
COURBANOU

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| E&E CO., LTD., A California corporation,<br><br>            Plaintiff,<br><br>      vs.<br><br>KAM HING ENTERPRISES, INC.;<br>SUNHAM HOME FASHIONS, LLC; JJ<br>INTERNATIONAL TRADING<br>COMPANY; HOWARD YUNG,<br>ARTHUR COURBANOU; and DOES 1-<br>100, inclusive,<br><br>            Defendants. | CASE NO.  3:08-CV-00871-MMC<br><br>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(B)(6) AND 12(B)(2) AND TO STRIKE IMPROPER PRAYER FOR RELIEF PURSUANT TO FED. R. CIV. PROC. 12(F)<br><br>[Supplemental Declarations of Howard Yung and Arthur Courbanou in Support of Motion to Dismiss Pursuant to 12(b)(2) filed concurrently herewith]<br><br>DATE:   April 25, 2008<br><br>TIME:   9:00 a.m.<br><br>CTRM:   7 |

4792832

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................ 1

II.  ARGUMENT .............................................................................................................. 2

A.   E&E Cannot Escape *Twombly*'s Plausibility Requirement ................................. 2

B.   E&E Fails To Plead A Violation Of The Cartwright Act ..................................... 3

    1.   E&E Has Not Pled A Group Boycott Or Any Other *Per Se* Violation Of The Cartwright Act ........................................................................................ 3

    2.   E&E's Complaint Fails to State A Claim Under the Rule of Reason .................. 5

        a.   E&E Fails To Plead That The Alleged Vertical Exclusive Deals Harm Competition In A Tenable Antitrust Market ................................ 5

            (1)   E&E must define the relevant market to state a claim .................... 5

            (2)   E&E has failed to plead and cannot plausibly plead that the Sunham Group has market power ...................................................... 6

        b.   E&E's Conclusory Allegations Fail To Satisfy Federal Pleading Standards ........................................................................................... 8

C.   E&E Fails To Plead An Actionable Claim Under The UCL ............................... 9

    1.   E&E Lacks Standing Under The UCL ................................................................. 9

    2.   E&E Fails To Plead An "Unlawful" Or "Unfair" Business Practice Under The UCL ....................................................................................................... 11

D.   E&E Fails To Make A Colorable Showing That Jurisdictional Discovery Is Warranted ............................................................................................................. 12

III. CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Advanced Microtherm Inc., v. Norman Wright Mech. Equip. Corp.*,
No. C 04-02266 JW, 2004 WL 2075445 (N.D. Cal. Sept. 15, 2004) ...................................... 3

*Albrecht v. Herald Co.*,
390 U.S. 145 (1968) ............................................................................................................ 4

*AlliedSignal, Inc. v. City of Phoenix*,
182 F.3d 692 (9th Cir. 1999) .............................................................................................. 3

*Bell Atlantic Corp v. Twombly*,
127 S. Ct. 1955 (2007) ........................................................................................................ 2

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,
485 U.S. 717 (1988) ............................................................................................................ 3

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
788 F.2d 535 (9th Cir. 1986) ............................................................................................ 13

*Cappa v. CrossTest, Inc.*,
-- Cal. App. 4th --, 2008 WL 821637 (1st Dist. Mar. 28, 2008) ........................................ 10

*Colt Studio, Inc. v. Badpuppy Enterprise*,
75. F. Supp. 2d 1104 (C.D. Cal. 1999) .............................................................................. 14

*Continental T.V., Inc. v. GTE Sylvania, Inc.*,
433 U.S. 36 (1977) .............................................................................................................. 3

*Crown Paper Liquidating Trust v. American Intern. Group, Inc.*,
No. C 07-2308 MMC, 2007 WL 4207943 (N.D. Cal. Nov. 27, 2007) .................................. 2

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
557 F.2d 1280 (9th Cir. 1977) .......................................................................................... 13

*Davis v. Metro Prods., Inc.*,
885 F.2d 515 (9th Cir. 1989) ............................................................................................ 14

*Dr. Miles Med. Co. v. John D. Park & Sons Co.*,
220 U.S. 373 (1911) ............................................................................................................ 4

*Express, LLC v. Fetish Group, Inc.*,
464 F. Supp. 2d 965 (C.D. Cal. 2006) ............................................................................... 10

*Ezzo's Invs. Inc. v. Royal Beauty Supply, Inc.*,
243 F.3d 980 (6th Cir. 2001) .............................................................................................. 6

*Formula One Licensing, B.V. v. Purple Interactive LTD*,
No. C 00-2222 MMC, 2001 WL 34792530 (N.D. Cal. Feb. 6, 2001) .................................. 4

*G&C Auto Body, Inc. v. Geico Gen. Ins. Co.*,
No. C 06-04898 MJJ, 2007 WL 4350907 (N.D. Cal. Dec. 12, 2007) ................................. 10

*In re Dynamic Random Access Memory Antitrust Litig.*,
2005 WL 2988715 (N.D. Cal. Nov. 7, 2005) ..................................................................... 14

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) .......................................................................... 2, 3

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Late Fee and Over-Limit Fee Litig.,*
528 F. Supp. 2d 953 (N.D. Cal. 2007) ................................................................................ 3, 8

*In re Netflix Antitrust Litig.,*
506 F. Supp. 2d 308 (N.D. Cal. 2007) .................................................................................... 8

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde,*
466 U.S. 2. (1984) ..................................................................................................................... 8

*JM Computer Servs., Inc. v. Schlumberger Tech, Inc.,*
No. C 95-20349 JW, 1996 WL 241607 (N.D. Cal. May 3, 1996) ........................................ 8

*Klor's, Inc. v. Broadway-Hale Stores, Inc.,*
359 U.S. 207 (1959) .................................................................................................................. 4

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.,*
127 S. Ct. 2705 (2007) ............................................................................................................. 4

*Lovesy v. Armed Forces Benefit Assoc.,*
No. C 07-2745 SBA, 2008 WL 696991 (N.D. Cal. Mar. 13, 2008) .................................... 13

*Mendiondo v. Centinela Hosp. Med. Ctr.,*
No. 06-55981, 2008 WL 852186 (9th Cir. April 1, 2008) ..................................................... 2

*Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.,*
208 F.3d 655 (8th Cir. 2000) .................................................................................................. 8

*MMCA Group, Ltd. v. Hewlett-Packard Co.,*
No. C-06-7067 MMC (EMC),
2007 WL 1342586 (N.D. Cal. May 8, 2007) ....................................................................... 14

*Newcal Indus., Inc. v. Ikon Office Solutions,*
513 F.3d 1038 (9th Cir. 2008) ............................................................................................ 5, 6

*Northern Pacific Ry. Co. v. United States,*
356 U.S. 1 (1958) ..................................................................................................................... 3

*Nova Designs, Inc. v. Scuba Retailers Ass'n,*
202 F.3d 1088 (9th Cir. 2000) ............................................................................................ 4, 5

*O'Brien v. Camisasca Automotive Mfg., Inc.,*
-- Cal. App. 4th --, 2008 WL 802350 (2d Dist. Mar. 27, 2008) ....................................... 10

*Pebble Beach Co. v. Caddy,*
453 F.3d 1151 (9th Cir. 2006) .............................................................................................. 13

*Robinson v. Daimlerchrysler AG,*
No. 07-3258 SC, 2008 WL 728877 (N.D. Cal. Mar. 17, 2008) ......................................... 13

*State Oil v. Kahn,*
522 U.S. 3 (1997) ..................................................................................................................... 4

*Tanaka v. Univ. of S. Cal.,*
252 F.3d 1059 (9th Cir. 2001) ...................................................................................... 5, 6, 7, 8

*Toys "R" Us, Inc. v. F.T.C.,*
221 F.3d 928 (7th Cir. 2000) ................................................................................................. 4

*Tuazon v. R.J. Reynolds Tobacco Co.,*
433 F.3d 1163 (9th Cir. 2006) .............................................................................................. 14

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,*
   382 U.S. 172 (1965) ........................................................................... 6

4

*Walker v. USAA Cas.* Ins. Co.,
   474 F. Supp. 2d 1168 (E.D. Cal. 2007) ............................................ 9

5

STATE CASES

6

*Barquis v. Merchs. Collection Ass'n,*
   7 Cal. 3d 94 (1972) .................................................................... 11, 12

7

*Buckland v. Threshold Enters. Ltd.,*
   155 Cal. App. 4th 798 (2007) ............................................................ 9

8

*Californians For Disability Rights v. Mervyn's, LLC,*
   39 Cal.4th 223 (2006) ...................................................................... 10

9

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
   20 Cal. 4th 163 (1999) ...................................................................... 12

10

*Chavez v. Whirlpool Corp.,*
   93 Cal. App. 4th 363 (2001) ............................................................ 11

11

*Chicago Title Ins. Co. v. Great W. Fin. Corp.,*
   69 Cal. 2d 305 (1968) .................................................................... 3, 9

12

*Cortez v. Purolator Air Filtration Prods. Co.,*
   23 Cal. 4th 163 (2000) ...................................................................... 9

13

*Daro v. Superior Court,*
   151 Cal. App. 4th 1079 (2007) ........................................................ 11

14

*Exxon Corp. v. Superior Court,*
   51 Cal. App. 4th 1672 (1997) ............................................................ 7

15

*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.,*
   129 Cal.App.4th 1228 (2005) .......................................................... 10

16

*Kolling v. Dow Jones & Co.,*
   137 Cal. App. 3d 709 (1982) ............................................................. 4

17

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal. 4th 1134 (2003) ..................................................................... 9

18

*Marin County Bd. of Realtors v. Palsson,*
   16 Cal. 3d 920 (1976) ........................................................................ 4

19

*People v. Santa Clara Valley Bowling Proprietors' Ass'n ,*
   238 Cal. App. 2d 225 (1965) ............................................................. 4

20

*Peters v. Saunders,*
   58 Cal Rptr. 2d 690 (1996) ................................................................ 4

21

*Rolley, Inc. v. Merle Norman Cosmetics,*
   129 Cal. App. 2d 844 (1954) ............................................................. 8

22

*Roth v. Rhodes,*
   25 Cal. App. 4th 530 (1994) .......................................................... 5, 7

23

24

25

26

27

28

REPLY ISO MOT. TO DISMISS & STRIKE
3:08-CV-000871

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

FEDERAL STATUTES

4

Business & Professions Code § 17204 ............................................................................ 9

STATE STATUTES

5

Cal. Bus & Prof. Code § 16756 ..................................................................................... 3

6

Cal. Bus. & Prof. Code § 17204 ................................................................................... 10

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO MOT. TO DISMISS & STRIKE
3:08-CV-000871

1    **I.    <u>INTRODUCTION</u>**

2    The Complaint states repeatedly that this case is about "exclusive dealing

3    arrangements." (Compl. ¶¶ 14, 19, 23). In its opposition brief, however, E&E tries to reinvent

4    the case as one about a group boycott. But the Complaint says nothing about a group boycott and

5    fails to allege the factual predicate necessary to support such a theory. E&E has alleged a series

6    of unrelated vertical agreements between the Sunham Group and "some" unidentified Chinese

7    manufacturers of textiles. E&E contends that each of these manufacturers formed an independent

8    agreement with the Sunham Group. E&E does not contend that an agreement exists among the

9    manufacturers. Nor does it allege that the Sunham Group was acting in concert with any of its

10   competitors. Despite the lack of an alleged horizontal agreement, E&E argues that this case

11   involves a "group boycott" and should thus be analyzed as a *per se* antitrust violation. But the

12   substance of the allegations lead to just one conclusion: No group boycott has been alleged and

13   the *per se* rule does not apply to this case.

14   There is little mystery about the motivation for E&E's new-found boycott theory –

15   E&E cannot state a claim under the rule of reason, which governs "exclusive dealing

16   arrangements" and other vertical agreements. A rule-of-reason analysis requires the plaintiff to

17   allege harm to competition in the relevant market. That cannot be done here because the "textiles

18   market" is so expansive that the Sunham Group's alleged conduct could not harm competition

19   within it as a matter of law. For that reason, E&E's plea for discovery concerning the scope of

20   the market and other fundamental aspects of its claim is not only procedurally flawed (a proper

21   pleading comes first, discovery comes second), but utterly futile. No amount of discovery will

22   turn up facts showing that the Sunham Group enjoys market power in any appropriately defined

23   relevant market.

24   Moreover, E&E lacks standing to pursue its UCL claim. E&E now admits that it

25   is not entitled to seek restitution because the only injury it alleges is the hypothetical loss of sales

26   and profits. No court has found an injury so attenuated and speculative sufficient to satisfy the

27   UCL's demanding standing requirements. Moreover, the UCL claim itself is deficient as a matter

28   of law because it does not state an "unlawful" or "unfair" business practice.

4792832

1    Finally, this Court lacks a proper basis for asserting jurisdiction over defendants

2    Howard Yung and Arthur Courbanou.  E&E has presented no evidence whatsoever that these

3    individuals are subject to personal jurisdiction in California and have thus failed to make a

4    colorable showing of an entitlement to jurisdictional discovery.

5    **II.    ARGUMENT**

6    **A.    E&E Cannot Escape *Twombly*'s Plausibility Requirement**

7    E&E acknowledges upfront that *Bell Atlantic Corp v. Twombly*, 127 S. Ct. 1955

8    (2007), provides the controlling standard for motions to dismiss brought under Rule 12(b)(6).

9    (Opp. at 4.)  In its next breath, however, E&E argues that *Twombly* does not apply here or at most

10    is "persuasive authority."  (Opp. at 4-6.)

11    E&E first tries to evade *Twombly* by arguing that it applies only to claims brought

12    under § 1 of the Sherman Act that involve allegations of an agreement inferred from "parallel

13    conduct."  This theory, for which E&E offers no authority, is contrary to controlling precedent.

14    The Ninth Circuit has recognized that *Twombly* governs Rule 8 pleading standards generally and

15    is not limited to a sub-set of antitrust claims.  *See, e.g.*, *Mendiondo v. Centinela Hosp. Med. Ctr.*,

16    No. 06-55981, 2008 WL 852186, at *3-4 (9th Cir. April 1, 2008) (applying *Twombly* to claims

17    brought under federal and state false claims acts); *see also In re Graphics Processing Units

18    Antitrust Litig.*, 527 F. Supp. 2d 1011, 1025 (N.D. Cal. 2007) (hereafter "*GPU*") (applying

19    *Twombly* to dismiss Cartwright Act claim); *Crown Paper Liquidating Trust v. American Intern.

20    Group, Inc.*, No. C 07-2308 MMC, 2007 WL 4207943, at *2 (N.D. Cal. Nov. 27, 2007) (applying

21    *Twombly* to breach of contract, negligence, and other non-antitrust claims).  The standards

22    articulated in *Twombly* on which Defendants rely are "general standards" of pleading that are not

23    limited to any particular factual context or type of claim.  E&E thus cannot avoid the pleading

24    requirements articulated in *Twombly* simply by pointing to purported factual differences between

25    the claim alleged in that case and the ones alleged here.

26    E&E next tries to sidestep *Twombly* by arguing that state law pleading standards

27    govern state law claims in federal court.  E&E is wrong.  Rule 8 and the pleading standards

28    articulated in *Twombly* apply in federal court regardless of whether the claim alleged is based on

- 2 -

REPLY ISO MOT. TO DISMISS & STRIKE
3:08-CV-000871

state or federal law.  *See GPU*, 527 F. Supp. 2d at 1025 (applying *Twombly* to dismiss Cartwright

claim because "federal pleading standards govern in federal court, even as to state claims"); *see*

*also AlliedSignal, Inc. v. City of Phoenix*, 182 F.3d 692, 696 (9th Cir. 1999) (dismissing state law

claim under Rule 8 standard); *In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 965

(N.D. Cal. 2007) (applying *Twombly* to dismiss Cartwright claim); *Advanced Microtherm Inc., v.*

*Norman Wright Mech. Equip. Corp.*, No. C 04-02266 JW, 2004 WL 2075445, at *8 (N.D. Cal.

Sept. 15, 2004) (federal pleading standards govern Cartwright Act claims in federal court).

Unsurprisingly, E&E fails to cite a single case disputing this fundamental principle of federal

civil procedure.

In any event, the California Supreme Court has already rejected the *exact same*

argument E&E makes here, *i.e.*, that the Cartwright Act (specifically, Cal. Bus & Prof. Code

§ 16756) obviates the need for specific allegations in civil antitrust cases.  *See Chicago Title Ins.*

*Co. v. Great W. Fin. Corp.*, 69 Cal. 2d 305, 316-18 (1968) (rejecting argument that under § 16756

general allegations are sufficient in a civil antitrust action and demanding a high degree of

particularity in the pleading of Cartwright Act violations).  Thus, even if state pleading standards

applied in federal court, which they do not, E&E would find little comfort in them.

**B.**    **E&E Fails To Plead A Violation Of The Cartwright Act**

1.    **E&E Has Not Pled A Group Boycott Or Any Other *Per Se* Violation Of The Cartwright Act**

The rule of reason is the accepted standard for testing whether a practice restrains

trade, *see Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49 (1977), unless the

challenged action falls into the category of "agreements or practices which because of their effect

on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable

and therefore illegal . . . ."  *Northern Pacific Ry. Co. v. United States*, 356 U.S. 1, 5 (1958).

Resort to the *per se* rule – which eliminates the need to study the reasonableness of an individual

restraint in light of the real market forces at work – is confined to restraints "that would always or

almost always tend to restrict competition and decrease output."  *Bus. Elecs. Corp. v. Sharp*

*Elecs. Corp.*, 485 U.S. 717, 723 (1988).  Although certain "group boycotts" may be listed among

- 3 -

the classes of economic activity that merit *per se* invalidation, E&E has manifestly failed to plead activity falling within this forbidden category.

"Where, as here, a claim is based upon an alleged group boycott, a per se analysis is appropriate only if the boycott involves 'horizontal agreements among direct competitors.'" *Formula One Licensing, B.V. v. Purple Interactive LTD*, No. C 00-2222 MMC, 2001 WL 34792530, at \*3 (N.D. Cal. Feb. 6, 2001) (citing *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 119 (1998)); *see also Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1092 (9th Cir. 2000) (dismissing Cartwright Act claim because *per se* rules only apply to horizontal group boycotts). Indeed, the "group boycott" cases upon which E&E relies involve *horizontal* agreements. *See People v. Santa Clara Valley Bowling Proprietors' Ass'n*, 238 Cal. App. 2d 225, 232 (1965) (agreement among bowling alley owners); *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 209 (1959) (suppliers conspired "among themselves" and with plaintiff's competitor); *Marin County Bd. of Realtors v. Palsson*, 16 Cal. 3d 920, 934 (1976) (horizontal agreement among realtors, court nonetheless applied rule-of-reason analysis). In contrast, there are no agreements alleged between direct competitors here, only vertical agreements between the Sunham Group and its suppliers.[1]

E&E identifies two cases where the court applied a *per se* rule in the absence of a horizontal agreement. The first, *Peters v. Saunders*, 58 Cal Rptr. 2d 690 (1996), is contrary to *NYNEX* and was de-published by the California Supreme Court. The second, *Kolling v. Dow Jones & Co.*, 137 Cal. App. 3d 709, 720-727 (1982), applied the *per se* rule only to the respondents' allegations of price-fixing,[2] a restraint not even alleged here, and applied the rule of

---

[1] E&E does not allege a hub-and-spoke conspiracy, which involves a ringleader that is a dominant purchaser or supplier in the relevant market (the hub) who enters into a series of agreements with its suppliers (the spokes). The series of agreements may become actionable where there is a connecting agreement among the horizontal competitors that form the spokes. *See Toys "R" Us, Inc. v. F.T.C.*, 221 F.3d 928 (7th Cir. 2000). No agreement among the unidentified Chinese manufactures has been alleged and E&E does not argue this theory.

[2] Even this restraint was analyzed under the *per se* rule only because the court relied on the principles of *Albrecht v. Herald Co.*, 390 U.S. 145 (1968) and *Dr. Miles Med. Co. v. John D. Park & Sons Co.*, 220 U.S. 373 (1911), cases that have since been overruled by *State Oil v. Kahn*, 522 U.S. 3 (1997) (vertical maximum price-fixing is not a *per se* violation) and *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 127 S. Ct. 2705 (2007) (vertical minimum price-fixing is not a *per se* violation).

- 4 -

1    reason to the remaining allegations (territorial restrictions and exclusive dealing arrangements).

2    Simply put, there is no support for E&E's argument that the *per se* rule applies when a defendant

3    is alleged to have demanded or coerced non-competitors into refusing to deal with one of the

4    defendant's competitors.  Such a rule would directly conflict with *NYNEX* and other controlling

5    Supreme Court precedent holding that the rule of reason applies to vertical arrangements.[3]

6            2.      **E&E's Complaint Fails to State A Claim Under the Rule of Reason**

7            The fundamental flaw in E&E's case is quite simple:  It has alleged a market that

8    is so unconcentrated and vast that the actions of a single participant, particularly one who is not

9    alleged to have market power, could not harm competition within it as a matter of law.  Where, as

10    here, it is clear from the complaint that the plaintiff cannot demonstrate that the challenged

11    conduct significantly harms competition in the relevant market, the case must be dismissed.

12        a.      **E&E Fails To Plead That The Alleged Vertical Exclusive Deals
                  Harm Competition In A Tenable Antitrust Market**

13

14            (1)      **E&E must define the relevant market to state a claim**

15            E&E's argument that it need not plead a relevant market – and can wait for

16    discovery to pick one – is baseless.  An antitrust plaintiff has the burden to identify the relevant

17    market in its complaint.  *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063-64 (9th Cir. 2001)

18    (dismissing complaint for failure to identify a proper relevant market).  This basic pleading

19    requirement makes sense; after all, the antitrust analysis begins with the identification of the

20    "relevant market."  *Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1044 (9th Cir.

21    2008) ("The *first question*" in any antitrust suit is whether the plaintiff has "allege[d] any legally

22    cognizable 'relevant market.'") (emphasis added).  Under a rule-of-reason analysis, a plaintiff

23    "must delineate a relevant market and show that the defendant plays enough of a role in that

24    market to impair competition significantly."  *Roth v. Rhodes*, 25 Cal. App. 4th 530, 542 (1994)

25    (citation omitted).  "Antitrust law requires allegation of both a product market and a geographic

26    market." *Newcal*, 513 F.3d at 1045 n. 4.

27    _____
     [3] The "Cartwright Act is patterned after the Sherman Act, and 'federal cases interpreting the
     Sherman Act are applicable to problems arising under the Cartwright Act.'" *Nova Designs*, 202
28    F.3d at 1092 (citing *Marin County Bd. of Realtors*, 16 Cal.3d. at 920).

4792832                                                    REPLY ISO MOT. TO DISMISS & STRIKE
                                                           3:08-CV-000871

1    Market definition is the threshold issue because "[w]ithout a definition of that

2  market there is no way to measure" a defendant's *market power*, *i.e.,* its "ability to lessen or

3  destroy competition." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,* 382 U.S. 172,

4  177 (1965).  In the absence of power in the relevant market, a company does not have the ability

5  to undermine competition by, for example, raising prices above the competitive level; its actions

6  will instead be constrained by its competitors and inter-brand competition.  As courts have

7  repeatedly explained, "[w]ithout market power, *a firm cannot have an adverse effect on*

8  *competition*." *Ezzo's Invs. Inc. v. Royal Beauty Supply, Inc.*, 243 F.3d 980, 988 (6th Cir.

9  2001) (emphasis added) (quotation omitted).  In the *Ezzo's* case, for example, a challenge to a

10  vertical restraint alleged to have led to higher retail prices was dismissed because the plaintiff

11  failed to demonstrate defendant's power in a relevant market.

12           (2)    **E&E has failed to plead and cannot plausibly plead that**
                    **the Sunham Group has market power**
13
14           The Complaint broadly defines the relevant product market as the market for

15  textiles.  (Compl. ¶ 2).  There is no allegation that the textiles at issue are unique, special, or

16  difficult to substitute.  Defendants do not dispute that the market for textiles is a tenable product

     market.  *Newcal*, 513 F.3d at 1045 (the product market "must encompass
17
     the product at issue as well as all economic substitutes for the product").
18
19           But the Complaint fails to identify any geographic market and is thus deficient as a

20  matter of law.  *Id.* at 1045 n. 4 (an antitrust plaintiff must allege a geographic market).  Looking

     forward, this deficiency cannot be cured through amendment (which E&E does not even request);
21
     there is no way E&E can plead a plausible claim that the alleged conduct harmed competition
22
     within a properly defined relevant market.
23
24           The Ninth Circuit has made clear that the geographic market includes the area of

25  "effective competition," or that area "where buyers can turn for alternative sources of supply."

     *Tanaka*, 252 F.3d at 1063 (quotations omitted).  It is apparent from the Complaint that the
26
     properly defined market in this case is, at the very least, the Chinese textiles market.  E&E itself
27
     alleges that it and the Sunham Group purchase textiles from China.  (Compl. ¶ 10).  China
28

- 6 -

REPLY ISO MOT. TO DISMISS & STRIKE
3:08-CV-000871

1  exported over $10 billion worth of non-apparel textiles into the United States *alone* last year.

2  (Mot. at 5.)  Moreover, the relevant geographic market presumably extends far beyond China:  If

3  U.S. companies like E&E and the Sunham Group can turn to China for their textiles, there must

4  be countless manufactures around the world from whom they can make their purchases.  E&E

5  suggests in its Opposition that California may be the appropriate geographic market.  This is

6  wrong for numerous reasons, not least of which is that E&E has not even alleged that the parties

7  make any of their textile purchases in California.[4]  Courts do not blindly accept implausible

8  market definitions provided by plaintiffs.  *Tanaka*, 252 F.3d at 1064 (dismissing complaint that

9  provided an inappropriately narrow definition of the geographic market).  The textiles market is

10  varied, expansive, and robust.  Any possible and plausible understanding of the relevant market in

11  this case reveals a market that is geographically dispersed and worth billions of dollars.

12  　　　　　Against this backdrop, it is clear that E&E cannot state a plausible claim that the

13  Sunham Group possesses market power in any appropriately defined relevant market.  E&E

14  argues it needs discovery to determine whether market power exists.  That might be appropriate if

15  the question was close, but it is not.  E&E has plead sales in the millions[5] and the market,

16  however defined, is in the billions.  "Even without engaging in a detailed analysis of the size of

17  the relevant markets we may readily conclude that there is no likelihood that the exclusive dealing

18  arrangement challenged here" will substantially harm competition in the textiles market.

19

20  [4] On the subject of California, E&E argues that "Defendants concede that 'California is the
    Sunham Group's largest and most lucrative marketplace."  (Opp. at 3) (citing (Mot. at 5) (citing

21  Compl. ¶ 12)).  This, of course, is incorrect.  The Motion merely accepts E&E's own allegation as
    true as is required on a motion to dismiss.

22  [5] E&E strangely disputes Defendants citation to the allegation in the Complaint that the Sunham

23  Group sells "several million dollars" of textiles in California.  E&E alleges that (1) the Sunham
    Group sells textiles in the United States, (2) California is the Sunham Group's largest market, and

24  (3) the Sunham Group sells several million dollars of goods in that market.  Ergo, whatever the
    precise amount of the Sunham Group's sales may be, the Sunham Group is not and cannot

25  plausibly be alleged to have market power in the multi-billion dollar textile market.  *See, e.g.,*
    *Exxon Corp. v. Superior Court*, 51 Cal. App. 4th 1672, 1682 (1997) (less than 10% market share

26  insufficient to establish market power under Cartwright Act); *Roth v. Rhodes*, 25 Cal. App. 4th
    530, 542 (1994) (16% insufficient).

27

28

4792832

REPLY ISO MOT. TO DISMISS & STRIKE
3:08-CV-000871

1  *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 46. (1984) [6]  Courts routinely dismiss

2  cases on the pleadings where they fail to plausibly allege that the challenged conduct would

3  produce significant anticompetitive effects within an appropriately defined relevant market.  *See,*

4  *e.g., Tanaka*, 252 F.3d at 1064 (dismissing complaint challenging intercollegiate athletic

5  association rule where plaintiff failed to allege the rule had significant anticompetitive effects in

6  any appropriately defined market); *Rolley, Inc. v. Merle Norman Cosmetics*, 129 Cal. App. 2d

7  844, 851-52 (1954) (affirming demurrer where market power of participants engaged in alleged

8  anticompetitive conduct was too insignificant to stifle competition).  Because E&E cannot

9  plausibly plead that the Sunham Group's alleged arrangements with manufacturers increase costs

10  to consumers, limit consumer choice, or otherwise significantly harm competition, E&E's

11  Cartwright Act claim must be dismissed.[7]

12                b.     **E&E's Conclusory Allegations Fail To Satisfy Federal Pleading**

13                      **Standards**

14           Federal courts, pre and post *Twombly*, have held that "Cartwright Act claims are

15  properly dismissed where the complaint makes conclusory allegations of a combination and does

16  not allege with factual particularity that separate entities maintaining separate and independent

17  interests combined for the purposes of restraining trade."  *In re Netflix Antitrust Litig.*, 506 F.

18  Supp. 2d 308, 320 (N.D. Cal. 2007).  To state a proper claim, a plaintiff must allege the specific

19  parties, agreements, and products involved.  *See, e.g., Late Fee and Over-Limit Fee Litig.*, 528 F.

20  Supp. 2d at 962; *JM Computer Servs., Inc. v. Schlumberger Tech, Inc.*, No. C 95-20349 JW, 1996

21  WL 241607, at *4 (N.D. Cal. May 3, 1996).  E&E relies on state pleading standards to argue that

22  its conclusory allegations of unspecified agreements with unidentified Chinese manufactures are

23  sufficient to survive a motion to dismiss.  As explained above, federal pleading standards control

---

24  [6] Although E&E characterizes Justice O'Connor's four-Justice concurrence in *Jefferson Parish* as
"dicta," courts have not been nearly so dismissive.  *See, e.g., Minnesota Ass'n of Nurse*

25  *Anesthetists v. Unity Hosp.* , 208 F.3d 655, 661 (8th Cir. 2000) (relying on concurrence).

26  [7] E&E desperately attempts to raise a raft of factual distinctions between the instant case and the
numerous controlling cases cited in the Motion.  (Opp. 13-15,18-20.)  It is unnecessary and

27  impractical to respond to each one of these pecks; suffice it to say that these cases present the
controlling principles under which E&E's antitrust claim must be adjudicated and they cannot be

28  disregarded based on immaterial purported factual differences.

4792832

REPLY ISO MOT. TO DISMISS & STRIKE
3:08-CV-000871

1   in federal court.  E&E cannot skirt those standards simply by grumbling that its complaint would

2   pass muster in state court, which it would not.  *See Chicago Title Ins. Co. v. Great Western Fin.*

3   *Corp.*, 69 Cal. 2d 305, 317 (1968) (rejecting argument that under Bus. & Prof. Code § 16756

4   general allegations are sufficient to plead Cartwright claim).

5           If E&E truly has a good faith belief that that the Sunham Group has entered into

6   exclusive arrangements with Chinese manufacturers it should have no problem providing the

7   necessary factual support for its claim.

8       **C.    E&E Fails To Plead An Actionable Claim Under The UCL**

9           **1.    E&E Lacks Standing Under The UCL**

10          E&E concedes that it is not entitled to seek restitution under the UCL and that its

11  prayer for restitutionary relief and disgorgement should be stricken.  (Opp. at 23 n.11.)[8]  Of

12  course, E&E could not contend otherwise: It has not alleged that Defendants are in possession of

13  property in which Plaintiff has an ownership interest.  *Korea Supply Co. v. Lockheed Martin*

14  *Corp.*, 29 Cal. 4th 1134 (2003); *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163,

15  177 (2000).  Instead, E&E merely alleged that it "suffered competitive injury in the form of lost

16  sales."  (Comp. ¶ 19.)  Despite its admission that it has not suffered any losses of money or

17  property that are eligible for restitution, E&E claims that it nonetheless has standing under

18  Business & Professions Code § 17204 to pursue injunctive relief.  But courts have found that a

19  plaintiff has standing under § 17204 only if it has suffered an injury for which it would be entitled

20  to recover restitution.  *See Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1172 (E.D. Cal.

21  2007) (finding UCL standing requirement "should be construed identically" with requirement for

22  showing entitlement to restitution); *Buckland v. Threshold Enters. Ltd.*, 155 Cal. App. 4th 798,

23  817 (2007) ("Because the remedies for individuals under the UCL are restricted to injunctive

24

---

25  [8] E&E's statement that it makes this concession on the condition that it "is afforded the
    opportunity to amend its Complaint should subsequent discovery reveal a basis for this form of
26  recovery" is baseless.  (Opp. at 23 n.11.)  E&E consistently fails to appreciate that it must first
    state a claim for which relief may be granted before it is permitted to conduct discovery.  In any
27  event, E&E's eligibility for restitution depends upon whether it can show that that Defendants are
    in possession of money or property in which E&E has an ownership interest – if E&E had
28  suffered such a loss presumably it would know it already.

4792832

REPLY ISO MOT. TO DISMISS & STRIKE
3:08-CV-000871

1   relief and restitution, the import of the requirement [that plaintiffs show 'lost money or property'

2   under § 17204] is to limit standing to individuals who suffer losses of money or property that are

3   eligible for restitution.").

4          Although one federal court has found that the restitution requirement articulated in

5   *Korea Supply* and *Cortez* is narrower than the § 17204 standing requirement, *see G&C Auto*

6   *Body, Inc. v. Geico Gen. Ins. Co.*, No. C 06-04898 MJJ, 2007 WL 4350907, at *4 (N.D. Cal. Dec.

7   12, 2007), E&E has not pointed to a single authority suggesting that hypothetical lost sales can

8   satisfy the limited standing requirements of § 17204.  Cal. Bus. & Prof. Code § 17204 (limiting

9   standing under the UCL to "any person who has suffered injury in fact and has lost money or

10  property as a result of such unfair competition.").  Indeed, no court has held that the requirements

11  of § 17204 are satisfied by an alleged injury as attenuated and speculative as lost sales.  *Cf.*

12  *Express, LLC v. Fetish Group, Inc.*, 464 F. Supp. 2d 965, 980 (C.D. Cal. 2006) (granting

13  summary judgment on UCL claim where claimed harm was attenuated and speculative).  Courts

14  have consistently required that to have standing a "plaintiff must have spent money, lost money

15  or property, or been denied money to which he or she was *entitled*, due to unfair business

16  practices."  *O'Brien v. Camisasca Automotive Mfg., Inc.*, -- Cal. App. 4th --, 2008 WL 802350, at

17  *5 (2d Dist. Mar. 27, 2008) (emphasis added) (collecting cases).  Courts have found standing

18  where plaintiffs have suffered damage to property,[9] experienced unpaid accounts,[10] and lost

19  wages,[11] but not, as is the case here, where the plaintiff has alleged hypothetical lost sales and

20  profits to which the plaintiff cannot show it was entitled.

21          Finding that a plaintiff has standing to pursue a UCL claim despite its failure to

22  allege anything more than a hypothetical loss would frustrate the purpose of Proposition 64,

23  which was passed by the People of California precisely to restrict the UCL's previous broad grant

24  of standing.  *Californians For Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223, 228 (2006).

25  _____

26  [9] *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal.App.4th 1228, 1262 (2005).

27  [10] *G&C Auto Body*, 2007 WL 4350907, at *3 (plaintiffs alleged they experienced unpaid accounts as a direct result of defendant insurance companies refusal to pay prevailing auto body rates).

28  [11] *Cappa v. CrossTest, Inc.*, -- Cal. App. 4th --, 2008 WL 821637, at *7 (1st Dist. Mar. 28, 2008).

4792832

REPLY ISO MOT. TO DISMISS & STRIKE
3:08-CV-000871

1    E&E cannot show that it suffered concrete harm due to Defendants' alleged conduct and an

2    injunction against Defendants would not translate directly into increased sales and profits for

3    E&E.   "[A] party who has suffered no injury as a result of a UCL violation cannot create

4    standing by arguing that a broad-based injunction designed to remedy the UCL violation will

5    provide him or her some incidental benefit." *Daro v. Superior Court*, 151 Cal. App. 4th 1079,

6    1100 (2007).  E&E thus lacks standing under § 17204 to pursue injunctive relief and its UCL

7    claim must be dismissed.

8                2.    **E&E Fails To Plead An "Unlawful" Or "Unfair" Business Practice**
                       **Under The UCL**
9

10                    Even if E&E had standing, which it does not, it has not alleged a proper claim

11   under the UCL.  E&E concedes that its UCL theory based on the alleged agreements entered into

12   by the Sunham Group and unidentified Chinese manufacturers rises and falls with its Cartwright

13   Act claim.  (Opp. at 22.)  Courts have found that where a plaintiff fails to state an antitrust claim,

14   a UCL claim predicated on the same underlying conduct cannot survive. *See, e.g., Chavez v.*

15   *Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001).  E&E does not argue otherwise.  Thus, if this

16   Court finds that E&E has failed to state a claim under the Cartwright Act, its UCL claim based on

17   the same conduct necessarily must be dismissed.

18                    The Court should likewise dismiss E&E's alternative theory of liability under the

19   UCL, *i.e.*, that Defendants engaged in unlawful and unfair business practices by allegedly

20   underpaying unidentified tax obligations.  The Complaint fails to identify a single statute violated

21   by Defendants' alleged tax practices.[12]  E&E simply ignores the cases cited in the Motion that

22   hold that a plaintiff *must* identify the particular statute that the defendant allegedly violated in

23   order to state an "unlawful" business practices claim under the UCL.  (Mot. at 15.)  Instead, E&E

24   points to the well-settled and general proposition that any business practice that "is forbidden by

25   law" may constitute an "unlawful" act under the UCL.  (Opp. at 23) (citing *Barquis v. Merchs.*

26   *Collection Ass'n*, 7 Cal. 3d 94, 113 (1972).  But *Barquis* does not suggest that a plaintiff may

----

[12] E&E's off-point citation in the Opposition to two cases involving enhancements under the
federal sentencing guidelines does not satisfy its obligation to identify in the Complaint the
specific statute which it accuses Defendants of violating. (Opp. at 23.)

27

28

REPLY ISO MOT. TO DISMISS & STRIKE
3:08-CV-000871

4792832

1    state an "unlawfulness" claim simply by making a generic assertion of unlawfulness. To the

2    contrary, *Barquis* makes clear that the plaintiff must identify the particular law that forbids the

3    challenged activity. *Id.* at 113 ("defendant's practice consists of repeated violations of *specific*

4    *statutory provisions*") (emphasis added).

5          This rule is mandatory because the outcome of an "unlawful" claim hinges on

6    whether the defendant has violated the borrowed statute. *See Cel-Tech Commc'ns, Inc. v. Los*

7    *Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). If the plaintiff fails to identify a borrowed

8    statute, the defendant will not know how to defend itself, the parties will not be able to establish a

9    proper scope of discovery, and the court will not know how to adjudicate the claim. E&E

10   brazenly criticizes Defendants for failing to deny that the alleged conduct is "unlawful." But

11   Defendants cannot make a meaningful denial when they do not know the elements of the law they

12   are alleged to have violated.[13] It is not Defendants' obligation to establish compliance with every

13   single provision of the tax code, it is E&E's obligation to plead a cognizable claim. E&E's

14   argument that discovery will permit the identification of a specific statute flips civil procedure on

15   its head: E&E must plead a proper cause of action before it is entitled to conduct discovery.

16         Finally, E&E fails to demonstrate that its allegations about Defendants' purported

17   underpayment of taxes satisfy the *Cel-Tech* definition of "unfairness." E&E presents no

18   argument that the alleged activity violates the policy or spirit of antitrust law or otherwise

19   threatens or harms competition. Instead, E&E inexplicably cites cases about horizontal price-

20   fixing, an allegation not even asserted the Complaint. (Opp. at 24.) E&E has presented no

21   argument whatsoever that the Sunham Group's alleged underpayment of taxes significantly

22   harmed competition in the multi-billion dollar textile market; its "unfair" business practices claim

23   therefore must be dismissed.

24   **D.    E&E Fails To Make A Colorable Showing That Jurisdictional Discovery Is Warranted**

25

26         Howard Yung and Arthur Courbanou submitted sworn declarations establishing

27   that they have no contacts with California that would warrant this Court's assertion of personal

---

28   [13] Defendants, of course, do not concede the truth of the factual allegations asserted against them.

REPLY ISO MOT. TO DISMISS & STRIKE
3:08-CV-000871

1   jurisdiction over them – they do not live in California an do not conduct business in California.

2   (Howard Yung Decl. ¶¶ 2-4; Arthur Courbanou Decl. ¶¶ 2-4).  E&E does not dispute any

3   statements made in these declarations, but instead claims that it should be allowed to seek

4   jurisdictional discovery into other hypothetical contacts these individuals may have with

5   California.  Jurisdictional discovery may be granted only where "pertinent facts bearing on the

6   question of jurisdiction are controverted or where a more satisfactory showing of the facts is

7   necessary."  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977).

8   For the following reasons, this Court should deny E&E's attempt to harass Sunham's high

9   ranking officers with pointless and intrusive discovery.  *See Butcher's Union Local No. 498 v.*

10  *SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (trial courts have broad discretion over

11  jurisdictional discovery).

12          *First*, E&E fails even to *allege* the necessary facts to warrant personal jurisdiction

13  over Messrs. Yung and Courbanou.  *See* (Compl. ¶¶ 6, 7, 15, 16) (failing to assert that Messrs.

14  Yung and Courbanou have any contacts, let alone minimum contacts, with California).   Requests

15  for jurisdictional discovery should be denied where the plaintiff "fail[s] to even allege the

16  necessary facts."  *Robinson v. Daimlerchrysler AG*, No. 07-3258 SC, 2008 WL 728877, at *6

17  (N.D. Cal. Mar. 17, 2008).

18          *Second*, E&E fails to make at least "a colorable showing" that the Court can

19  exercise jurisdiction over the defendant, which requires coming "forward with some evidence

20  tending to establish personal jurisdiction over the defendant."  *Lovesy v. Armed Forces Benefit*

21  *Assoc.*, No. C 07-2745 SBA, 2008 WL 696991, at *14 (N.D. Cal. Mar. 13, 2008) (citation

22  omitted).  E&E fails to identify a shred of evidence suggesting that this Court has personal

23  jurisdiction over Messrs. Yung and Courbanou.

24          *Third*, "Where a plaintiff's claim of personal jurisdiction appears to be both

25  attenuated and based on bare allegations in the face of the specific denials made by defendants,

26  the Court need not permit even limited discovery."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151,

27  1160 (9th Cir. 2006); *see also Lovesy*, 2008 WL 696991, at *14.  E&E does not contest any of the

28  statements in the declarations.

1    *Fourth*, the jurisdictional discovery E&E claims it needs is immaterial to the

2    question of personal jurisdiction. (Opp. at 24.)[14]  None of these matters cited by E&E relate to

3    conduct alleged in the complaint and thus are insufficient to establish specific jurisdiction.

4    *MMCA Group, Ltd. v. Hewlett-Packard Co.*, No. C-06-7067 MMC (EMC), 2007 WL 1342586, at

5    *6 (N.D. Cal. May 8, 2007).  Nor do they suggest a level of presence in California sufficient to

6    establish general jurisdiction.  *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169

7    (9th Cir. 2006) (for general jurisdiction to attach a defendant's contacts with the forum must

8    approximate physical presence).  Thus, jurisdictional discovery should be denied because E&E

9    has "made no showing that any sworn testimony by defendants is disputed, and have not pointed

10   to any facts that, if shown, would warrant the exercise of personal jurisdiction."  *In re Dynamic*

11   *Random Access Memory Antitrust Litig.*, 2005 WL 2988715, at *8 (N.D. Cal. Nov. 7, 2005).

12   *Fifth*, under California law, acts performed by corporate officers and directors in

13   their official capacities are the acts of the corporation exclusively.  *Colt Studio, Inc. v. Badpuppy*

14   *Enterprise*, 75. F. Supp. 2d 1104, 1111 (C.D. Cal. 1999).  E&E has made no showing that this

15   jurisdictional rule should be disregarded.  *Id.* (acts performed in official capacities cannot be

16   attributed to corporate officers unless the plaintiff makes a showing that the corporation is the

17   "alter ego" of the individual defendants).  The only alleged acts attributed to Howard Yung and

18   Arthur Courbanou are acts purportedly taken in their official capacities as agents of the Sunham

19   Group and thus are not material for purposes of establishing minimum contacts as to them.[15]

20   

21   [14] The issues upon which E&E seeks discovery are immaterial to the question of whether Messrs.
     Yung and Courbanou are subject to personal jurisdiction in California.  Nevertheless, both of
     them have provided supplemental testimony addressing each factor raised by E&E.  *See*

22   (Supplemental Declaration of Howard Yung ¶ 2; Supplemental Declaration of Arthur Courbanou
     ¶ 2; *see also* Yung Decl. ¶ 4; Courbanou Decl. ¶ 4).  In addition, E&E provides no authority for

23   the proposition (Opp. at 24-25) that a defendant's contacts with the forum pre-dating the conduct
     alleged in the complaint can prove that the defendants' maintain "continuous and systematic"

24   contacts with the forum.

25   [15] In any event, the accusations against Messrs. Yung and Courbanou involve conduct that was
     not expressly aimed at California.  Thus, E&E's reliance on *Davis v. Metro Prods., Inc.*, 885 F.2d

26   515, 523 (9th Cir. 1989), a case interpreting Arizona's jurisdictional statute, is unavailing.  Not
     only does *Davis* interpret the law of a different forum, it involved shareholders who, unlike

27   Messrs. Yung and Courbanou, purposefully directed their activities to residents of the forum
     state.  *Id.* (defendants accused of operating unlawful tax shelter met with Arizona resident to

28   induce him to find Arizona investors).

- 14 -

REPLY ISO MOT. TO DISMISS & STRIKE
3:08-CV-000871

1    **III.    <u>CONCLUSION</u>**

2         For the reasons stated herein, E&E's Complaint should be dismissed.

3
     Dated: April 11, 2008                    Munger, Tolles & Olson LLP
4                                                GARTH T. VINCENT
                                                 AMY TOVAR
5

6
                                            By:                /s/
7                                                       AMY TOVAR

8                                            Attorneys for Defendants
                                             KAM HING ENTERPRISES, INC.;
9                                            SUNHAM HOME FASHIONS, LLC;
                                             HOWARD YUNG; and ARTHUR
10                                           COURBANOU

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    - 15 -

1 GARTH T. VINCENT (SBN 146574)
  MUNGER, TOLLES & OLSON LLP
2 355 South Grand Avenue
  Thirty-Fifth Floor
3 Los Angeles, CA  90071-1560
  Telephone:     (213) 683-9100
4 Facsimile:     (213) 687-3702
  Email: garth.vincent@mto.com

5

6 AMY TOVAR (SBN 230370)
  MUNGER, TOLLES & OLSON LLP
7 560 Mission Street
  Twenty-Seventh Floor
8 San Francisco, CA  94105-2907
  Telephone:     (415) 512-4000
9 Facsimile:     (415) 512-4077
  Email: amy.tovar@mto.com

10 Attorneys for Defendants
   KAM HING ENTERPRISES, INC.; SUNHAM HOME
11 FASHIONS, LLC; HOWARD YUNG; and ARTHUR
   COURBANOU

12
                    UNITED STATES DISTRICT COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14
                SAN FRANCISCO/OAKLAND DIVISION
15

16
   E&E CO., LTD., A California corporation,     CASE NO.  3:08-CV-00871-MMC
17
                      Plaintiff,               SUPPLEMENTAL DECLARATION OF
18                                             ARTHUR COURBANOU IN SUPPORT OF
            vs.                                DEFENDANTS' MOTION TO DISMISS
19                                             COMPLAINT PURSUANT TO FED. R. CIV.
   KAM HING ENTERPRISES, INC.;                 PROC. 12(B)(2)
20 SUNHAM HOME FASHIONS, LLC; JJ
   INTERNATIONAL TRADING                       [Reply in Support of Motion Filed
21 COMPANY; HOWARD YUNG,                       Concurrently]
   ARTHUR COURBANOU; and DOES 1-
22 100, inclusive,

23                    Defendants.

24

25

26

27

28

4792923.1

I, Arthur Courbanou, declare as follows:

1.      I have been named as a defendant in this action. I am submitting this declaration in support of Defendants' Motion to Dismiss the Complaint. The facts set forth herein are based on my personal knowledge. If called upon as a witness in this action, I could and would testify competently to the contents of this Declaration.

2.      I do not own property in California. I do not advertise or send sales or marketing material to California. I do not operate websites marketing to or interacting with California consumers. I do not have clients in California. I do not attend trade shows in California. I have not engaged in any of the conduct listed in this paragraph at least since I started working for Sunham Home Fashions LLC in 2006.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed on this Eighth day of April 2008 at New York, New York.

ARTHUR COURBANOU

1   GARTH T. VINCENT (SBN 146574)
    MUNGER, TOLLES & OLSON LLP
2   355 South Grand Avenue
    Thirty-Fifth Floor
3   Los Angeles, CA  90071-1560
    Telephone:    (213) 683-9100
4   Facsimile:    (213) 687-3702
    Email: garth.vincent@mto.com

5

    AMY TOVAR (SBN 230370)
6   MUNGER, TOLLES & OLSON LLP
    560 Mission Street
7   Twenty-Seventh Floor
    San Francisco, CA  94105-2907
8   Telephone:    (415) 512-4000
    Facsimile:    (415) 512-4077
9   Email: amy.tovar@mto.com

10  Attorneys for Defendants
    KAM HING ENTERPRISES, INC.; SUNHAM HOME
11  FASHIONS, LLC; HOWARD YUNG; and ARTHUR
    COURBANOU
12
                    UNITED STATES DISTRICT COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14
                 SAN FRANCISCO/OAKLAND DIVISION
15

16

17  E&E CO., LTD., A California corporation,    CASE NO.  3:08-CV-00871-MMC

                            Plaintiff,          SUPPLEMENTAL DECLARATION OF
18                                              HOWARD YUNG IN SUPPORT OF
            vs.                                 DEFENDANTS' MOTION TO DISMISS
19                                              COMPLAINT PURSUANT TO FED. R. CIV.
    KAM HING ENTERPRISES, INC.;                 PROC. 12(B)(2)
20  SUNHAM HOME FASHIONS, LLC; JJ
    INTERNATIONAL TRADING                       [Reply in Support of Motion Filed
21  COMPANY; HOWARD YUNG,                       Concurrently]
    ARTHUR COURBANOU; and DOES 1-
22  100, inclusive,

23                          Defendants.

24

25

26

27

28
                                            SUPPLEMENTAL HOWARD YUNG DECL.
    4792913.1                                    ISO MOTION TO DISMISS
                                               CASE NO. 3:08-CV-000871

I, Howard Yung, declare as follows:

1.  I have been named as a defendant in this action. I am submitting this declaration in support of Defendants' Motion to Dismiss the Complaint. The facts set forth herein are based on my personal knowledge. If called upon as a witness in this action, I could and would testify competently to the contents of this Declaration.

2.  I do not own property in California. I do not advertise or send sales or marketing material to California. I do not operate websites marketing to or interacting with California consumers. I do not attend trade shows in California. I have not engaged in any of the conduct identified in this paragraph for at least the last five years.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed on this Eighth day of April 2008 at New York, New York.


_____
HOWARD YUNG

4792913.1

- 2 -

SUPPLEMENTAL HOWARD YUNG DECL.
ISO MOTION TO DISMISS
CASE NO. 3:08-CV-000871