SHARTSIS FRIESE LLP
ROBERT CHARLES WARD (Bar #160824)
rward@sflaw.com
NICHOLAS A. PILGRIM (Bar #232108)
npilgrim@sflaw.com
One Maritime Plaza, Eighteenth Floor
San Francisco, CA  94111
Telephone:  (415) 421-6500
Facsimile:  (415) 421-2922

Attorneys for Plaintiff
E&E Co., Ltd., a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| E&E CO., LTD., a California corporation,<br><br>  Plaintiff,<br><br>v.<br><br>KAM HING ENTERPRISES, INC.; SUNHAM HOME FASHIONS, LLC; JJ INTERNATIONAL TRADING COMPANY; HOWARD YUNG; ARTHUR COURBANOU; and DOES 1-100, inclusive,<br><br>  Defendants. | Case No.  3:08-00871 MMC<br><br>**FIRST AMENDED COMPLAINT FOR CARTWRIGHT VIOLATIONS AND UNFAIR COMPETITION**<br><br>Judge:      Hon. Maxine M. Chesney<br>Courtroom:  7, 19th Fl. |

Plaintiff E&E CO., LTD. alleges as follows:

**NATURE OF THE ACTION**

1.  This is an action in law and equity for antitrust violations under the Cartwright Act, California Business & Professions Code § 16720 *et seq.* and unfair business practices under California Business & Professions Code § 17200 *et seq.*  Plaintiff E&E Co., Ltd. ("E&E") is a dynamic and entrepreneurial distributor of home textiles against whom defendants are competing unfairly by two ways generally: (a) orchestrating a boycott among important suppliers in China, and (b) fraudulently evading tax obligations in the United States.

2. Plaintiff and certain of defendants are distributors of select home textile bedding products. These products are acquired primarily from manufacturers in China and sold to U.S. retailers through distributors like E&E and certain defendants. Although E&E has emerging product lines, the specific market at issue in this case concerns the distribution channel through which top-of-the-bed linens, such as quilts, duvets, coverlets, and other such bed coverings that are manufactured in China, are imported/distributed into the United States. The market affected by defendants unlawful conduct consists of these mid-quality, low-cost bed coverings that are sold by intermediaries such as Plaintiff to bulk-purchaser, value-oriented, direct retailers (*e.g.,* Target, Mervyns) or warehouse stores (*e.g.,* Sam's Club, Costco), who, in turn, ultimately resell such products to American consumers. Downward price pressure from the retailers and very thin margins are characteristics of this market.

3. The unfair and unlawful activities of defendants are particularly damaging to E&E because of the price pressure and low margins of the market at issue. By fraudulently evading U.S. tax obligations, defendants are able to sell into the marketplace at lower prices and/or with better margins by avoiding costs that law-abiding importers pay.

4. Defendants' actions also obstruct E&E's ability to acquire goods at lower costs. By orchestrating a boycott of E&E by suppliers, manufacturers, and/or designers in China who otherwise would sell to E&E, E&E is denied the ability to buy from factories that are better able to deliver various products at better prices. The downward price pressure in the market places a premium on a distributor's ability to identify manufacturers that can speedily deliver merchandise of acceptable quality, meeting unique customer specifications at the lowest possible cost. The manufacturing sector in China is not a bottomless well of "one-size-fits-all" factories. For textiles, different designs can be uniquely tooled or require specialized labor skilled in the making of myriad specific types of merchandise. One result is that factories in China collectively can supply the widest variety of home textiles available in the world. A concomitant consequence is that E&E can be prevented from competing in the bedcovering market for many different types of products if unique factories offering distinct areas of specialization will not supply E&E because the manufacturers have been pressured into not selling to E&E by defendants.

## JURISDICTION

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1441 and 1332.

## VENUE

6. Venue lies in the Northern District of California pursuant to 28 U.S.C. §§ 1391(a), (c).

## PARTIES

7. Plaintiff, E&E, is a California corporation with its principal place of business in Fremont, California. E&E generally does business as a distributor of home textiles under the name "JLA Homes."

8. On information and belief, defendant Kam Hing Enterprises Inc. ("Kam Hing") is a New York corporation with its principal place of business in New York, New York.

9. On information and belief, defendant Sunham Home Fashions, LLC ("Sunham Home") is a New York limited liability company with its principal place of business in New York, New York.

10. On information and belief, Kam Hing and Sunham Home are affiliated companies with common ownership. Kam Hing and Sunham Home will be referred to collectively as the "Sunham Defendants."

11. On information and belief, defendant J.J. International Trading Company ("JJ International") is a business entity created pursuant to the laws of the Republic of Mauritius with principal places of business in Macau and Hong Kong.

12. On information and belief, defendant Howard Yung ("Yung") is the Chief Executive Officer of Kam Hing and an owner of the Sunham Defendants.

13. On information and belief, defendant Arthur Courbanou ("Courbanou") is the Chief Operating and Chief Financial Officer of Kam Hing and is an owner of the Sunham Defendants.

14. The true names and capacities of the other defendants, including the suppliers, designers and manufacturers who have coordinated with the Sunham Defendants in boycotting Plaintiff, Defendant Does 1-100, inclusive, are unknown to the Plaintiff. Plaintiff therefore sues

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Defendants by such fictitious names. Plaintiff is informed and believes and based thereon alleges that each of the Defendants designated herein as Does is legally responsible in some manner for the events and happenings herein referred to and caused injuries and damages as alleged by Plaintiff hereto.

15. Each of the defendants was the agent or employee of the other defendants and in doing the acts alleged herein was acting within the course and scope of such agency or employment.

16. The Sunham Defendants distribute and design textile goods in the mid-quality, bed coverings marketplace, as defined in paragraph 2 above, competing directly with E&E. In particular, both the Sunham Defendants and E&E design and/or purchase home textile bed covering products such as quilts, duvets, and coverlets that are manufactured in China. Both sell these imported goods to major United States value or warehouse retailers, including major bulk-purchase retailers in the State of California.

17. On information and belief, the majority of the goods imported into the United States by the Sunham Defendants are imported through ports in the State of California. On information and belief, the Sunham Defendants sell several or tens of millions of dollars of home bedding textile products to retail stores in California each year. On information and belief, the Sunham Defendants sell to retailers whose principal place of business is in California, including for example, Mervyns LLC, which is headquartered in Alameda County. On information and belief, the Sunham Defendants also sell low-cost home bedding textile products to Bed Bath & Beyond, Macy's, Kohl's, and Linens-n-Things, who collectively have hundreds of retail stores in California and each of whom has retail stores in Alameda County. On information and belief, the Sunham Defendants transact business in California, including sending sales personnel to meet with California-based retailers.

18. On information and belief, California is the Sunham Defendants' largest and most lucrative marketplace of the 50 states. Also, because of the State of California's rigorous consumer protection regulations, the quality and safety standards in the textile industry are largely established in California. The Sunham Defendants, therefore, specifically design goods for sale

in the State of California.

19. On information and belief, individual defendants Yung and Courbanou communicate and interact with California merchants, employees and salespeople on a routine or semi-routine basis, and intentionally engage in wrongful conduct knowing that such conduct will affect the California market.

20. On information and belief, in an effort to maintain their market share against competitors such as E&E, Defendants engage in certain illegal and/or unfair business practices.

### FIRST CAUSE OF ACTION

### (Per Se "Conspiracy" Violation of the Cartwright Act)

### (Against Sunham Defendants and Does 1-20)

21. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 20, inclusive, as if set forth in full herein.

22. On information and belief, the Sunham Defendants have conspired to intentionally restrain trade and suppress competition in the market of bed covering products, as described in paragraph 2, that are sold by major value or warehouse retailers to consumers in California and throughout the United States by entering into collusive arrangements with third-parties to boycott Plaintiff and other competitors of the Sunham Defendants. The boycott prevents Plaintiff from doing business with key suppliers in China; Chinese textile factories are not wholly fungible. Some factories are tooled for or skilled in the production of certain types of bed coverings of good quality at lower costs. By denying E&E access to some manufacturers, the Sunham Defendants impose additional costs on Plaintiff and unnecessarily restrict the supply of home bedding products imported into the United States.

23. On information and belief, the Sunham Defendants knew that some of the suppliers that they pressured not to sell goods to E&E were either E&E suppliers or would have sold to E&E but for the Sunham Defendants' efforts to orchestrate a group boycott.

24. On information and belief, on or around February 2006, the Sunham Defendants perceived Plaintiff as a major threat to their lucrative import trade in the United States market, generally, and in California specifically. Reacting to this threat, the Sunham Defendants sent

demand letters to their key suppliers identifying Plaintiff as a competitor who the suppliers must not do business with if they wished to continue doing business with the Sunham Defendants. A certified translation of the demand letter circulated by the Sunham Defendants is attached hereto as Exhibit A.

25. The demand letter informed the Sunham Defendants' suppliers that:

> The home textiles industry is comparatively specialized and narrow. This creates a situation in which industry competition is relatively fierce and, at the same time, people move throughout the industry comparatively frequently. Recently it has come to our attention that a company called JLA ([E&E]) has been very active and extreme in this home textiles business of ours. Although they aren't capable of competing with Sunham, however [sic] as a company that works together with you closely there are still certain things that we don't want to see happen. Exclusive cooperation is the precondition to partnership that we have always welcomed and which we have always held fast. If we find out that you have carried out business exchanges with our competitor, then as a result all cooperation between us will undergo fundamental changes.

26. The demand letter circulated by the Sunham Defendants was intended to suppress competition from Plaintiff and other Sunham Defendants' rivals. On information and belief, the Sunham Defendants' response to the emerging success of E&E in winning market share was to conspire with their major suppliers and to force them to boycott E&E. On information and belief, the Sunham Defendants intended that the orchestrated boycott would restrain trade and suppress competition in both China and in the United States. As demonstrated by the demand letter, the desire to eliminate or avoid competition in the home textiles industry is the purpose rather than the byproduct of the boycott demanded by the Sunham Defendants.

27. On information and belief, manufacturers and/or designers of home textile goods in China, reacting to the Sunham Defendants' threats and coercive tactics, have conspired with the Sunham Defendants, and amongst each other, to deprive Plaintiff of the products, designs, and access that it needs to compete with the Sunham Defendants. Denying E&E the ability to acquire goods from even a single specialized factory in China can severely disadvantage E&E and restrain competition in the United States, because of the wide disparity among Chinese manufacturers in their ability to deliver goods to acceptable quality at the lowest cost demanded by the price-sensitive marketplace in the United States. E&E has a demonstrated ability to identify key suppliers in China and to establish good relationships with manufacturers. On

information and belief, only the coercive and collusive tactics of the Sunham Defendants have prevented E&E from doing business with certain manufacturers, suppliers, and/or designers.

28.   The Sunham Defendants knowingly and intentionally imposed a boycott among their suppliers and manufacturers by threatening these third-parties that the Sunham Defendants would make "fundamental changes" if they supplied or otherwise conducted business with the Sunham Defendants' competitors. Because E&E competes with the Sunham Defendants in China and the United States, the Sunham Defendants knew that their orchestrated boycott would restrain trade and suppress competition in both China and in the United States. The conspiracy was designed to fulfill the Sunham Defendants' anticompetitive goals of restraining trade in the home textiles industry and monopolizing market share in the lucrative distribution channel for such goods.

29.   The effect of the supplier and/or designer Defendant Does' conspiracy with the Sunham Defendants and each other is to create a horizontal restraint. On information and belief, as a result of the Sunham Defendants' demands, suppliers, manufacturers, and/or designers who compete with each other for business nevertheless banded together to boycott and cease supplying products to Plaintiff at the instigation of E&E's competitor. Further, on information and belief, some of these suppliers also design or offer artwork for bedding products, therefore, competing on one level with distributors like E&E who both designs its own artwork and distributes bedding products incorporating such work to the United States.

30.   As a direct consequence of the acts of defendants, and the conspiracy that they have engaged in, competition in the market for mid-quality bed covering products has been restrained and suppressed; the price and supply of these textile goods has been affected and Plaintiff, a direct competitor of the Sunham Defendants, has been deprived of the benefit of a fair, free and competitive market. Plaintiff is unable to state its damages with precision at this time, since that determination will require discovery and accounting analysis of defendants' books and records.

31.   Under Section 16750(a) of the Business and Professions Code, Plaintiff is entitled to interest on the aforementioned sum from the date of service of this complaint until entry of

1  judgment thereon, to its reasonable attorney's fees, and to treble damages.

2      32.    The Sunham Defendants' continuing wrongful conduct as alleged above, unless and until restrained by order of this court, will cause great and irreparable harm to Plaintiff's ability to competitively sell its home textile bedding merchandise.

    33.    Plaintiff has no adequate remedy at law for the injuries currently being suffered or which will result in the future from the Sunham Defendants' continued wrongful conduct in that it would be prohibitively costly to file a lawsuit to enforce each infraction. In addition, damages flowing from the artificial restraint of the free market as set forth above are difficult if not impossible to ascertain.

## SECOND CAUSE OF ACTION

### (Restraint of Trade – Cartwright Act)

### (Against Sunham Defendants and Does 21-50)

    34.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 33, inclusive, as if set forth in full herein.

    35.    On information and belief, the Sunham Defendants demand exclusive dealing arrangements with various manufacturers in China to restrain trade and suppress competition in the market for low-cost home bed covering products imported into the United States by intermediaries and sold by value or warehouse retailers. *See* paragraph 2. On information and belief, the Sunham Defendants extract agreements from manufacturers that require them to deal exclusively with the Sunham Defendants. On information and belief, the Sunham Defendants also extract agreements from Chinese manufacturers that require the manufacturers to agree to refrain from selling certain types of products to the Sunham Defendants' competitors, although some such manufacturers are permitted to sell other, less-valued products to some such competitors. The Sunham Defendants force these agreements on third-party suppliers solely to restrain and suppress competition.

    36.    The relevant market affected by the Sunham Defendants' exclusive dealing arrangements is defined and discussed in paragraph 2 above.

    37.    On information and belief, the Sunham Defendants are able to coerce suppliers to

boycott and/or exclude Plaintiff because of the Sunham Defendants' economic strength and long-standing connections in China. On information and belief, the Sunham Defendants have been a prominent distributor purchasing goods from Chinese manufacturers in China dating back to a time when there were only seven home textiles exporters and importers authorized to do business in China. On information and belief, the Sunham Defendants have responded to the possibility of increased competition in their design, purchase, and distribution of mid-quality bed covering goods by exerting their market power to prevent suppliers in China from providing products to the Sunham Defendants' competitors who import these products into the United States.

38. On information and belief, in addition to exploiting their long ties in China to intimidate Chinese suppliers, the Sunham Defendants are also able to impose exclusive dealing agreements on suppliers and manufacturers because of their market power in the United States with respect to the type of home textile bedding products discussed or defined in paragraph 2 above. On information and belief, the Sunham Defendants are among the largest importers of Chinese made bed coverings into the United States. For example, on information and belief, the Sunham Defendants are one of the three largest suppliers of bed quilts in the United States. Because of the Sunham Defendants' market power in the United States and China, they are able to force Chinese suppliers and/or manufacturers to enter into self-injurious exclusive agreements that suppress competition and restrain trade nationwide as well as in California, the Sunham Defendants' most lucrative market.

39. The statements made by the Sunham Defendants and their agents confirm that they have substantial market power as one of the three largest importers of bed covering products in the United States and as an "industry leader." Exploiting this power and leadership position, they have imposed exclusive dealing arrangements with key suppliers in China solely to restrain competition in this marketplace. Specifically, bulk purchasers desiring to purchase low-cost top-of-the-bed linens from unique, specialized suppliers in China rely on knowledgeable intermediaries like the Sunham Defendants or E&E to access these suppliers. On information and belief, by restricting Plaintiff's ability to do business with specific suppliers, the Sunham Defendants are intentionally suppressing competition in the lucrative market for low-cost bedding

imports and are attempting to monopolize and entrench their position as a distributor of first resort within this particular distribution channel.

40. As a direct consequence of the joint action and wrongful acts of defendants, competition in the market for low-cost bedding products has been restrained and suppressed; the price of these textile goods has been affected and Plaintiff, a direct competitor of the Sunham Defendants, has been deprived of the benefit of a fair, free and competitive market. Plaintiff is unable to state its damages with precision at this time, since that determination will require discovery and accounting analysis of defendants' books and records.

41. Under Section 16750(a) of the Business and Professions Code, Plaintiff is entitled to interest on the aforementioned sum from the date of service of this complaint until entry of judgment thereon, to its reasonable attorney's fees, and to treble damages.

42. The Sunham Defendants' continuing anticompetitive conduct as alleged above, unless and until restrained by order of this court, will cause great and irreparable harm to Plaintiff's ability to competitively sell its textile merchandise.

43. Plaintiff has no adequate remedy at law for the injuries currently being suffered or which will result in the future from defendants' continued wrongful conduct in that it would be prohibitively costly to file a lawsuit to enforce each infraction. In addition, damages flowing from the artificial restraint of the free market as set forth above are difficult if not impossible to ascertain.

### THIRD CAUSE OF ACTION

### (Unfair Competition – B&P Code § 17200)

### (Against All Defendants)

44. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 43, inclusive, as if set forth in full herein.

45. The Sunham Defendants' antitrust violations constitute unfair competition under California law. Defendants' wrongful conduct has injured Plaintiff by causing Plaintiff to lose sales and business opportunities that it would otherwise have had but for Defendants' wrongful conduct. Additionally, the market in California for imported bedding products has been impaired

1  and trade has been restrained by the Sunham Defendants' anticompetitive practices.

2  46. On information and belief, another example of the Sunham Defendants' unfair business practices that gives the Sunham Defendants an inappropriate advantage in the home textile goods distribution marketplace is the Sunham Defendants' use of shell corporations in China to hide revenue and to evade taxes that should otherwise be paid in the United States. On information and belief, the Sunham Defendants contract with defendant JJ International to serve as the Sunham Defendants' exclusive overseas agent, for nominal purposes only, with respect to sourcing product, primarily in China, to be sold in the United States. On information and belief, when the Sunham Defendants purchase products for distribution in the United States, the Sunham Defendants "pay" a 15% markup on all such purchases to JJ International. On information and belief, while JJ International ostensibly is independent from the Sunham Defendants, JJ International is a sham company whose board members and officers include members of defendant Howard Yung's family. On information and belief, Kam Hing's CEO Yung actually controls JJ International, and he and other owners of the Sunham Defendants receive most if not all of the markup ostensibly paid to JJ International. On information and belief, JJ International was created specifically for the purpose of evading U.S. tax obligations. On information and belief, the Sunham Defendants therefore falsely increase their cost of goods and lower their reported profit by approximately 15% on all transactions. As a result, the Sunham Defendants unlawfully evade taxes that would otherwise be paid to the Internal Revenue Service, and defendants Yung and Courbanou share in these illicit profits. On information and belief, as a result of the Sunham Defendants' unlawful tax evasion, the Sunham Defendants have a competitive advantage and can temporarily undersell competitors such as JLA by selling below cost until prospective and actual competitors are completely chased out of the market.

47. On information and belief, defendant Yung is the primary beneficiary of the Sunham Defendants' tax evasion scheme. On information and belief, defendant Courbanou is the accountant whom Yung asked to devise a tax evasion scheme. Yung and Courbanou all benefit financially -- and unjustly -- from the Sunham Defendants' tax evasion scheme, and both are aware that JJ International is a sham and that the Sunham Defendants' tax evasion scheme is not

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1 lawful.

2 48. The Sunham Defendants, JJ International, individual defendants Yung and Courbanou, and Does 50-100, engage in unfair and/or unlawful business practices, which include the tax fraud and tax schemes described above. These practices violate federal tax and conspiracy laws including, *inter alia*, 26 U.S.C. § 7201; 26 U.S.C. § 7206 (1), (2); and 18 U.S.C. § 371. These practices constitute unfair business practices taking place in the market for low-cost, mid-quality bed covering textile products imported into the United States from China and sold by major value or warehouse retailers.

49. As a direct, proximate, and foreseeable result of Defendants' wrongful conduct, as alleged above in Paragraphs 35 through 38, Plaintiff E&E has suffered competitive injury in the form of lost sales and lost business opportunities. Legitimate California distributors who import low-cost, mid-quality bed covering textile products but who do not conspire to restrain trade and who do not unlawfully evade United States and local tax obligations have lost and will continue to lose sales and prospective business opportunities to a company which does engage in such unlawful and/or unfair practices, and which, as a result, is able to temporarily sell product at a loss in order to eviscerate short term and long term competition.

50. Defendants' acts hereinabove alleged are acts of unfair and unlawful competition within the meaning of Business and Professions Code section 17203. Plaintiff is informed and believes that Defendants will continue to do those acts unless the Court orders defendants to cease and desist.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For damages in an amount to be proven at trial;
2. For statutory and/or treble damages as provided by law;
3. For punitive damages and a sum sufficient to punish and make an example of Defendants;
4. For preliminary and permanent injunctive relief;
5. For costs of suit;

- 12 -

Case No. C08-00871 MMC | PLAINTIFF'S AMENDED COMPLAINT FOR CARTWRIGHT VIOLATIONS & UNFAIR COMPETITION

1    6. For prejudgment interest;

2    7. For attorney's fees; and

3    8. For such further relief as the Court deems just and proper.

DATED: May 16, 2008        SHARTSIS FRIESE LLP

By: */s/ Robert Charles Ward*
      ROBERT CHARLES WARD

Attorneys for Plaintiff
E&E CO., LTD., a California corporation

6197\007\1508253.5

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

# EXHIBIT A
# FIRST AMENDED COMPLAINT
Case No. 3:08-00871 MMC

Sunham Home Fashions Shanghai Rep Office
美国圣翰家纺公司上海办事处
3709 Shanghai Bund Center, 222 Yan An Rong West, 上海市延安中路222号
Phone: 电话: 21 5109 5868 · Fax 传真: 21 5109 5867

尊敬的供应商们：

大家新年好！得益于我们双方共同的努力和来年的配合，让我们伯在过去的一年里一起进步，携手起飞。在此，我代表圣翰来公司也代表我本人在美国和在中国的全体员工对各单位（厂）此次来会的莅临表达一个共同比较十和我等的行业。这国用也单明了行业是争得对激烈，人员流动比较频繁的行情况，看到我伯走奉到有之为IIA（双赢）公司走来我们的圣翰来公司产业务各位，但是作为事物会下信它不可能对我们带来的一些我们不愿看到的事实发生，十一各位先生的朋友，仍然不争气有到一些我们不清楚的事实发生，十一各位是我们一致地事医持的合作前提，如果有这复费方与等方各位先生上有往来，所有场合作我伯比较这里去采作的意义。

正因为我们行也国有此地小，我伯公司也考虑到了一些人事变动，但毛正种我们（未米公司）一名什后内走采纳的对策底来。在新的一年里我们（来米公司）准许人员已不和业合作，在新的一年里我们（圣翰来公司）准

各伯拒色，我伯50年也作起正

Sunham Home Fashions Shanghai Rep Office
3709 Shanghai Bund Center   No. 222 Yan An Road East
Phone: 21 5109 6868  Fax: 21 5109 6867

Respected Suppliers/ Factories:

    Happy New Year, everybody! I'm very pleased that everyone's hard work and close cooperation has allowed us to make progress and grow together during the past year. On behalf of Sunham Fashions and all our employees in both the United States and China, I'd like to take this opportunity to express our sincere thanks to your esteemed company (factory)!
    The home textiles industry is comparatively specialized and narrow. This creates a situation in which industry competition is relatively fierce and, at the same time, people move throughout the industry comparatively frequently. Recently it has come to our attention that a company called JLA ("Double Wing" in Chinese) has been very active and extreme in this home textiles business of ours. Although they aren't capable of competing with Sunham, however [sic] as a company that works together with you closely there are still certain things that we don't want to see happen. Exclusive cooperation is the precondition to partnership that we have always welcomed and which we have always held fast. If we find out that you have carried out business exchanges with our competitor, then as a result all cooperation between us will undergo fundamental changes.
    Precisely because the home textiles industry is a rather small circle, our company has been unable to avoid certain human resources changes. [For all the problems we have encountered up to this point, they were like mighty waves crashing on a sandy shore. After many severe tests and painful trials, Sunham is confident and competent to say: we will as always develop and obtain greater progress in the following years, and we want everyone here to be part of this progress.]

    [Finally, I hope to see that our cooperation shall be more comprehensive, more harmonious, with overall development. ]


[Sunham Home Fashions Shanghai Rep. Office]
[February, 2006]



**TRANSPERFECT**
TRANSLATIONS

City of New York, State of New York, County of New York

I, Alice Kim, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the document **Sunham Home Fashions demand letter to suppliers and factories** from Chinese into English.

_____
Alice Kim

Sworn to before me this
5th day of May 2008

_____
Signature, Notary Public

Stephanie Dill
Notary Public, State of New York
No. 01DI6180934
Qualified in NEW YORK County
Commission Expires Jan 22, 2012

Stamp, Notary Public

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
RESEARCH TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
WASHINGTON, DC

TPT 077 rev. 1 20060612

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016   T 212.689.5555   F 212.689.1059   WWW.TRANSPERFECT.COM