1  SHARTSIS FRIESE LLP
   ROBERT CHARLES WARD (Bar #160824)
2  rward@sflaw.com
   JAMES P. MARTIN (Bar #170044)
3  jmartin@sflaw.com
   FELICIA DRAPER (Bar #242668)
4  fdraper@sflaw.com
   One Maritime Plaza, Eighteenth Floor
5  San Francisco, CA 94111
   Telephone:  (415) 421-6500
6  Facsimile:  (415) 421-2922

7  Attorneys for Plaintiff
   E&E Co., Ltd., a California corporation
8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12

13  E&E CO., LTD., a California corporation,      Case No.  3:08-00871 MMC

14               Plaintiff,                       **PLAINTIFF'S MEMORANDUM OF**
                                                  **POINTS AND AUTHORITIES IN**
15  v.                                            **OPPOSITION TO DEFENDANTS'**
                                                  **MOTION TO DISMISS FIRST AMENDED**
16  KAM HING ENTERPRISES, INC.;                   **COMPLAINT PURSUANT TO FED. R.**
    SUNHAM HOME FASHIONS, LLC; JJ                 **CIV. PROC. 12(b)(6) AND 12(b)(2)**
17  INTERNATIONAL TRADING
    COMPANY; HOWARD YUNG;                         Date:       August 1, 2008
18  ARTHUR COURBANOU; and DOES 1 -                Time:       9:00 a.m.
    100, inclusive,                               Judge:      Hon. Maxine M. Chesney
19                                                Courtroom:  7, 19th Fl.
               Defendants.
20

21

22

23

24

25

26

27

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................1

II.  FACTUAL BACKGROUND ..............................................................................1

   A.   The Parties Are Direct Competitors In A Properly Defined Market ........1

   B.   The Sunham Defendants Imposed A Boycott To Suppress Competition From E&E ..................................................................................................2

   C.   The Sunham Defendants' Boycott Has Resulted In A Horizontal Restraint And Has Prevented Plaintiff From Doing Business With Key Suppliers ...............3

   D.   The Sunham Defendants Have Been Able To Impose A Boycott Because Of Their Market Power ............................................................................4

   E.   The Sunham Defendants' Conduct Has Lessened Competition And Has Harmed Plaintiff ......................................................................................5

   F.   The Suhham Defendants Have Engaged In Tax Evasion That Constitutes An Unfair Business Practice .....................................................................6

   G.   The Sunham Defendants' Illegal Conduct Is Specifically Directed At California ................................................................................................7

III. LEGAL ARGUMENT ........................................................................................8

   A.   E&E Has Standing To Pursue Its Claim Under The UCL And E&E's FAC Successfully States A Cause Of Action Under The UCL...........................9

      1.   E&E's FAC establishes that it has standing to bring a claim against Defendants under the UCL .................................................................9

      2.   E&E's FAC successfully states a cause of action under the UCL with two distinct theories...............................................................13

         a.   Defendants' acts violate the "unlawful" prong of the UCL...........13

         b.   Defendants' acts violate the "unfair" prong of the UCL ...............14

   B.   E&E's FAC Sets Forth Facts Sufficient To Establish Cartwright Act Violations Under Both The Per Se And Rule Of Reason Standards ....................15

      1.   E&E states a claim under the per se standard ...........................................15

         a.   The "hub and spoke" type conspiracy alleged by E&E is a horizontal agreement.................................................................16

         b.   Even if the court finds E&E alleged a vertical agreement, that agreement should nonetheless be judged under the per se standard................................................................................17

         c.   The degree of specificity with which E&E pleads its claims is sufficient to prevail against Defendants' Motion.....................17

         d.   Alleging market power is unnecessary under a per se standard ................................................................................19

      2.   E&E also states a claim under the rule of reason standard ........................20

         a.   The Sunham Defendants' exclusive dealing arrangement is harmful to competition.................................................................20

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
3:08-00871 MMC

PLAINTIFF'S MPA IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS
### (continued)

Page

b.  The Sunham Defendants have market power within a relevant market .................................................................22

C.  E&E Should Be Permitted To Conduct Limited Discovery To Determine Whether Defendants Yung And Courbanou Have Enough Contacts With California To Support Personal Jurisdiction..........................................................25

IV.  CONCLUSION..........................................................................................25

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- ii -

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Bell Atlantic Corp. v. Twombly,*
    127 S. Ct. 1955 (2007)...............................................................................8, 19

*Brown Shoe Co. v. United States,*
    370 U.S. 294 (1962)........................................................................................23

*Cargill, Inc. v. Monfort of Colorado, Inc.,*
    479 U.S. 104 (1986)........................................................................................14

*Continenal T.V., Inc. v. GTE Sylvania, Inc.,*
    433 U.S. 36 (1977)..........................................................................................15

*Davis v. Metro Prods., Inc.,*
    885 F.2d 515 (9th Cir. 1989) .........................................................................25

*United States v. E.I. Du Pont de Nemours & Co.,*
    351 U.S. 377 (1956)..................................................................................23, 24

*Federal Trade Comm'n v. Indiana Fed'n of Dentists,*
    476 U.S. 447 (1986)........................................................................................19

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.,*
    352 F.3d 367 (9th Cir. 2003) ...................................................................passim

*Hal Roach Studios v. Richard Feiner & Co.,*
    896 F.2d 1542 (9th Cir. 1990) .........................................................................8

*Hospital Building Co. v. Trustees of Rex Hospital,*
    96 S. Ct. 1848 (1976)......................................................................................19

*Klor's, Inc. v. Broadway-Hale Stores, Inc.,*
    359 U.S. 207 (1959)........................................................................................16

*Kendall v. Visa USA, Inc.,*
    518 F.3d 1042, 1046 (9th Cir. 2008) .............................................................18

*Knevelbaard Dairies v. Kraft Foods, Inc.,*
    232 F.3d 979, 986 (9th Cir. 2000) .................................................................19

*NL Industries, Inc. v. Kaplan,*
    792 F.2d 896 (9th Cir. 1986) ...........................................................................8

*NYNEX Corp v. Dicon, Inc.,*
    525 U.S. 128 (1998)........................................................................................16

*Newcal Industries, Inc. v. Ikon Office Solution,*
    513 F.3d 1038 (9th Cir. 2008) ..................................................................passim

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

## TABLE OF AUTHORITIES
### (continued)

Page

*Omega Envtl., Inc. v. Gilbarco, Inc.,*
   127 F.3d 1157 (9th Cir. 1997) ...................................................................................20

*Parrino v. FHP, Inc.,*
   146 F.3d 699 (9th Cir. 1998) .......................................................................................3

*Steckman v. Hart Brewing, Inc.,*
   143 F.3d 1293 (9th Cir. 1998) ...................................................................................22

*In re Tableware Antitrust Litig.,*
   363 F. Supp. 2d 1203 (N.D. Cal. 2005) ...............................................................18, 19

*Tanaka v. University of Southern California,*
   252 F.3d 1059 (9th Cir. 2001) ...................................................................................20

*Trew v. Volvo Cars of N. Am.,*
   2006 U.S. Dist. LEXIS 4890 (C.D. Cal. 2006) ........................................................10

*Wellnx Life Scis., Inc. v. Iovate Health Scis. Research, Inc.,*
   516 F. Supp. 2d 270 (S.D.N.Y. 2007) ......................................................................16

*White v. TransUnion, LLC,*
   462 F. Supp. 2d 1079 (C.D. Cal. 2006) ...............................................................10, 11

**STATE CASES**

*Amarel v. Connell,*
   202 Cal. App. 3d 137 (1988) ....................................................................................19

*Berryman v. Merit Property Management, Inc.,*
   152 Cal. App. 4th 1544 (2007) .................................................................................13

*Bert G. Gianelli Distributing Co. v. Beck & Co.,*
   172 Cal. App. 3d 1020 (1985) .............................................................................16, 17

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
   20 Cal. 4th 163 (1999) ........................................................................................passim

*Cellular Plus, Inc. v. Superior Court,*
   14 Cal. App. 4th 1224 (1993) ...................................................................................18

*Certain Underwriters at Lloyd's, London v. Real Estate Prof. Ins. Co.,*
   2007 WL 4249078 (C.D. Cal. Nov. 26, 2007) ....................................................passim

*Dore v. Arnold Worldwide, Inc.,*
   39 Cal. 4th 384 (2006) ..............................................................................................16

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Exxon Corp. v. Superior Court of Santa Clara County*,
   51 Cal. App. 4th 1672 (1997) ....................................................................24

*G&C Auto Body*,
   2007 WL43560907 .........................................................................10, 11

*G&C Auto Body, Inc. v. GEICO Gen. Ins. Co.*,
   2007 WL 4350907 (N.D. Cal. Dec. 12, 2007)......................................passim

*Hall v. Time, Inc.*,
   158 Cal. App. 4th 847 (2008) ..................................................................12

*Lazar v. Hertz Corp.*,
   69 Cal. App. 4th 1494 (1999) ..................................................................13

*Magnecomp Corp. v. Athene Co.*,
   209 Cal. App. 3d 526 (1989) ...................................................................25

*Marin County*,
   16 Cal. 3d at 930-31.................................................................................15

*Mihlon v. Superior Court*,
   169 Cal. App. 3d 703 (1985) ...................................................................25

*People v. National Association of Realtors*,
   120 Cal. App. 3d 459 (1981) ...............................................................14, 21

*O'Brien v. Camisasca Automotive Mfg., Inc.*,
   161 Cal. App. 4th 388 (2008) ..................................................................12

*Peters v. Saunders*,
   1996 Cal. App. LEXIS 1179.....................................................................17

*Podolsky v. First Healthcare Corp.*,
   50 Cal. App. 4th 632 (1996) ....................................................................13

*Redwood Theatres v. Festival Enters.*,
   200 Cal. App. 3d 687 (1988) ...................................................................20

*Saunders v. Superior Court*,
   27 Cal. App. 4th 832 (1994) ....................................................................13

*The Missing Link, Inc. v. eBay, Inc.*,
   2008 WL 1994886 (N.D. Cal. 2008) .........................................................12

**STATUTES**

18 U.S.C. § 371.............................................................................................7

26 U.S.C. § 7201...........................................................................................7

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

## TABLE OF AUTHORITIES
### (continued)

**Page**

26 U.S.C. § 7206 (1), (2) ...................................................................................7

Cal. Bus. & Prof. Code § 16756 ........................................................................17

Cal. Bus. & Prof. Code § 17001 ........................................................................14

Cal. Bus. & Prof. Code § 17203 ....................................................................9, 10

Cal. Bus. & Prof. Code § 17204 ....................................................................9, 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

Case No.
3:08-00871 MMC

PLAINTIFF'S MPA IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

I.    **INTRODUCTION**

The First Amended Complaint ("FAC") of plaintiff E&E Co. Ltd. ("E&E") properly sets forth a claim for unfair business practices under California Business & Professions Code § 17200 *et seq.* ("UCL"), under the UCL's "unlawful" and "unfair" prongs, and alleges facts sufficient for the Court to find that E&E has standing to pursue its claims under the UCL. E&E has alleged that it suffered injury in fact and that it has lost money as a result of Defendants' unfair competition. E&E also identifies the statutes it alleges Defendants have violated and has alleged conduct that significantly threatens or harms competition.

E&E sufficiently pleads causes of action under the *per se* and rule of reason standards of California's Cartwright Act, California Business & Professions Code § 16720 *et seq.* E&E alleges that the Sunham Defendants[1] have engaged in a boycott that constitutes a horizontal agreement, that the Sunham Defendants' exclusive dealing arrangement is harmful to competition, and that the Sunham Defendants have market power within a properly defined market.

Furthermore, the specificity with which E&E has pled each of its claims is sufficient to defeat Defendants' Motion. Defendants completely ignore the detailed factual allegations of the FAC, and often base their arguments on disputed facts that will be the subject of discovery. E&E's detailed factual allegations must be accepted as true for purposes of this Motion, and such allegations are sufficient to defeat Defendants' Motion.[2]

II.    **FACTUAL BACKGROUND**

A.    **The Parties Are Direct Competitors In A Properly Defined Market**

E&E is a dynamic and entrepreneurial distributor of home textiles.    FAC, ¶ 1. The Sunham Defendants compete directly with E&E.   *Id.* at ¶ 16.   E&E and the Sunham Defendants are distributors and neither manufactures goods nor retails direct to the public.   In particular, both

---

[1]    When referring only to Kam Hing Enterprises, Inc. and Sunham Home Fashions, LLC, those entities are hereinafter called the "Sunham Defendants."

[2]    Defendants' suggestion in its Motion that this lawsuit was filed in retaliation of suits it filed against Plaintiff in New York and New Jersey have no merit. E&E filed this case when it became aware that manufacturers in China were refusing to supply products to E&E because of the Sunham Defendants' threats. After a preliminary investigation, E&E filed suit in this District, where E&E is based. California is Defendants' most lucrative marketplace in the U.S., and Defendants' conduct is specifically directed at California.

PLAINTIFF'S MPA IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants and E&E design and/or purchase home textile bed-covering products such as quilts, duvets, comforters and coverlets that are manufactured in China, and then sell these imported goods in the United States. *Id.* at ¶¶ 2, 16. The market affected by the Sunham Defendants' unlawful conduct consists of mid-quality, low-cost bed coverings sold by intermediaries such as E&E to bulk-purchaser, value-oriented, direct retailers (*e.g.*, Target, Mervyns) or warehouse stores (*e.g.*, Sam's Club, Costco), that, in turn, ultimately resell such products to consumers in California and throughout the United States. *Id.* at ¶¶ 2, 22, and 35. Downward price pressure from the retailers and very thin margins are characteristics of this market. *Id.* at ¶ 2.

**B.    The Sunham Defendants Imposed A Boycott To Suppress Competition From E&E**

The Sunham Defendants demand from various manufacturers in China exclusive dealing arrangements that effectively restrain trade and suppress competition in the market for low-cost home bed covering products imported into the United States and sold by value or warehouse retailers. FAC, ¶35. The Sunham Defendants also extract exclusive dealing agreements from Chinese manufacturers that require the manufacturers to agree to refrain from selling certain types of products to the Sunham Defendants' competitors, although some of those manufacturers are permitted to sell to some other competitors other, less-valued products. *Id.* The Sunham Defendants force these agreements on third-party suppliers solely to restrain and suppress competition. *Id.*

On or around February 2006, the Sunham Defendants perceived Plaintiff as a major threat to their lucrative import trade in the United States market, generally, and in California specifically. FAC, ¶ 24. Reacting to this threat, the Sunham Defendants sent demand letters to their key suppliers identifying Plaintiff as a competitor who the suppliers must not do business with if they wished to continue doing business with the Sunham Defendants. *Id.*[3] The demand letter informed the Sunham Defendants' suppliers that:

The home textiles industry is comparatively specialized and narrow. This creates a

---

[3]    A certified translation of the demand letter circulated by the Sunham Defendants is attached to the FAC as Exhibit A.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

PLAINTIFF'S MPA IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

situation in which industry competition is relatively fierce and, at the same time, people move throughout the industry comparatively frequently. Recently it has come to our attention that a company called JLA ([E&E]) has been very active and extreme in this home textiles business of ours. Although they aren't capable of competing with Sunham, however [sic] as a company that works together with you closely there are still certain things that we don't want to see happen. Exclusive cooperation is the precondition to partnership that we have always welcomed and which we have always held fast. If we find out that you have carried out business exchanges with our competitor, then as a result all cooperation between us will undergo fundamental changes.[4]

The Sunham Defendants' response to the emerging success of E&E in winning market share was to conspire with their major suppliers and to force them to boycott E&E. FAC, ¶ 26. The Sunham Defendants knowingly and intentionally imposed a boycott among their suppliers and manufacturers by threatening that the Sunham Defendants would make "fundamental changes" if they supplied or otherwise conducted business with the Sunham Defendants' competitors, and the Sunham Defendants intended their actions to restrain trade and to suppress competition from E&E and other of the Sunham Defendants' rivals, in both China and the United States. *Id.* at ¶¶ 26 and 28. The conspiracy was designed to fulfill the Sunham Defendants' anticompetitive goals of restraining trade in the home bed-covering textiles industry and monopolizing market share in the lucrative distribution channel for such goods. *Id.* at 26. As demonstrated by the demand letter, the desire to eliminate or avoid competition in the home textiles industry is the purpose rather than the byproduct of the boycott the Sunham Defendants demanded.

## C.     The Sunham Defendants' Boycott Has Resulted In A Horizontal Restraint And Has Prevented Plaintiff From Doing Business With Key Suppliers

The Sunham Defendants' conspiracy with the supplier and/or designer Defendant Does is a "hub and spoke" type agreement, and because the Does have agreed amongst one another to boycott E&E, constitutes a horizontal restraint. FAC, ¶¶ 27 and 29. As a result of the Sunham Defendants' demands, suppliers, manufacturers, and/or designers who compete with each other

---

[4]      For purposes of the Motion, Defendants concede the authenticity of this letter. Motion at n.4. In ruling on a 12(b)(6) motion, a district court may consider any document "the authenticity of which is not contested, and upon with the plaintiff's complaint necessarily relies." *See Parrino v. FHP, Inc.*, 146 F. 3d 699, 706 (9th Cir. 1998).

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1   for business banded together to boycott and cease supplying products to E&E, thus preventing

2   E&E from doing business with key suppliers in China. *Id.* at ¶ 22. The Sunham Defendants

3   knew that some of the suppliers that they pressured not to sell goods to E&E were either E&E

4   suppliers or would have sold to E&E but for the Sunham Defendants' efforts to orchestrate a

5   group boycott. *Id.* at ¶ 23. Chinese textile factories are not wholly fungible, with any textile

6   factory able to manufacture any type of bed covering. Rather, some factories are tooled for or

7   skilled in the production of certain types of bed coverings of good quality at lower costs. *Id.* at ¶

8   22. By denying E&E access to some manufacturers that are uniquely tooled with specific

9   manufacturing capabilities, the Sunham Defendants impose additional costs on Plaintiff and

10  unnecessarily restrict the supply of home bedding products imported into the United States. *Id.*

11          **D.      The Sunham Defendants Have Been Able To Impose A Boycott Because Of**
12                  **Their Market Power**

13          The Sunham Defendants have been prominent distributors of goods purchased from

14  Chinese manufacturers dating back to when there were only seven home textiles exporters

15  authorized to do business in China. FAC, ¶ 37. Using their economic strength and long-standing

16  connections in China, the Sunham Defendants have responded to the possibility of increased

17  competition in their distribution of mid-quality bed covering goods by exerting their market

18  power to coerce suppliers in China to boycott or exclude E&E and other of the Sunham

19  Defendants' competitors. *Id.*

20          In addition to exploiting their long ties in China to intimidate Chinese suppliers, the

21  Sunham Defendants are also able to impose exclusive dealing agreements on suppliers and

22  manufacturers because of their market power in the United States with respect to the type of

23  home textile bedding products discussed or defined in paragraph 2 of the FAC. FAC, ¶ 38. The

24  Sunham Defendants are among the largest importers of Chinese-made bed coverings into the

25  United States and are, for example, one of the three largest suppliers of bed quilts in the United

26  States. *Id.* Because of the Sunham Defendants' market power in the United States and China,

27  they are able to force Chinese suppliers and/or manufacturers to enter into self-injurious exclusive

28  agreements that suppress competition and restrain trade nationwide as well as in California. *Id.*

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 4 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    Statements made by the Sunham Defendants and their agents confirm that they have

2    substantial market power as one of the three largest importers of bed covering products in the

3    United States.  Exploiting this power, they have imposed exclusive dealing arrangements with

4    key suppliers in China solely to restrain competition in this marketplace. FAC, ¶ 39. Specifically,

5    bulk purchasers desiring to purchase low-cost top-of-the-bed linens from unique, specialized

6    suppliers in China rely on knowledgeable intermediaries like the Sunham Defendants or E&E to

7    access these suppliers.  *Id.*  By restricting E&E's ability to do business with specific suppliers, the

8    Sunham Defendants are intentionally suppressing competition in the lucrative market for low-cost

9    bedding from China and are attempting to entrench their position as a distributor of first resort

10   within this particular distribution channel.  *Id.*

11   **E.    The Sunham Defendants' Conduct Has Lessened Competition And Has
         Harmed Plaintiff**
12

13   Manufacturers and/or designers of home textile goods in China, reacting to the Sunham

14   Defendants' threats and coercive tactics, have conspired with the Sunham Defendants to deprive

15   E&E of products needed to compete fairly with the Sunham Defendants. FAC, ¶ 27. Denying

16   E&E the ability to acquire goods from even a single specialized factory in China can severely

17   disadvantage E&E and restrain competition in the United States, because of the wide disparity

18   among Chinese manufacturers in their ability to deliver goods of acceptable quality at the lowest

19   cost demanded by the price-sensitive value-retailer marketplace in the United States.  *Id.*  E&E

20   has a demonstrated ability to identify key suppliers in China and to establish good relationships

21   with manufacturers.  *Id.*  Only the coercive and collusive tactics of the Sunham Defendants have

22   prevented E&E from doing business with certain manufacturers.  *Id.*

23   As a result of Defendants' wrongful conduct, as alleged in the FAC, E&E has suffered

24   competitive injury from being prevented from doing business with certain manufacturers,

25   suppliers, and/or designers, and in the form of lost sales and lost business opportunities. FAC, ¶¶

26   27 and 49. Legitimate California distributors who import low-cost, mid-quality bed covering

27   textile products but who do not conspire to restrain trade and who do not unlawfully evade United

28   States and local tax obligations have lost and will continue to lose sales and prospective business

| Case No.<br>3:08-00871 MMC | PLAINTIFF'S MPA IN OPPOSITION TO DEFENDANTS' MOTION<br>TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT |
| --- | --- |

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    opportunities to a company which does engage in such unlawful and unfair practices.  *Id.*

2    Defendants' actions also obstruct E&E's ability to acquire goods at lower costs. FAC, ¶ 4.

3    By orchestrating a boycott of E&E by suppliers, manufacturers, and/or designers in China who

4    otherwise would sell to E&E, E&E is denied the ability to buy from factories that are better able

5    to deliver various products at better prices.  *Id.*  The downward price pressure in the market forces

6    distributors to identify manufacturers that can speedily deliver goods of acceptable quality,

7    meeting unique customer specifications at the lowest possible cost.  *Id.*  The manufacturing sector

8    in China is not a bottomless well of "one-size-fits-all" factories.  *Id.* ¶ 4. For textiles, different

9    goods require factories that are uniquely tooled or employ specialized labor skilled in the making

10   of myriad specific types of merchandise.  *Id.* ¶ 4.  One result is that factories in China collectively

11   can supply the widest variety of home textiles available in the world.  *Id.*  A concomitant

12   consequence is that E&E can be prevented from competing in the bedcovering market for many

13   different types of products if unique factories offering distinct areas of specialization will not

14   supply E&E because of the Sunham Defendants' threats.  *Id.*

15   The Sunham Defendants' antitrust violations constitute unfair competition under

16   California law.  FAC, ¶ 45. Defendants' wrongful conduct has injured E&E by causing E&E to

17   lose sales and business opportunities that it would otherwise have had but for Defendants'

18   wrongful conduct.  *Id.*  Additionally, the market in California for imported bedding products has

19   been impaired and trade restrained by the Sunham Defendants' anticompetitive practices.  *Id.*

20   **F.    The Suhham Defendants Have Engaged In Tax Evasion That Constitutes An**
     **Unfair Business Practice**

21

22   Another example of the Sunham Defendants' unfair business practices that gives the them

23   an inappropriate advantage in the bed-covering distribution marketplace is their use of shell

24   corporations in China to hide revenue and to evade taxes that should otherwise be paid in the

25   United States. FAC, ¶ 46. The Sunham Defendants contract with defendant JJ International to

26   serve as the Sunham Defendants' exclusive overseas agent, for nominal purposes only, with

27   respect to sourcing product, primarily in China, to be sold in the United States.  *Id.*  When the

28   Sunham Defendants purchase products for distribution in the United States, the Sunham

- 6 -

Defendants "pay" a 15% markup on all such purchases to JJ International. *Id.* The Sunham Defendants therefore falsely increase their cost of goods and lower their reported profit by approximately 15% on all transactions. *Id.* As a result, the Sunham Defendants unlawfully evade taxes that would otherwise be paid to the Internal Revenue Service, and defendants Yung and Courbanou share in these illicit profits. *Id.*

While JJ International ostensibly is independent from the Sunham Defendants, JJ International is a sham company, created specifically for the purpose of evading United States' tax obligations, whose board members and officers include members of defendant Yung's family. FAC, ¶ 46. Yung actually controls JJ International, and he and other owners of the Sunham Defendants receive most if not all of the markup ostensibly paid to JJ International. *Id.* Defendant Yung is the primary beneficiary of the Sunham Defendants' tax evasion scheme, and Defendant Courbanou is the accountant who devised the tax evasion scheme. *Id.* at ¶ 47. Yung and Courbanou all benefit financially -- and unjustly -- from the Sunham Defendants' tax evasion scheme, and both are aware that the Sunham Defendants' tax evasion scheme is unlawful. *Id.*

The Sunham Defendants, JJ International, and Yung and Courbanou engage in unfair and/or unlawful business practices, which include the tax fraud and tax schemes described above. FAC, ¶ 48. These practices violate federal tax and conspiracy laws including, inter alia, 26 U.S.C. § 7201; 26 U.S.C. § 7206 (1), (2); and 18 U.S.C. § 371. *Id.* These practices constitute unfair business practices taking place in the market for low-cost, mid-quality bed covering textile products imported into the United States from China and sold by major value or warehouse retailers. *Id.* Given the strong downward price pressures characteristic of their market, the Sunham Defendants' ability to evade taxes owed provides them with an unfair and unlawful competitive advantage. *Id.* at 46.

### G.     The Sunham Defendants' Illegal Conduct Is Specifically Directed At California

Each year, the Sunham Defendants sell several tens of millions of dollars of home bedding textile products to retail stores with principal places of business in California. FAC, ¶ 17. Some of the retail stores to whom the Sunham Defendants sell low-cost home bedding products include

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
3:08-00871 MMC

Mervyns (headquartered in Alameda County), Bed Bath & Beyond, Macy's, Kohl's, and Linens-n-Things, who collectively have hundreds of retail stores in California and each of whom has retail stores in Alameda County. *Id.* The Sunham Defendants send sales personnel to meet with California-based retailers. *Id.*

California is the Sunham Defendants' largest and most lucrative marketplace of the 50 states, and the majority of the goods imported into the United States by the Sunham Defendants are imported through ports in the state of California. FAC, ¶¶ 7 and 18. Also, the Sunham Defendants specifically design goods for sale in the State of California, because the quality and safety standards in the textile industry are largely established in California. *Id.*

Defendants Yung and Courbanou communicate and interact with California merchants, employees and salespeople on a routine or semi-routine basis, and intentionally engage in wrongful conduct knowing that such conduct will affect the California market. FAC, ¶ 19.

## III.   **LEGAL ARGUMENT**

A motion to dismiss under Rule 12(b)(6) cannot be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 368 (9th Cir. 2003). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plan statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). Nonetheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party, and the allegations of the moving party that have been denied are presumed false. *See NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); *Hal Roach Studios v. Richard*

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    *Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). Defendants' argument that the FAC is based

2    on "conclusory assertions" and "legal rhetoric" completely mischaracterizes E&E's detailed

3    factual allegations that must be accepted as true for purposes of this Motion.

   **A.    E&E Has Standing To Pursue Its Claim Under The UCL And E&E's FAC**
4
   **Successfully States A Cause Of Action Under The UCL**
5

6        The allegations in E&E's FAC are sufficient to state a claim against Defendants under the

7    UCL. "[T]he unfair competition law's scope is broad…defin[ing] 'unfair competition' to include

8    'any unlawful, unfair or fraudulent business act or practice.'" *Cel-Tech Communications, Inc. v.*

9    *Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 180 (1999). "Its coverage is sweeping,

10   embracing 'anything that can properly be called a business practice and that at the same time is

11   forbidden by law.'" *Id.* (internal citations omitted). The UCL governs "'anticompetitive business

12   practices'" and its primary purpose is to preserve fair business competition. *Id.* The UCL

13   establishes three varieties of unfair competition: those that are unlawful, those that are unfair, and

14   those that are fraudulent. *Id.*

   **1.    E&E's FAC establishes that it has standing to bring a claim against**
15
   **Defendants under the UCL.**
16

17       Claims brought under the UCL permit both restitutionary and injunctive relief. *See* Cal.

18   Bus. & Prof. Code §§ 17203 and 17204, respectively. "The standing requirements to maintain a

19   Section 17200 action [for injunctive relief], as modified by the passage of Proposition 64, are set

20   forth in Section 17204."[5] *G&C Auto Body, Inc. v. GEICO Gen. Ins. Co.*, 2007 WL 4350907, at

21   *3 (N.D. Cal. Dec. 12, 2007). "For standing purposes, Section 17204 requires that a plaintiff 'has

22   suffered injury in fact and has lost money or property as a result of such unfair competition.'" *Id.*

23   at *10; *Certain Underwriters at Lloyd's, London v. Real Estate Prof. Ins. Co.*, 2007 WL 4249078,

24   at *6 (C.D. Cal. Nov. 26, 2007).[6]

25       With regard to the injury in fact requirement, "[a]t the motion to dismiss stage, allegations

26   _____

[5]    Proposition 64 was enacted by California voters to restrict frivolous 17200 lawsuits
27   brought by attorneys who had no client who had suffered injury. Prop. 64 § 1, subd. (e).

[6]    E&E alleges only that it is entitled to injunctive relief, and not restitution; therefore the
28   standing requirements of section 17204 govern here.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 9 -

1    of lost income [are] enough to establish injury-in-fact…" *G&C Auto Body*, at *4; *White v.*

2    *TransUnion, LLC*, 462 F. Supp. 2d 1079, 1083-84 (C.D. Cal. 2006). In *G&C Auto Body*, the

3    plaintiffs (auto body repair companies) sued the defendants (insurance companies), alleging that

4    the labor repair rate standards the defendants used to repair their policyholders' vehicles were

5    below the reasonable and prevailing regional rates. As a result, plaintiffs alleged, they lost money

6    from defendants' failure to pay plaintiffs' rates, and lost business opportunities because

7    defendants sent their policyholders elsewhere for repairs.    The plaintiffs' allegations of lost

8    income, said the court, were sufficient to establish injury in fact. *G&C Auto Body*, at *4.

9        A plaintiff who alleges injury-in-fact and a loss of income or money as a result of a

10   defendant's illegal conduct has standing to sue under Section 17204 of the UCL. *White*, 462 F.

11   Supp. 2d at 1083-84 (denying motion to dismiss).    Defendants' standing argument does not

12   properly distinguish between the different standing standards for injunctive versus restitutionary

13   relief.    Section 17203 sets the standard for pleading a claim seeking restitution, while section

14   17204 sets the standard for pleading a claim seeking injunctive relief. *See* Cal. Bus. & Prof. Code

15   §§ 17203, 17204.  Section 17203 allows a court to "restore to any person in interest any money or

16   property, real or personal, which may have been acquired by means of such unfair competition."

17   In other words, it is necessary for restitution that "the losses in question were the product of the

18   defendant's wrongful acquisition of the plaintiffs [sic] property." *White*, 462 F. Supp. 2d at 1084;

19   *See also Trew v. Volvo Cars of N. Am.*, 2006 U.S. Dist. LEXIS 4890, at *17 (C.D. Cal. 2006).

20   Meanwhile, the standard for a plaintiff seeking injunctive relief is broader. Under section 17204,

21   a plaintiff need only allege that it has "'lost money or property' as a result of unfair competition."

22   *G&C Auto Body*, at *4.

23       Despite the statutory distinction between Sections 17203 and 17204, Defendants argue

24   that E&E can only show standing under the UCL on a claim for injunctive relief "if it has

25   suffered an injury for which it would be entitled to recover restitution."    *G&C Auto Body*

26   specifically addresses and disagrees with the analysis and reasoning in the cases upon which

27   Defendants rely in support of this argument.[7]  As *G&C Auto Body* notes, the language in Section

---

28   [7]    The court in *G&C Auto Body* disagreed with the reasoning in *Walker v. USAA Cas. Ins.*

- 10 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1   17203 (authorizing restitutionary relief) is far more narrow than the language in Section 17204

2   (authorizing injunctive relief). *G&C Auto Body*, 2007 WL43560907 at *3-4. Consequently, there

3   is "no basis to presume that the People of California, when adopting Proposition 64, meant for the

4   new Section 17204 standing requirements to track the requirements established for obtaining

5   restitution under Section 17203 set by *Korea Supply*, *Cortez*, and [*Walker*]." *Id.*, at *4. To the

6   contrary, the standard for restitutionary relief is narrower than the standard for injunctive relief,

7   where "loss of money or property" is all that the statute requires. *Id.; see also White,* 462 F.

8   Supp. 2d at 1083; *Certain Underwriters,* 2007 WL4249078 at *6.

9        Defendants ignore *White* and other cases involving an allegation of lost income, lost sales

10  and/or lost profits, which is what Plaintiff here alleges. *Certain Underwriters*, 2007 WL4249078

11  at *6; *White* 462 F. Supp. 2d at 1084; *see also G&C Auto Body*, 2007 WL4350907 at *4. In

12  *White*, the class plaintiffs brought suit to enjoin a credit reporting company (TransUnion) from

13  using practices the plaintiffs alleged resulted in erroneous information being included on the

14  plaintiffs' credit reports. The plaintiffs alleged they and the class "suffered … loss of money or

15  property" as a result of TransUnion's practices. *White*, 462 F. Supp. 2d at 1084. That, said the

16  *White* court, "is all that the statute requires." *Id.* Similarly, in *Certain Underwriters*, the plaintiff

17  alleged that the defendants' conduct damaged him through the "disruption of his business, *lost*

18  *profits*, [and] lost good will…" *Certain Underwriters*, 2007 WL 4249078 at *6 (emphasis added).

19  Although the defendant's motion to dismiss was granted on other grounds, the court in *Certain*

20  *Underwriters* found that the plaintiff's allegation of lost profits was sufficient to establish that he

21  suffered injury in fact. E&E's FAC alleges that it suffered injury "in the form of lost sales and

22  lost business opportunities." FAC, ¶ 49. That statement is consistent with the language of

23  plaintiffs' allegations in *G&C Auto Body*, *White*, and *Certain Underwriters*; thus, it is sufficient

24  to allege injury in fact.

25  ────────────────────────────────────────

26  *Co.*, which found that the standards for Sections 17203 and 17204 (for restitution and injunctive relief) were the same. This was because *Walker* incorrectly assumed that the "lost money or property" language had been interpreted by the courts in *Korea Supply Co. v. Lockheed Martin*

27  *Corp.* and *Cortez v. Purolator Air Filtration Prods. Co.* prior to the enactment of Proposition 64. In fact, *Korea Supply* and *Cortez* never made any such analysis. *G&C Auto Body,* 2007

28  WL4350907 at *3-4.

| Case No. | PLAINTIFF'S MPA IN OPPOSITION TO DEFENDANTS' MOTION |
| 3:08-00871 MMC | TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT |

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    E&E's allegation that it suffered injury-in-fact in the form of lost sales and lost business

2    opportunities must be accepted as true for purposes of this Motion, and such allegations are

3    sufficient to establish standing under Section 17204 of the UCL. E&E is a direct competitor of

4    Defendants and has suffered actual harm as a result of Defendants' unlawful and unfair

5    competition. If the Court were to conclude that a direct competition like E&E lacks standing, no

6    one would have standing to enjoin such conduct. The FAC alleges that the Sunham Defendants'

7    actions have "prevented E&E from doing business with certain manufacturers, suppliers, and/or

8    designers," and that E&E has "lost sales" and "lost business opportunities." FAC, ¶ 49 (emphasis

9    added). For purposes of this Motion, the Court must accept such allegations as true and construe

10    all inferences in Plaintiff's favor. Defendants' arguments based on disputed facts (e.g., that E&E

11    cannot show that it lost sales and business opportunities as a result of Defendants' conduct) must

12    be ignored.

13        The cases cited by Defendants are easily distinguishable from this case. In *Hall v. Time,*

14    *Inc.*, 158 Cal. App. 4th 847, 855 (2008), the court found the plaintiff lacked standing because in

15    exchange for the money he gave to the defendant, he received a book. In such a situation, the

16    court said there could be no injury in fact because the plaintiff had not alleged he did not want the

17    book, that the book was unsatisfactory, or that the book was worth less than the money he paid

18    for it. There was no injury in fact in *Hall* because Hall received something of value in exchange

19    for his money, and *Hall* is inapplicable here. In *The Missing Link, Inc. v. eBay, Inc.*, 2008 WL

20    1994886 (N.D. Cal. 2008), the plaintiff alleged that eBay's fixed-duration listings did not become

21    searchable until hours after the listing form was completed, thereby depriving the plaintiff of the

22    full benefit of the duration selected for the listing. *Id.* at *1. Although eBay argued that the

23    plaintiff's lost business opportunity was insufficient to confer standing, the court found the

24    plaintiff had alleged sufficient injury by pleading it lost money when it paid for the listing for a

25    particular duration of time that was not provided by eBay.[8] *Id.* at *8. Here, E&E has alleged that

26    the Sunham Defendants' actions have "prevented E&E from doing business with certain

27    _____

28    [8]    Defendants also rely on *O'Brien v. Camisasca Automotive Mfg., Inc.*, 161 Cal. App. 4th
         388 (2008), which was depublished on July 9, 2008, and is no longer citable.

- 12 -

1  manufacturers, suppliers, and/or designers," and caused E&E to "lose sales and prospective

2  business opportunities." FAC, ¶¶ 27, 49.

3      2.      **E&E's FAC successfully states a cause of action under the UCL with two distinct theories.**

4

5      "Because Business and Professions Code section 17200 is written in the disjunctive, it

6  establishes three varieties of unfair competition -- acts or practices which are unlawful, or unfair,

7  or fraudulent." *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996).

8  Consequently, an act can be any one of or all three prongs of the UCL. E&E's FAC satisfies the

9  "unlawful" and "unfair" prongs of the UCL with respect to its allegations against Defendants.

10  Notably, Defendants in their Motion fail to argue that E&E's FAC has failed to set forth a claim

11  against it under the "unlawful" prong of the UCL. This is likely because Defendants knew that to

12  do so would draw attention to the fact that E&E's claim under the "unlawful" prong is sufficient,

13  and thus that its Motion must be denied as to E&E's UCL claim.

14      a.      **Defendants' acts violate the "unlawful" prong of the UCL**

15      Under the "unlawful" prong, "'the UCL borrows violations of other laws ... and makes

16  those unlawful practices under the UCL.' Thus, a violation of another law is a predicate for

17  stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Property*

18  *Management, Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) (citing *Lazar v. Hertz Corp.* 69 Cal.

19  App. 4th 1494, 1505-1506 (1999). "It is not necessary that the predicate law provide for private

20  civil enforcement." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994). "Virtually any

21  state, federal or local law can serve as the predicate for an action under [Section] 17200."

22  *Podolsky*, 50 Cal. App. 4th at 647.

23      E&E's FAC properly sets forth an allegation of unlawful conduct with respect to

24  Defendants' tax evasion scheme.  Defendants "engage[d] in ... unlawful business practices,

25  [including] the tax fraud and tax schemes described [elsewhere in the FAC]. These practices

26  violate federal tax and conspiracy laws including, *inter alia*, 26 U.S.C. § 7201; 26 U.S.C. § 7206

27  (1), (2); and 18 U.S.C. § 371." FAC, ¶ 48; *See Berryman*, 152 Cal. App. 4th at 1554 (violation of

28  some other law required for pleading a cause of action under the UCL's "unlawful" prong);

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 13 -

1  *Certain Underwriters*, 2007 WL 4249078, at *7 (cause of action dismissed with leave to amend

2  based on plaintiff's failure to identify the statute allegedly violated).

3      E&E has also satisfied the 'unlawful" element of the UCL by having properly alleged a

4  cause of action against Defendants under both the *per se* violation and rule of reason theories of

5  antitrust law. *See infra* section B, *People v. National Association of Realtors*, 120 Cal. App. 3d

6  459, 475-76 (1981) (holding that a Cartwright Act violation is predicate for UCL liability).

### b.    Defendants' acts violate the "unfair" prong of the UCL

8      The UCL was enacted "for the protection of competition," and the standard for pleading a

9  violation of the UCL under the "unfair" prong of the UCL requires a plaintiff to allege conduct

10  "that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of

11  those laws because its effects are comparable to or the same as a violation of the law, or otherwise

12  significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187 (citing *Cargill, Inc. v.*

13  *Monfort of Colorado, Inc.*, 479 U.S. 104, 115 (1986)). This test established by the California

14  Supreme Court makes clear that in order to be a violation under the "unfair" prong of the UCL, a

15  defendant's behavior must have some actual or threatened impact on competition. *Id.* at 186-87.

16  *See also Cargill*, 479 U.S. at 115 (1986) and Cal. Bus. & Prof. Code § 17001.

17      Defendants' tax fraud and tax scheme described in paragraphs 44-50 of E&E's FAC

18  allege both an actual and threatened impact on competition, and the activity violates the policy

19  and spirit of the UCL.  This is not an instance where one competitor has legally found ways to cut

20  expenses and then passes along those savings to consumers.  Rather, Defendants are illegally

21  evading taxes, which in turn enables them to afford to undersell their products, destroying fair and

22  honest competition.  There is no more basic activity that violates the policy and spirit of the UCL

23  and that threatens and harms competition than the evisceration of competition through the use of

24  illegal methods.

25      Defendants argue that because E&E has not alleged that consumers are paying more or

26  that consumers' choices have been reduced as a result of Defendants' tax scheme, that E&E has

27  not sufficiently plead its claim under the "unfair" prong. But E&E is not required to meet any

28  such standard. E&E need only show harm to competition. Defendants also cite to *Sybersound*

- 14 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

*Records, Inc. v. UAV Corp.* in support of its proposition that a company that uses illegal means to undersell its competition is not necessarily in violation of the UCL. 517 F.3d 1137 (9th Cir. 2008). Yet in *Sybersound*, the plaintiff's allegations were only that the defendant used unfair methods to sell products for cheaper than the plaintiff. Here, meanwhile, E&E has alleged that Defendants' tactics enable them to "sell product *at a loss*." FAC, ¶ 49. As *Cel-Tech Communications* makes clear, a company's practice of below-cost sales is a clear violation of the UCL. 20 Cal. 4th at 171-75.

### B.   E&E's FAC Sets Forth Facts Sufficient To Establish Cartwright Act Violations Under Both The *Per Se* And Rule Of Reason Standards

In California antitrust cases, the threshold question is whether the challenged conduct "should be judged per se violations of the Cartwright Act or reviewed under the 'rule of reason' standard," and the California Supreme Court in *Marin County Board of Realtors, Inc. v. Palsson*, established the test for distinguishing *per se* violations from those violations that are evaluated under the rule of reason standard. 16 Cal. 3d 920, 930 (1976). *Marin County* indicated that *per se* violations encompass "certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal…." Ultimately, the court held, the *per se* rule applied to situations where a "predatory practice" existed that was "directly aimed at eliminating competition." *Id.* at 934. Where a practice is less overtly anti-competitive, the rule of reason is the accepted standard for determining whether a practice restrains trade. *See Continenal T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49 (1977). The allegations set forth in E&E's FAC establish Cartwright Act violations under both the *per se* and rule of reason standards.

### 1.   E&E states a claim under the *per se* standard.

Among the situations that constitute a *per se* violation of the Cartwright Act "is the concerted refusal to deal with other traders, or, as it is often called, the group boycott." *Marin County*, 16 Cal. 3d at 930-31. Evaluation under the *per se* standard where a group boycott has been alleged is limited to situations involving horizontal agreements among direct competitors, or vertical agreements where the restraint was initiated by a plaintiff's competitor for that

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

competitor's sole advantage. *See NYNEX Corp v. Dicon, Inc.*, 525 U.S. 128, 135 (1998); *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 212 (1959); *Bert G. Gianelli Distributing Co. v. Beck & Co.*, 172 Cal. App. 3d 1020, 1047 (1985) (overruled on other grounds by *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384 (2006)).   Where a "hub and spoke" conspiracy is alleged, a horizontal agreement exists where the "spokes" have also conspired to engage in the boycott. *Id.*; *Wellnx Life Scis., Inc. v. Iovate Health Scis. Research, Inc.*, 516 F. Supp. 2d 270, 283, 292 (S.D.N.Y. 2007).

### a.    The "hub and spoke" type conspiracy alleged by E&E is a horizontal agreement

E&E alleges a "hub and spoke" conspiracy, that "manufacturers and/or designers of home textile goods in China, reacting to the Sunham Defendants' threats and coercive tactics, have conspired with the Sunham Defendants, *and amongst each other*, to deprive Plaintiff of the products, designs, and access that it needs to compete with the Sunham Defendants." FAC, ¶ 27 (emphasis added). In *Klor's v. Broadway-Hale*, the plaintiff, a department store, brought an action against its competitor, Broadway-Hale, alleging that Broadway-Hale conspired with various manufacturers and distributors to cut off sales of products to Klor's.   Specifically, the plaintiff alleged that "manufacturers and distributors … have *conspired among themselves* and with Broadway-Hale … not to sell to Klor's.…" *Klor's*, 359 U.S. at 209.   The court in *Klor's* found that the plaintiff's allegations "clearly show one type of trade restraint and public harm the Sherman Act forbids." *Id.* at 210. The "conspired among themselves" language in *Klor's* was sufficient to allege a horizontal agreement and is virtually identical to the "conspired … amongst each other" language in E&E's FAC. As such, the "hub and spoke" agreement alleged by E&E in its FAC is sufficient to constitute a horizontal agreement. Defendants' argument that it is not ignores established case law.

### b.    Even if the court finds E&E alleged a vertical agreement, that agreement should nonetheless be judged under the *per se* standard.

Even if the Court finds that the conspiracy E&E alleges the Sunham Group engaged in is a vertical rather than a horizontal agreement, a plaintiff can

- 16 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1  |  sustain a group boycott theory of *per se* illegality with respect to restraints that are
2  |  vertically imposed [with] a showing that the restraint imposed by the manufacturer
3  |  was not only conceived of and initiated by those in direct competition with the
   |  plaintiff, but that those competitors used their economic power or position to
   |  influence the manufacturer to act, not for its own advantage, but solely for the
4  |  advantage of those competitors.

*Gianelli*, 172 Cal. App. 3d at 1047.  The Sunham Defendants' letter to various suppliers certainly

qualifies as such a restraint.  That letter, attached to E&E's FAC, is a threat that the Sunham

Defendants will cease doing business with any supplier who sells to E&E. "If we find out that

you have carried out business exchanges with our competitor, then as a result all cooperation

between us will undergo fundamental changes." FAC, ¶ 25.  The FAC identifies specific conduct

on the part of the Sunham Defendants - *i.e.*, the coercion by the Sunham Defendants of

manufacturers to boycott the Sunham Defendants' competitors.  Those allegations satisfy *Gianelli*

by establishing "some forbidden anti-competitive or monopolistic objective" necessary to sustain

a *per se* vertical restraint. *Id.* at 1048.  Furthermore, California law recognizes that, "[f]or a

secondary boycott to violate the antitrust laws the defendant need not conspire with fellow

competitors against the target competitor.  A boycott by a single trader constitutes the necessary

combination in restraint of trade if it is carried out through coercion, threats or intimidation upon

the target's suppliers." *Peters v. Saunders*, 1996 Cal. App. LEXIS 1179, at *4 (citations omitted).

### c.    The degree of specificity with which E&E pleads its claims is sufficient to prevail against Defendants' Motion.

Defendants also argue in their Motion that E&E has failed to plead its claim with enough

specificity; however, they fail to cite the express language of the Cartwright Act that controls for

the purposes of this Motion.

In any indictment, information or complaint for any offense named in this chapter,
it is sufficient to state the purpose or effects of the trust or combination, and that
the accused is a member of, acted with, or in pursuance of it, or aided or assisted in
carrying out its purposes, without giving its name or description, or how, when and
where it was created.

Cal. Bus. & Prof. Code § 16756.  The FAC satisfies that standard because it both states the

purpose or effects of the boycott and alleges that the Sunham Defendants not only aided in

carrying out the boycott's purposes but demanded the boycott to begin with.  Defendants'

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

argument that E&E's FAC fails to state a claim because it does not contain answers to the questions of "who, did what, to whom…, where, and when," is unsupported by *Kendall v. Visa USA, Inc.*, which Defendants cite in support of that argument. 518 F.3d 1042, 1046 (9th Cir. 2008). In *Kendall*, the case was dismissed <u>after</u> the plaintiffs were permitted to take discovery on their claims, at which point the court dismissed the case because the plaintiffs were unable to provide some fundamental details about the defendant's alleged behavior. *Kendall* did <u>not</u> hold that answering those questions was necessary to state a claim, or that a plaintiff's claims should be dismissed at this early stage if the complaint has not provided that level of detail. *Id.* Nonetheless, here, not only has E&E properly pled its claim with enough specificity according to the standard set in Section 16756, it has done so without the benefit of discovery. The express language of Section 16756 is fatal to the Sunham Defendant's arguments that the FAC needs to identify with specificity details that are not called for under the terms of that statute.

Defendants argument that *Twombly* supports dismissal of E&E's FAC is also incorrect for a number of reasons. First, *Twombly* expressly stated that a complaint does not require detailed factual allegations. *Id. See also In re Tableware Antitrust Litig.*, 363 F. Supp. 2d 1203, 1204 (N.D. Cal. 2005) ("This standard is a liberal one that does not require a plaintiff to set forth all the factual details of the claim, rather, all that the standard requires is that a plaintiff give the defendant fair notice of the claim and the grounds for making that claim."). Though Defendants argue that E&E's FAC contains nothing more than a "formulaic recitation of the elements of a cause of action," which *Twombly* indeed prohibits, a reading of the FAC shows Defendants are simply mischaracterizing its contents. Second, *Twombly* involved a class action brought under the Sherman Act, whereas the FAC involves a Cartwright Act claim brought under California's broader state law. While detailed pleading may indeed be necessary to sustain a claim under the Sherman Act, standards under the Cartwright Act are broader. *See Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224, 1242 (1993) (recognizing the broader scope and depth of the Cartwright Act). Third, the FAC alleges a *per se* violation under a group boycott theory. By contrast, *Twombly* did not involve an allegation that the defendants had engaged in a "purposefully anti-competitive scheme." *Cf., Glen Holly*, 352 F.3d at 376. Fourth, in *Twombly*,

- 18 -

1    "the complaint leaves no doubt that plaintiffs rest their [Sherman Act claim] on descriptions of

2    parallel conduct and not on any independent allegation of actual agreement among the

3    [defendants]." *Twombly*, 127 S. Ct. at 1970. E&E, however, is not relying on a theory of

4    "parallel conduct" to infer that an anti-competitive agreement exists; rather, the FAC makes

5    "independent allegations" of actual agreement and identifies the Sunham Defendants' desire to

6    "maintain their market share against competitors such as E&E" as the motivating factor behind

7    the boycott." FAC, ¶ 20.

8        For a section 16756 Cartwright Act claim, the "allegations must be liberally construed,

9    with a view to substantial justice…. We therefore treat as true all of the complaint's material

10   factual allegations, including facts that may be implied or inferred form those expressly alleged."

11   *Amarel v. Connell*, 202 Cal. App. 3d 137, 141 (1988).  To the extent that *Twombly* is persuasive

12   authority, the case does not purport to overturn the long held principle that "in antitrust cases,

13   where 'the proof is largely in the hands of the alleged conspirators' … dismissals prior to giving

14   the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Building*

15   *Co. v. Trustees of Rex Hospital*, 96 S. Ct. 1848, 1853 (1976).

16           **d.    Alleging market power is unnecessary under a *per se* standard.**

17        Defendants also argue that E&E's *per se* Cartwright Act claim fails because E&E has

18   failed to allege that the Sunham Defendants possess market power. In support of their claim,

19   Defendants rely on *Federal Trade Comm'n v. Indiana Fed'n of Dentists*, 476 U.S. 447 (1986).

20   Once again, Defendants' reliance on the case law is misplaced. While *Federal Trade* does state

21   that the *per se* standard has *generally* been limited to cases in which a firm with market power

22   boycotts its suppliers with the intent to disadvantage a competitor, nowhere does it say market

23   power is a requirement under the *per se* standard. To the contrary, the case law specifically holds

24   that no inquiry into the relevant market is required. As the Ninth Circuit recognized in

25   *Knevelbaard Dairies v. Kraft Foods, Inc.*, "[w]hen a *per se* violation … has occurred, there is no

26   need to define a relevant market or to show that the defendants had power within the market."

27   232 F.3d 979, 986 (9th Cir. 2000). *See also In re Tableware*, 363 F. Supp. 2d at 1206 (where a

28   *per se* violation is alleged, "plaintiffs need not plead a relevant market.") As such, E&E's FAC is

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 19 -

1   not deficient on those grounds.

2          **2.     E&E also states a claim under the rule of reason standard.**

3          In addition to a boycott claim that constitutes a *per se* violation of antitrust laws, E&E's

4   FAC also states a cause of action under the Cartwright Act for unreasonable exclusive dealing

5   contracts. FAC, ¶¶ 34-43. Where an exclusive dealing arrangement does not involve a boycott

6   motivated by an anticompetitive purpose, such conduct is reviewed under the rule of reason test.

7   *See generally*, *Redwood Theatres v. Festival Enters.*, 200 Cal. App. 3d 687, 698-707 (1988).

8          **a.     The Sunham Defendants' exclusive dealing arrangement is
           harmful to competition.**
9

10         "A restraint violates the rule of reason if the restraint's harm to competition outweighs its

11  procompetitive effects." *Tanaka v. University of Southern California*, 252 F.3d 1059, 1063 (9th

12  Cir. 2001). Defendants suggest in their Motion that E&E failed to state a claim because the

13  exclusive dealing contract E&E argues is a violation of the Cartwright Act does not "foreclose

14  competition in a substantial share of the line of commerce affected." Motion, ¶ 11 (quoting

15  *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997)). Once again,

16  Defendants exaggerate E&E's burden. A plaintiff "need not prove an actual lessening of

17  competition in order to recover. Competitors may be able to prove antitrust injury before they

18  actually are driven from the market and competition is thereby lessened." *Glen Holly*

19  *Entertainment*, 352 F.3d at 375 (internal quotations omitted). E&E does not have to plead that it

20  cannot acquire textiles from any manufacturer to state a cause of action. To hold otherwise would

21  permit anticompetitive behavior to continue until it succeeds in eradicating competition.

22         One of the cases upon which Defendants rely in support of their argument illustrates this

23  point. In *Redwood Theatres*, the plaintiff, a small motion picture exhibitor, brought suit against a

24  competitor and four major film distributors. The plaintiff alleged that the defendant distributors

25  had entered into agreements to license first-run feature films only to the defendant competitor,

26  despite that the plaintiff had made better bids to exhibit the films at its theater. 200 Cal. App. 2d

27  at 693. Although the defendants argued no harm to competition because the plaintiff was able to

28  receive other non first-run films, the court agreed with the plaintiff's theory that its inability to

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 20 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    lease first-run films due to the defendants' conduct created a triable issue for a jury to decide

2    regarding its antitrust claim. *Id.* at 713.  In explaining its rationale, the court said,

> [i]magine a series of contract bridge tournaments in which the king of spades and queen of hearts … are consistently removed from the hand of one player and replaced by a numbered card.  Although the player may win some hands, he is sure to place low in the competitive standings, tournament after tournament, no matter how skillfully he plays.

6    *Id.* at 707. In other words, even if the conspiracy orchestrated by the Sunham Defendants permits

7    E&E to obtain other products from different manufacturers, that would be the beginning, rather

8    than the end, of the rule of reason analysis to determine whether the exclusive agreements,

9    nevertheless, unreasonably restrain trade.  Under *Redwood Theatres*' reasoning, collusion among

10   manufacturers and a competing distributor to deprive the distributor's rivals states a plausible

11   cause of action.

12       Additional California authority bolsters the conclusion that the FAC states a cause of

13   action under the rule of reason test. For example, in *National Association*, the court applied the

14   rule of reason test to evaluate whether the defendants' conduct was unreasonably anticompetitive.

15   120 Cal. App. 3d 459. Significantly, the court noted that "[i]t is not necessary to show

16   suppression of all competition." *Id.* at 478. Instead, conduct "may yet be unlawful where joint

17   activity conflicts with the public interest in preserving competition." *Id.* Here, the FAC

18   establishes that competition has been thwarted and suppressed as a result of the Sunham

19   Defendants' coerced agreements. FAC, ¶ 34-43. The unreasonable effect of this restraint on trade

20   as alleged in the FAC (independent from its anticompetitive purpose) is sufficient to state a rule

21   of reason antitrust violation under the Cartwright Act.

### b.    The Sunham Defendants have market power within a relevant market

23       The rule of reason standard also requires that a plaintiff allege the defendant has market

24   power within a relevant market. *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038,

25   1044 (9th Cir. 2008) ("The plaintiff must allege both that a 'relevant market' exists and that the

26   defendant has power within that market."). In its FAC, E&E properly defines the relevant market

27   by goods, geography, competitors and customers: (1) mid-quality, low-cost, top-of-the-bed linens,

28

1    (2) manufactured in China, (3) sold by intermediary distributors based in the U.S. with presences

2    and relationships with suppliers in China (such as E&E and the Sunham Defendants), and (4) to

3    bulk-purchaser, value-oriented, direct retailers or warehouse stores in the United States. FAC, ¶

4    2.[9] *Newcal* provides the structure necessary to determine whether E&E sufficiently pled a

5    "relevant market" for purposes of surviving Defendants' Motion. Importantly, "[t]here is no

6    requirement that [the 'market power within a relevant market'] elements of the antitrust claim be

7    pled with specificity. An antitrust complaint … survives a Rule 12(b)(6) motion unless it is

8    apparent from the face of the complaint that the alleged market suffers a fatal legal defect."

9    *Newcal*, 513 F.3d at 1045.  As explained below, E&E has met the requirements set forth in

10    *Newcal*, and no such fatal legal defect exists.[10]

11        "First…, [a]ntitrust law requires allegation of both a product market and a geographic

12    market." *Newcal*, 513 F.3d at 1045, n.4. E&E's "relevant market" definition provides both: The

13    "product" market being mid-quality, low-cost, top-of-the-bed linens, and the "geographic" market

14    being those bed linens manufactured in China and sold in the United States.

15        "Second, the market must encompass the product at issue as well as all economic

16    substitutes for the product…. [T]he relevant market must include 'the group or groups of sellers

17    or producers who have actual or potential ability to deprive each other of significant levels of

18    business.'" *Id.*  It is this portion of the test that makes proper E&E's limitation of the market to

19    bed linens manufactured in China and sold by intermediaries to stores in the United States.

20    Defendants argue that there is no support for such limitation, and that E&E could just as easily

21    get its supply of bed linens from manufacturers in countries other than China, or sell those

22    products to retailers in countries other than the United States.  Motion, at pp. 12-13. However,

23

24    [9]    Though Defendants claim E&E has defined the market as "the distribution channel" through which those bed coverings are imported and sold, they are factually mistaken.  E&E discussed the distribution channel to which Defendants refer, but the "relevant market" definition

25    as provided in the FAC is in fact as E&E describes it above.

26    [10]    If the Court finds that E&E's FAC does not properly define the "relevant market," Plaintiff respectfully requests that the Court grant Plaintiff leave to amend the FAC. *See Steckman*

27    *v. Hart Brewing, Inc.*, 143 F. 3d 1293, 1298 (9th Cir. 1998) (citing "general rule" that leave to amend following dismissal of pleading should be afforded unless "any amendment would be an

28    exercise in futility").

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 22 -

those alternate distribution channels do not constitute a group of sellers who have the ability to deprive one another of significant levels of business, as the *Newcal* test requires. E&E and the Sunham Defendants, in their buying and selling of bed linens from China to the United States, are not in significant competition with those entities that buy and sell bed linens in any other two countries in the world. The activities of entities operating in other parts of the world do not significantly effect competition in the market between entities operating between China and the U.S. It is no less a restraint of trade even if the competitors Defendants wrongfully exclude from the market operating between China and the United States could go buy and sell elsewhere.

"Third … it is legally permissible to premise antitrust allegations on a submarket." *Id.* at 1045. *See also Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). "In order to establish the existence of a legally cognizable submarket, the plaintiff must be able to show (*but need not necessarily establish in the complaint*) that the alleged submarket is economically distinct from the general product market." *Newcal*, 513 F.3d at 1045 (emphasis added). *Brown Shoe* sets forth various measures by which a submarket can be defined, among them "the product's peculiar characteristics and uses … [and] distinct prices." 370 U.S. at 325. In addition, "[t]he cross-elasticity of production facilities may also be an important factor in defining a product market…." *Id.* Thus, even if the court finds that the relevant market as defined by E&E is too narrow, that market as defined is certainly within the "submarket" allowance of *Newcal* and *Brown Shoe*. E&E's FAC makes clear that the textiles manufacturers in China are uniquely tooled and can require specialized labor skilled in the making of various types of merchandise at competitively advantageous costs. FAC, ¶ 4. Moreover, the mid-quality and low-cost characteristics of the bed linens E&E and the Sunham Defendants sell to retailers and wholesale stores in the United States are critical characteristics, and under *Brown Shoe*, such a distinction is proper. Defendants rely on *du Pont* to support their argument that a product market must include reasonably interchangeable commodities, and cannot be restricted to markets in a particular price point. Motion, at p. 13; *United States v. E.I. Du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956). But in *Du Pont*, the court simply held that a market could not consist solely of cellophane and must include other products that could be used for the same general purpose, whether inferior or superior to

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

PLAINTIFF'S MPA IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    cellophane. *Id. Du Pont* did not address the ability of a plaintiff to specify a "submarket" for

2    purposes of its antitrust claims as *Brown Shoe* allows.

3            Finally, *Exxon Corp. v. Superior Court of Santa Clara County* establishes that "the need

4    to prove market power is a threshold consideration in an antitrust case and is the sine qua non of

5    recovery." 51 Cal. App. 4th 1672, 1681 (1997). Defendants attempt to redefine the "relevant

6    market" in terms that are favorable to the Sunham Defendants, in order to minimize their market

7    share. In particular, Defendants go into great detail about the gargantuan size of the global textiles

8    market, arguing that even if the Sunham Defendants sold tens of millions of dollars worth of bed

9    linens in California, they could not possibly have market power in the global textiles market.

10   Motion, at p. 14. While that may be true, the "relevant market" as defined here, and within which

11   the Sunham Defendants have market power, is not the global textiles market, and Defendants'

12   attempt to obfuscate this point is telling. Nowhere in their Motion do Defendants dispute that the

13   Sunham Defendants, as the FAC alleges, "are among the largest importers of Chinese made bed

14   coverings into the United States," "are one of the three largest suppliers of bed quilts in the

15   United States," or "sell several or tens of millions of dollars of home bedding textile products to

16   retail stores in California each year." Instead, Defendants attempt to mislead the court by

17   redirecting its attention to the Sunham Defendants' market power in the global textiles market – a

18   market which is irrelevant for the purposes of E&E's claims. In fact, the Sunham Defendants'

19   own statements on its website state that Sunham Home Fashions is "among the largest importers

20   of home textile products in the United States." *See* http://site.sunham.com/about/. Discovery

21   alone will resolve the extent of the Sunham Defendants' market power; however, for the purposes

22   of this Motion, E&E has met its burden of alleging the Sunham Defendants' market power.

23           **C.    E&E Should Be Permitted To Conduct Limited Discovery To Determine
                     Whether Defendants Yung And Courbanou Have Enough Contacts With
24                   California To Support Personal Jurisdiction**

25           In this diversity action brought in California state court, the test for personal jurisdiction is

26   governed by California law. Under California law, when "jurisdiction is challenged by a

27   nonresident defendant, the burden of proof is upon the plaintiff to demonstrate that 'minimum

28   contacts' exist between defendant and the forum state to justify imposition of personal

- 24 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1  jurisdiction." *Magnecomp Corp. v. Athene Co.*, 209 Cal. App. 3d 526, 533 (1989). However, "the

2  plaintiff has the right to conduct discovery with regard to the issue of jurisdiction to develop the

3  facts necessary to sustain this burden." *Id.* (citing *Mihlon v. Superior Court*, 169 Cal. App. 3d

4  703, 710 (1985)).  E&E respectfully requests an opportunity for limited jurisdictional discovery.

5      Notwithstanding a California plaintiff's entitlement to jurisdictional discovery, personal

6  jurisdiction is present over Yung and Courbanou even without discovery, based on the intentional

7  nature of the acts alleged in the FAC. As the Ninth Circuit emphasized, where the conduct of

8  corporate officers extends beyond "untargeted negligence" and the individuals "should

9  reasonably have known that their actions 'could have an effect … and would be felt [in a

10  particular state],'" this constitutes purposeful availment sufficient to establish personal

11  jurisdiction over the individual shareholders. *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 523 (9th

12  Cir. 1989).  In *Davis*, the court found that "[t]he record before us shows that [the defendants],

13  each 50% shareholders of Metro and its only officers and directors, purposefully directed their

14  activities toward Arizona when Metro solicited business from Arizona residents." *Id.* at 522.

15  **IV.    CONCLUSION**

16      For the aforementioned reasons, E&E respectfully requests that the Motion be denied.

17  DATED:        July 11, 2008            SHARTSIS FRIESE LLP

18

19                                       By: */s/ Robert Charles Ward*
20                                          ROBERT CHARLES WARD

21                                       Attorneys for Plaintiff
                                         E&E Co., Ltd., a California corporation
22

23  6197\007\FDRAPER\1520342.4

24

25

26

27

28

Case No.                   PLAINTIFF'S MPA IN OPPOSITION TO DEFENDANTS' MOTION
3:08-00871 MMC             TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# PROOF OF SERVICE

I, Janis Ing, declare:

I am a citizen of the United States and employed in the City and County of San Francisco, California by Shartsis Friese LLP at One Maritime Plaza, Eighteenth Floor, San Francisco, California 94111. I am over the age of eighteen years and am not a party to the within-entitled action.

On July 11, 2008, at Shartsis Friese LLP located at the above-referenced address, and, pursuant to California Rules of Court, Federal Rules of Civil Procedure, and local rules, I served on the interested parties in said cause a copy of the within document(s):

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(b)(6) AND 12(b)(2)**

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid in accordance with the firm's practice, of which I am familiar, of collection and processing correspondence for mailing on the same day to the person(s) at the address(es) set forth below:

☐ by consigning the document(s) listed above to an express delivery service for guaranteed delivery on the next business day to the person(s) at the address(es) set forth below:

☒ by personal delivery by messenger service of the document(s) above to the person(s) at the address(es) set forth below:

☐ by facsimile transmission on this date before 5:00 p.m. (PST) of the document(s) listed above from sending facsimile machine main telephone number (415) 421-2922, and which transmission was reported as complete and without error (copy of which is attached), to facsimile number(s) set forth below: (☐ by agreement / ☐ not by agreement)

☐ by electronically delivering the document(s) listed above on this date from electronic address sflaw.com, and after which transmission I did not receive within a reasonable time any electronic message or other indication that the transmission was unsuccessful, to electronic mail address(es) set forth below: (☐ by agreement / ☐ not by agreement)

Case No.
3:08-00871 MMC

PROOF OF SERVICE

1

By Mail:                                  By Personal Delivery:
2        Garth Tyler Vincent, Esq.                  Amy Tovar Esq.
         Munger Tolles & Olson LLP                  Munger, Tolles & Olson LLP
3        355 S Grand Avenue 35th Floor              560 Mission Street, 27th Floor
         Los Angeles, CA 90071-1560                 San Francisco, CA 94105
4

5            I declare under penalty of perjury under the laws of the State of California that the

6    foregoing is true and correct.

7            Executed on July 11, 2008, in San Francisco, California.

8

9                                                        _____
10                                                              Janis Ing

11

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.                                    PROOF OF SERVICE
3:08-00871 MMC