1  GARTH T. VINCENT (SBN 146574)
   MUNGER, TOLLES & OLSON LLP
2  355 South Grand Avenue
   Thirty-Fifth Floor
3  Los Angeles, CA  90071-1560
   Telephone:    (213) 683-9100
4  Facsimile:    (213) 687-3702
   Email: *garth.vincent@mto.com*
5
   AMY TOVAR (SBN 230370)
6  MUNGER, TOLLES & OLSON LLP
   560 Mission Street
7  Twenty-Seventh Floor
   San Francisco, CA  94105-2907
8  Telephone:    (415) 512-4000
   Facsimile:    (415) 512-4077
9  Email: *amy.tovar@mto.com*

10 Attorneys for Defendants
   KAM HING ENTERPRISES, INC.; SUNHAM HOME
11 FASHIONS, LLC; HOWARD YUNG; and ARTHUR
   COURBANOU
12
                    UNITED STATES DISTRICT COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14
                       SAN FRANCISCO DIVISION
15

16
   E&E CO., LTD., A California corporation,    CASE NO.  3:08-CV-00871-MMC
17
                 Plaintiff,                    DEFENDANTS' REPLY IN SUPPORT OF
18                                             MOTION TO DISMISS FIRST AMENDED
          vs.                                  COMPLAINT PURSUANT TO FED. R. CIV.
19                                             PROC. 12(B)(6) AND 12(B)(2)
   KAM HING ENTERPRISES, INC.;
20 SUNHAM HOME FASHIONS, LLC; JJ               DATE:  August 1, 2008
   INTERNATIONAL TRADING
21 COMPANY; HOWARD YUNG,                       TIME:  9:00 a.m.
   ARTHUR COURBANOU; and DOES 1-
22 100, inclusive,                             JUDGE: Hon. Maxine M. Chesney

23               Defendants.                   CTRM:  7

24

25

26

27

28

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..............................................................................................1

II.   ARGUMENT....................................................................................................2

    A.   Plaintiff Fails to Plead A *Per Se* Antitrust Violation.................................2

        1.   Plaintiff's Threadbare Allegations Of A Horizontal Agreement Are Insufficient To Plead A *Per Se* Antitrust Violation.....................................2

        2.   As This Court Already Held, Vertical Agreements Are Analyzed Under The Rule of Reason...............................................................3

    B.   E&E's Complaint Fails to State A Claim Under the Rule of Reason......................5

        1.   Plaintiff Has Failed To Allege A Legally Cognizable Relevant Market...............................................................................5

        2.   Plaintiff's Market Power Allegations Are Flawed .................................8

    C.   Plaintiff Fails To Plead An Actionable Claim Under The UCL............................9

        1.   E&E Lacks Standing Under The UCL .................................................9

        2.   Plaintiff's UCL Claim Fails On The Merits ........................................13

    D.   Plaintiff Fails To Show Sufficient Contacts To Support Personal Jurisdiction And Fails To Make A Showing That Jurisdictional Discovery Is Warranted.......................................................................14

III.  CONCLUSION................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Advanced Microtherm Inc., v. Norman Wright Mech. Equip. Corp.*,
No. C04-02266 JW, 2004 WL 2075445 (N.D. Cal. Sept. 15, 2004)..........................2

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007)................................................................1, 2

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962)....................................................................6

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)..................................................................14

*Certain Underwriters at Lloyd's, London v. Real Estate Professionals Ins. Co.*,
No. CV06-4783 CASJWX, 2007 WL 4249078 (C.D. Cal. Nov. 26, 2007)..........................11

*Cupp v. Alberto-Culver USA, Inc.*,
310 F. Supp. 2d 963 (W.D. Tenn. 2004) ......................................................6

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
557 F.2d 1280 (9th Cir. 1977) ............................................................15

*Davis v. Metro Prods., Inc.*,
885 F.2d 515 (9th Cir. 1989) ............................................................14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
No. C02-1486 PJH, et al, 2005 WL 2988715 (N.D. Cal. Nov. 7, 2005) ................................15

*E&L Consulting, Ltd. v. Doman Indus. Ltd.*,
360 F. Supp. 2d 465 (E.D.N.Y. 2005) ......................................................8

*Eastern Food Services, Inc. v. Pontifical Catholic Univ. of Puerto Rico Serv. Ass'n, Inc.*,
222 F. Supp. 2d 131 (D.P.R. 2002).........................................................6

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
92 F.3d 1486 (9th Cir. 1996) ............................................................10

*F.T.C. v. Indiana Fed'n of Dentists*,
476 U.S. 447 (1986).....................................................................4

*Floors-N-More, Inc. v. Freight Liquidators*,
142 F. Supp. 2d 496 (S.D.N.Y. 2001) ......................................................3

*G&C Auto Body, Inc. v. Geico Gen. Ins. Co.*,
No. C. 06-04898 MJJ, 2007 WL 4350907 (N.D. Cal. Dec. 12, 2007) ........................9, 11, 12

*Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*,
386 F.3d 485 (2d Cir. 2004)...........................................................5, 8

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007).....................................................2

*International Norcent Tech. v. Koninklijke Philips Electronics, N.V.*,
No. CV07-00043 MMSSX, 2007 WL 4976364 (C.D. Cal. Oct. 29, 2007) ............................3

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) ............................................................3

REPLY ISO MOT. TO DISMISS FAC
3:08-CV-000871

**TABLE OF AUTHORITIES**
(continued)

Page

*Klor's, Inc. v. Broadway-Hale Stores, Inc.,*
    359 U.S. 207 (1959)........................................................................................2

*Lovesy v. Armed Forces Benefit Assn.,*
    No. C07-2745 SBA, 2008 WL 696991 (N.D. Cal. Mar. 13, 2008).........................15

*McCabe Hamilton & Renny, Co., Ltd. v. Matson Terminals, Inc.,*
    No. CIV.08-00080 JMS/BMK, 2008 WL 2437739 (D. Haw. Jun. 17, 2008)............7

*Newcal Indus., Inc. v. Ikon Office Solutions,*
    513 F.3d 1038 (9th Cir. 2008)......................................................................5, 6, 8

*Nova Designs, Inc. v. Scuba Retailers Ass'n,*
    202 F.3d 1088 (9th Cir. 2000) ..........................................................................4

*NYNEX Corp. v. Discon, Inc.,*
    525 U.S. 128 (1998)........................................................................................4

*Pebble Beach Co. v. Caddy,*
    453 F.3d 1151 (9th Cir. 2006).........................................................................15

*Queen City Pizza, Inc. v. Domino's Pizza,*
    124 F.3d 430 (3d Cir. 1997) .........................................................................5, 6, 7

*Re-Alco Indus., Inc. v. Nat'l Ctr. For Health Educ., Inc.,*
    812 F. Supp. 387 (S.D.N.Y. 1993) .....................................................................6

*Rick-Mik Enterprises Inc. v. Equilon Enterprises, Inc.,*
    No. 06-55937, 2008 WL 2697793 (9th Cir. July 11, 2008) .....................................9

*Robinson ex rel. Hunsinger v. Daimlerchrysler AG,*
    No. 07-3258 SC, 2008 WL 728877 (N.D. Cal. Mar. 17, 2008) ..............................15

*Tanaka v. Univ. of S. Cal.,*
    252 F.3d 1059 (9th Cir. 2001) ...........................................................................7

*The Missing Link, Inc. v. ebay, Inc.,*
    No. C07-04487 RMW, 2008 WL 1994886 (N.D. Cal. May 5, 2008) ......................12

*Todd v. Exxon Corp.,*
    275 F.3d 191 (2d. Cir. 2001) .............................................................................5

*U.S. v. E.I. du Pont de Nemours & Co.,*
    351 U.S. 377 (1956)........................................................................................5

*United States v. Oracle Corp.,*
    331 F. Supp. 2d 1098 (N.D. Cal. 2004) ..............................................................8

*Walker v. USAA Cas. Ins. Co.,*
    474 F. Supp. 2d 1168 (E.D. Cal. 2007) ...............................................................9

*White v. Trans Union, LLC,*
    462 F. Supp. 2d 1079 (C.D. Cal. 2006) .............................................................12

**STATE CASES**

*Bert G. Gianelli Distrib. Co. v. Beck & Co.,*
    172 Cal. App. 3d 1020 (1985) ...........................................................................4

*Buckland v. Threshold Enterprises, Ltd.,*
    155 Cal. App. 4th 798 (2007) .......................................................................9, 10

REPLY ISO MOT. TO DISMISS FAC
3:08-CV-000871

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Cappa v. CrossTest, Inc.*,
   Nos. A113327, A114548, 2008 WL 821637 (Cal. App. 1st Dist. Mar. 28, 2008) ................ 11

*Chicago Title Ins. Co. v. Great Western Fin. Corp.*,
   69 Cal. 2d 305 (1968) ................................................................................ 2

*Hall v. Time, Inc.*,
   158 Cal. App. 4th 847 (2008) ............................................................ 10, 11, 12

*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*,
   129 Cal.App.4th 1228 (2005) .................................................................. 11

*People's Choice Wireless, Inc. v. Verizon Wireless*,
   131 Cal. App. 4th 656 (2005) .................................................................. 13

*Peters v. Saunders*,
   58 Cal Rptr. 2d 690 (1996) ...................................................................... 4

*Peterson v. Cellco P'ship*,
   No. G038728, 2008 WL 2536073 (Cal.App. 4th Dist. June 26, 2008) .................... 10

*Progressive West Ins. Co. v. Yolo County Super. Ct.*,
   135 Cal. App. 4th 263 (2005) .................................................................. 11

**STATE STATUTES**

Cal. Bus & Prof. Code § 16756 .................................................................... 2

Cal. Bus. & Prof. Code § 17204 .............................................................. 9, 10

**TREATISES**

II B PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW (3D ED. 2007) ...................... 8

**OTHER AUTHORITIES**

Black's Law Dictionary (8th ed. 2004) p. 801 ................................................ 10

## I.    **INTRODUCTION**

Insisting that the First Amended Complaint ("FAC") offers more than empty rhetoric, Plaintiff assures the Court that its pleading contains "detailed factual allegations." (Opp. at 9). To be sure, Plaintiff has loaded the FAC with repetitive and extraneous information. But with respect to the actual elements Plaintiff needs to allege to state its antitrust claims—including a horizontal agreement, an economically meaningful relevant market, and market power—the FAC is wholly lacking in factual support. In particular, Plaintiff attempts to allege a group boycott with nothing more than the bare statement that one exists. Similarly, Plaintiff seeks to state a claim under the rule of reason by putting forth an economically meaningless definition of the relevant market and then making the conclusory assertion that the Sunham Defendants possess market power within that purported market. The Supreme Court repudiated this sort of glib reliance on antitrust labels and conclusions in *Bell Atlantic Corp. v. Twombly* and cautioned that "a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed." 127 S. Ct. 1955, 1967 (2007).

Plaintiff's UCL claim fares no better: As an initial matter, Plaintiff lacks standing to bring it. The only loss Plaintiff asserts is the hypothetical loss of sales and profits. Courts have found these speculative injuries insufficient to satisfy the UCL's demanding standing requirements. In addition, Plaintiff's UCL claim fails on its merits.

Moreover, this Court lacks a proper basis for asserting jurisdiction over defendants Howard Yung and Arthur Courbanou. Plaintiff has presented no evidence whatsoever that these individuals are subject to personal jurisdiction in California and has failed to make a colorable showing of an entitlement to jurisdictional discovery.

Plaintiff was given a second chance to plead its claims and has demonstrated that it lacks the necessary facts to support them. Plaintiff's Opposition rehashes many of the same arguments that the Court already rejected in its Order dismissing the first complaint. It is clear that giving Plaintiff a third bite at the apple—relief it does not even request—would be futile and unduly burdensome for Defendants. Plaintiff's case should be dismissed with prejudice.

## II.    ARGUMENT

### A.    Plaintiff Fails to Plead A *Per Se* Antitrust Violation

#### 1.    Plaintiff's Threadbare Allegations Of A Horizontal Agreement Are Insufficient To Plead A *Per Se* Antitrust Violation

Plaintiff does not contest that it has alleged no factual support for its conclusory allegation that the Sunham Defendants orchestrated a horizontal agreement among the unidentified Chinese manufacturers to boycott Plaintiff. Instead, Plaintiff defends the sufficiency of its group boycott theory by arguing that it is not required to plead anything more than its conclusory allegation that the unidentified Chinese manufacturers "conspired among themselves." (Opp. at 16).[1]  This argument flies in the face *Twombly* and the countless cases before and since that have affirmed the principle that "a formulaic recitation of the elements of a cause of action will not do." 127 S. Ct. at 1964-65.

In an attempt to evade Rule 8, Plaintiff revives its misguided argument—which the Court disregarded in granting the first motion to dismiss—that California pleading standards govern this Rule 12(b)(6) motion. (Opp. at 17).  Contrary to Plaintiff's contention, Rule 8 and the pleading standards articulated in *Twombly* apply in federal court regardless of whether the claim alleged is based on state or federal law. *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1025 (N.D. Cal. 2007) (applying *Twombly* to dismiss Cartwright claim because "federal pleading standards govern in federal court, even as to state claims"); *Advanced Microtherm Inc., v. Norman Wright Mech. Equip. Corp.*, No. C04-02266 JW, 2004 WL 2075445, at *8 (N.D. Cal. Sept. 15, 2004) (federal pleading standards govern Cartwright Act claims in federal court).  In any event, the California Supreme Court has already rejected the *exact same* argument Plaintiff makes here, *i.e.*, that the Cartwright Act (specifically, Cal. Bus & Prof. Code § 16756) obviates the need for specific allegations in civil antitrust cases. *See Chicago Title Ins. Co. v. Great Western Fin. Corp.*, 69 Cal. 2d 305, 316-18 (1968) (rejecting argument that under

---

[1] The one case Plaintiff cites for the proposition that a bare allegation of a conspiracy is sufficient to survive a motion to dismiss is *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 212 (1959). *Klor's* does not support Plaintiff's position, the complaint in that case specifically identified the manufacturers with whom the plaintiff alleged the defendant conspired. *Id.* at 209 n.2.

§ 16756 general allegations are sufficient in a civil antitrust action and demanding a high degree of particularity in the pleading of Cartwright Act violations).

Plaintiff next tries to water-down Rule 8's pleading standards by arguing that *Twombly* does not require detailed factual allegations. The Court need not determine the precise level of detail required under Rule 8 because Plaintiff admittedly has offered *no* factual allegations to support its claim of a horizontal conspiracy. There is no dispute among courts that a plaintiff cannot survive a motion to dismiss by simply asserting "a bare allegation of a conspiracy." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008);[2] *see also Floors-N-More, Inc. v. Freight Liquidators*, 142 F. Supp. 2d 496, 501 (S.D.N.Y. 2001) (an antitrust plaintiff "must do more than allege the existence of a conspiracy—it must allege some facts in support of the claim."). Plaintiff grumbles that "a reading of the FAC shows Defendants are simply mischaracterizing its contents," (Opp. at 18), but Plaintiff fails to offer a single citation to the FAC showing that it used more than labels and conclusions to allege the existence of a horizontal agreement. Given that the FAC fails to identify the alleged conspirators or describe when and how the conspiracy was formed, the terms and duration of the conspiracy, or the role the Sunham Defendants played in orchestrating it, Plaintiff's omission is unsurprising.[3]

### 2. As This Court Already Held, Vertical Agreements Are Analyzed Under The Rule of Reason

Disregarding the Court's prior Order that clearly held that "vertical non-price restraints are tested under the rule of reason," (Order at 2), Plaintiff argues that "[e]ven if the

---

[2] Plaintiff attempts to distinguish *Kendall* on the basis that the district court "allowed appellants to conduct discovery so they would have the facts they needed to plead an antitrust violation in their amended complaint." *Id.* at 1046. But the Ninth Circuit's decision in *Kendall* did not suggest that different standards apply to motions to dismiss that are brought after the plaintiff has been given an opportunity to conduct early discovery. The Court must review the sufficiency of the FAC based on the face of the pleading, applying the standards, like *Kendall*, that are controlling in this Circuit.

[3] Plaintiff also attempts to distinguish *Twombly* on the basis that it involved allegations of parallel conduct in addition to allegations of a direct agreement. As Defendants explained in the Motion, courts since *Twombly* have explicitly recognized that "[i]f a conclusory allegation of agreement is not sufficient even when supported by facts demonstrating parallel conduct, such an allegation cannot be sufficient . . . where no parallel conduct or ay other factual context is alleged." *International Norcent Tech. v. Koninklijke Philips Electronics, N.V.*, No. CV07-00043 MMSSX, 2007 WL 4976364, at *10 (C.D. Cal. Oct. 29, 2007).

1  Court finds [Plaintiff] alleged a vertical agreement, that agreement should nonetheless be judged

2  under the *per se* standard." (Opp. at 16). Plaintiff's argument is in direct conflict with the

3  controlling law that the Court cited in its Order, which provides that where a claim is based upon

4  an alleged group boycott, a *per se* analysis is appropriate only if the boycott "involv[es]

5  horizontal agreements among direct competitors." *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128,

6  135 (1998); *see also Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1092 (9th Cir.

7  2000) (*per se* rule for group boycotts does not apply to agreements between non-competitors).

8         Despite the Court's clear ruling, Plaintiff argues that the purported letter the

9  Sunham Defendants allegedly sent to the unnamed Chinese suppliers (non-competitors of the

10  Sunham Defendants) qualifies as a *per se* restraint. The only case Plaintiff cites that applied a *per*

11  *se* rule in the absence of a horizontal agreement is *Peters v. Saunders*, 58 Cal Rptr. 2d 690 (1996).

12  This case is contrary to *NYNEX* and was de-published by the California Supreme Court. Plaintiff

13  also relies on *Bert G. Gianelli Distrib. Co. v. Beck & Co.*, 172 Cal. App. 3d 1020 (1985), a case in

14  which the court found that the plaintiffs <u>failed</u> to state a *per se* antitrust violation. In reaching that

15  conclusion, the court noted that when a competitor uses its "*economic power or position* to

16  influence the manufacturer to act" for the competitor's own benefit, a vertical restraint may be

17  considered a *per se* violation. *Id.* at 1047 (emphasis added). As demonstrated in the Motion and

18  below, Plaintiff has failed to show that the Sunham Defendants possess market power in any

19  appropriately defined relevant market. There is no authority supporting—and plenty of authority

20  contradicting—Plaintiff's theory that an allegation that a firm had an anticompetitive purpose for

21  entering into a vertical agreement is sufficient to state a *per se* antitrust violation.

22         These principles are underscored by the Supreme Court's observation that "the *per*

23  *se* approach has generally been limited to cases in which firms with market power boycott

24  suppliers or customers in order to discourage them from doing business with a competitor."

25  *F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 458 (1986). Seizing upon the word

26  "generally," (Opp. at 19), Plaintiff ignores the underlying rationale behind this rule: Unless a

27  firm has market power, it will be unable to successfully coerce other firms to act against their

28  own interests. It makes little sense to apply the *per se* rule to situations—such as where a firm

1    without market power has entered into a vertical agreement with a non-competitor—that are

2    unlikely to be anticompetitive.

3    **B.    E&E's Complaint Fails to State A Claim Under the Rule of Reason**

4         1.    **Plaintiff Has Failed To Allege A Legally Cognizable Relevant Market**

5         The antitrust analysis begins with the identification of a "legally cognizable

6    'relevant market'." *Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1044 (9th Cir.

7    2008). A motion to dismiss is properly granted where a plaintiff fails to allege a properly defined

8    relevant market: "Where the plaintiff fails to define its proposed relevant market with reference

9    to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed

10   relevant market that clearly does not encompass all interchangeable substitute products even

11   when all factual inferences are granted in plaintiff's favor, the relevant market is legally

12   insufficient and a motion to dismiss must be granted." *Queen City Pizza, Inc. v. Domino's Pizza*,

13   124 F.3d 430, 436-38 (3d Cir. 1997) (citing *U.S. v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377,

14   395 (1956)); *see also Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d. Cir. 2001) (citations omitted).

15   The relevant market is defined as "all products 'reasonably interchangeable for the same

16   purposes,'" because the ability of consumers to switch to a substitute restrains a firm's ability to

17   raise prices above the competitive level. *Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*, 386

18   F.3d 485, 496 (2d Cir. 2004) (citing *du Pont*, 351 U.S. at 395).

19         Here, Plaintiff claims to have alleged a relevant market consisting of "(1) mid-

20   quality, low-cost, top-of-the-bed linens, (2) manufactured in China, (3) sold by intermediary

21   distributors based in the U.S. with presences and relationships with suppliers in China (such as

22   E&E and the Sunham Defendants), and (4) to bulk-purchaser, value-oriented, direct retailers or

23   warehouse stores in the United States." (Opp. at 21-22).[4] This market definition, which

24   improperly narrows the market in multiple ways, is facially unsustainable.

25         First, sorely misunderstanding the concept of interchangeability, Plaintiff defines

26   the product market as limited to mid-quality, low-cost, top-of-the-bed linens. "Interchangeability

27   _____

[4] Defendants do not agree that the FAC clearly provides this definition of the relevant market, but
28   will nevertheless accept it for the purposes of responding to Plaintiff's Opposition.

implies that one product is roughly equivalent to another for the use to which it is put; while there may by some degree of preference for the one over the other, either would work effectively." *Queen City*, 124 F.3d at 437 (citation omitted).  In *Cupp v. Alberto-Culver USA, Inc.*, the court rejected as "insufficient and fatally vague" the plaintiff's attempt to define the relevant product market as "exclusive salon hair products … those sold exclusively through salons under the advice of professional hair stylists."  310 F. Supp. 2d 963, 970-71 (W.D. Tenn. 2004).  The court observed that the plaintiff offered no allegation of which hair care products brands are interchangeable, no explanation of why the market is limited to only those hair care products sold in salons, and no indication of the breadth of the hair product category.  *Id.* at 971-72; *see also Re-Alco Indus., Inc. v. Nat'l Ctr. For Health Educ., Inc.*, 812 F. Supp. 387, 391 (S.D.N.Y. 1993) (plaintiff failed to state a claim where it failed to allege facts regarding substitutes).  Likewise, in this case, Plaintiff offers no factual allegations regarding substitute products and fails to distinguish between apparently comparable products, such as bed covering products of higher and lower quality.  (Indeed, the FAC does not even explain what "mid-quality" means).  Nor does Plaintiff offer factual allegations regarding non-"bed covering product" substitutes like blankets.

Second, Plaintiff continues to insist that the relevant market is limited to bed covering products manufactured in China.  To survive a motion to dismiss, "[t]he geographic market must correspond to the commercial reality of the industry and must be economically significant."  *Eastern Food Services, Inc. v. Pontifical Catholic Univ. of Puerto Rico Serv. Ass'n, Inc.*, 222 F. Supp. 2d 131, 135-36 (D.P.R. 2002) (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 336 (1962)).  Plaintiff erroneously argues that "E&E and the Sunham Defendants, in their buying and selling of bed linens from China to the United States, are not in significant competition with those entities that buy and sell bed linens in any other two countries in world." (Opp. at 23).  To the contrary, Chinese manufacturers are in competition with manufacturers in every other country in the world to which their buyers can feasibly turn for alternative sources of supply.  Fatally, Plaintiff provides no explanation for why manufacturers in other countries do not have the "actual or potential ability to deprive [Chinese manufacturers] of significant levels of business."  *Newcal Indus.*, 513 F.3d at 1045.  Plaintiff's vague assertion that Chinese factories

1   offer "different designs [that] can be uniquely tooled," (FAC ¶ 4), is irrelevant to the antitrust

2   analysis, which focuses on whether consumers "in general might use such products

3   interchangeably," not on whether a "particular plaintiff" is prevented from purchasing certain

4   unique products. *Queen City*, 124 F.3d at 438.  Moreover, Plaintiff *never* even alleges in the FAC

5   that factories in other countries cannot match the so-called "distinct areas of specialization"

6   purportedly offered by some factories in China, much less provides a plausible explanation for

7   why that would be the case. *See McCabe Hamilton & Renny, Co., Ltd. v. Matson Terminals, Inc.*,

8   No. CIV.08-00080 JMS/BMK, 2008 WL 2437739, at *7 (D. Haw. Jun. 17, 2008) (rejecting

9   geographic market definition where plaintiff failed to explain whether services could be obtained

10   in other areas).

11        Third, Plaintiff's limitation of the market to purchases made by a sub-set of U.S.-

12   based distributors that resell their products to particular types of retailers lacks any economic

13   rationale.  As a matter of economics, it is immaterial to the unidentified Chinese manufacturers

14   where their customers resell the goods which they purchase from them.  The manufacturers have

15   the incentive to maximize their profits, not to have their goods resold in a particular geographic

16   market or at a particular type of retailer.  If a manufacturer in China can sell more product, at a

17   higher price, and/or on better terms to a distributor in Australia, it will gladly sell to it over the

18   American.  Plaintiff's market definition improperly conflates the market in which Plaintiff and

19   the Sunham Defendants act as *buyers* with the market in which they act as *sellers*.  Plaintiff has

20   alleged that the Sunham Defendants' conduct has restrained Plaintiff's ability to operate in the

21   market in which the parties purchase their supplies.  Thus, the market definition must focus on

22   "the 'area of effective competition'. . . where buyers [of Chinese bed covering products] can turn

23   for alternative sources of supply," *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir.

24   2001), not the geographic market where such buyers might resell their goods.

25        Finally, Plaintiff tries to justify its flawed market definition by relying on the

26   concept of submarkets.  As courts have consistently recognized, referring to the relevant market

27   as a "submarket" does not eliminate a plaintiff's obligation to satisfy all of the requirements of

28   alleging a legally sufficient relevant market, including recognizing the rule of reasonable

interchangeability.  "The term 'submarket' is somewhat of a misnomer, since the 'submarket'

analysis simply clarifies whether two products are in fact 'reasonable' substitutes and therefore

part of the same market."  *Geneva Pharms.*, 386 F.3d at 496; *see also* II B PHILLIP E. AREEDA &

HERBERT HOVENKAMP, ANTITRUST LAW, ¶ 533C (3D ED. 2007) ("Speaking of submarkets is both

superfluous and confusing in an antitrust case, where the courts correctly search for a 'relevant

market'—that is, a market relevant to the particular legal issue being litigated."); *United States v.*

*Oracle Corp.*, 331 F. Supp. 2d 1098, 1118-19 (N.D. Cal. 2004) (discussing "the rise (and fall) of

the 'submarkets' doctrine").  Plaintiff still needs to explain why the supposed market for mid-

quality, low-cost bedcoverings from China "is so wholly segmented from the available substitutes

that a rise in [their] price would not shift demand to some of the alternatives."  *E&L Consulting,*

*Ltd. v. Doman Indus. Ltd.*, 360 F. Supp. 2d 465, 473 (E.D.N.Y. 2005) (dismissing for failure to

define proper market).  No matter the label, Plaintiff has failed to plead a market that bears the

"'practical indicia' of an independent economic entity."  *Newcal Indus.*, 513 F.3d at 1051.

## 2. Plaintiff's Market Power Allegations Are Flawed

Plaintiff does not allege that the Sunham Defendants have market power in an

appropriately defined relevant market, which must include, *at a minimum*, the world market for

bed covering products, both of superior and inferior quality and pricing.  Plaintiff does not

dispute, as Defendants proved with judicially noticeable facts in their Motion, that the Sunham

Defendants lack market power in this billion dollar market as a matter of law.  (Mot. at 14-15).[5]

Even if the Court were to accept Plaintiff's flawed market definition, Plaintiff still

fails to properly allege market power.  Plaintiff simply relies on platitudes that focus on the

market in which the parties sell—rather than purchase—their goods.  (Opp. at 24) (reciting such

allegations as "the Sunham Defendants . . . are one of the three largest suppliers of bed quilts in

the United States").  The Ninth Circuit recently held that statements such as these are insufficient

to allege market power.  In *Rick-Mik Enterprises Inc. v. Equilon Enterprises, Inc.*, No. 06-55937,

---

[5] Plaintiff mistakenly asserts that Defendants argue that the Sunham Defendants do not have market power in the "global textiles market." (Opp. at 24).  To the contrary, Defendants provided judicially noticeable statistics specific to certain types of bed covering products.  (Mot. at 14).

1   2008 WL 2697793, at *6 (9th Cir. July 11, 2008), the plaintiff alleged that defendant Equilon

2   "rank[s] number one in the industry in branded gasoline stations." Rejecting this allegation as

3   "[un]specific," the Ninth Circuit described the type of allegations the plaintiff would need to

4   assert to allege market power:

> The complaint alleges nothing about, for example, what ***percentage*** of gasoline franchises are Equilon's (Shell/Texaco) as compared to other franchises like Chevron, Mobil, Marathon Oil, or Union 76. There are no factual allegations as to the ***percentage*** of gasoline retail sales that are made through *non*-franchise outlets. There are no factual allegations regarding the ***amount of power or control*** that Equilon has over prospective franchisees. There are no factual allegations regarding the relative difficulty of a franchisee to switch brands.

9   *Id.* (emphasis added).

10      No matter how the market is defined, Plaintiff has not made factual allegations like

11  these that plausibly demonstrate market power. There are no allegations about the percentage of

12  the Sunham Defendants' purchases in the relevant market or the amount of power the Sunham

13  Defendants have over the Chinese manufacturers. Because Plaintiff failed plausibly to allege that

14  the Sunham Defendants have market power, it failed to state a claim under the rule of reason.

15      **C.    Plaintiff Fails To Plead An Actionable Claim Under The UCL**

16          **1.    E&E Lacks Standing Under The UCL**

17      Arguing that the standard for obtaining restitution under the UCL is narrower than

18  the standing requirement under Cal. Bus. & Prof. Code § 17204, Plaintiff focuses exclusively on

19  two federal district court decisions that reach opposite conclusions on the issue. *Compare Walker*

20  *v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1172 (E.D. Cal. 2007) (finding UCL standing

21  requirement "should be construed identically" with requirement for showing entitlement to

22  restitution) *with G&C Auto Body, Inc. v. Geico Gen. Ins. Co.*, No. C. 06-04898 MJJ, 2007 WL

23  4350907, at *3 (N.D. Cal. Dec. 12, 2007) (finding standing requirements are different than the

24  standards for restitution). Plaintiff attempts to convince the Court that *G&C Auto Body* has the

25  better of the argument, but completely fails to acknowledge that the California courts have

26  already spoken on this issue. In *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798,

27  817 (2007), the California Court of Appeal unequivocally sided with *Walker* and interpreted

28

§ 17204's "loss of money or property"[6] requirement to mean that a plaintiff must be entitled to restitutionary relief in order to have standing to pursue a claim under the UCL: "Because remedies for individuals under the UCL are restricted to injunctive relief and restitution, the import of the [loss of money or property] requirement is to limit standing to individuals who suffer losses of money or property that are eligible for restitution." *See also Peterson v. Cellco P'ship*, No. G038728, 2008 WL 2536073 (Cal.App. 4th Dist. June 26, 2008) ("in the aftermath of Proposition 64, only plaintiffs who have suffered actual damage may pursue a private UCL action."). It is immaterial that *G&C Auto Body* reached a different result because California courts' interpretation of state law controls. *See Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1494 n.4 (9th Cir. 1996) ("In the absence of convincing evidence that the state supreme court would decide differently, a 'federal court is obligated to follow the decisions of the state's intermediate courts.'") (citations omitted). Plaintiff admitted in its opposition to the motion to dismiss its original complaint that is not eligible for restitution under the UCL (Docket No. 13, p.23 n.11) and does not plead an entitlement to such relief in its FAC. Thus, under *Buckland, Peterson*, and other controlling state authority, Plaintiff lacks standing under § 17204 to pursue injunctive relief and its UCL claim must be dismissed.

Not only does Plaintiff ignore the brightline rule articulated in *Buckland*, it ignores the steady line of California cases that denounce the proposition that standing under § 17204 may be predicated on speculative harm. In particular, Plaintiff disregards the narrow definition of § 17204's "injury in fact" requirement provided in *Hall v. Time, Inc.*—"an injury in fact is '[a]n ***actual or imminent invasion of a legally protected interest***, in contrast to an invasion that is ***conjectural or hypothetical***,'" 158 Cal. App. 4th 847, 853 (2008) (*citing* Black's Law Dictionary (8th ed. 2004) p. 801) (emphasis added)[7]—and instead tries to distinguish the case based on its

---

[6] California courts have made clear that the "injury in fact" and "loss of money or property" requirements under § 17204 are distinct. *See, e.g., Peterson v. Cellco P'ship*, 2008 WL 2536073, at *4 ("A private plaintiff must make a twofold showing: he or she must demonstrate injury in fact *and* a loss of money or property cased by unfair competition.") (emphasis in original).

[7] *Buckland* articulates a similarly strict definition of the "injury in fact" requirement: "an invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) 'actual or imminent, not "conjectural" or "hypothetical,"' [citations]." 155 Cal. App. 4th at 814.

facts.  Plaintiff makes no attempt to argue that its allegation of a hypothetical loss of sales and

profits satisfies this definition.  Moreover, Plaintiff ignores the three categories of allegations that

courts have determined satisfy the "injury in fact" requirement, which are limited to situations

where the plaintiff has "(1) expended money due to the defendant's acts of unfair competition . .

.; (2) lost money or property . . .; or (3) been denied money to which he or she has a cognizable

claim." *Id.* at 854 (citations to numerous cases omitted).  With respect to the first category,

Plaintiff does not allege that it expended any money due to the Defendants' alleged conduct.  As

to the second, Plaintiff's allegations of a hypothetical loss of unspecified sales do not substitute

for allegations it suffered an *actual* loss of any of its own money or property.  *See Huntingdon*

*Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal.App.4th 1228, 1262

(2005) (plaintiff has standing where complaint alleged she sustained actual damage to her own

real and personal property).  Plaintiff's allegations likewise fail to satisfy the third category

because the speculative harm Plaintiff pleads does not amount to a denial of money to which it

has a cognizable claim or entitlement.  *See Cappa v. CrossTest, Inc.*, Nos. A113327, A114548,

2008 WL 821637, at *7 (Cal. App. 1st Dist. Mar. 28, 2008) (plaintiff alleging unpaid wages had

standing); *Progressive West Ins. Co. v. Yolo County Super. Ct.*, 135 Cal. App. 4th 263, 269-270

(2005) (plaintiff had standing to sue insurance company that had sued him to recover settlement

monies).

Even the federal cases upon which Plaintiff relies do not support its argument that

a hypothetical loss of sales and profits can satisfy the limited standing requirements of § 17204.

Plaintiff mischaracterizes the plaintiff's alleged harm in *Certain Underwriters at Lloyd's, London*

*v. Real Estate Professionals Ins. Co.*, No. CV06-4783 CASJWX, 2007 WL 4249078 at *6 (C.D.

Cal. Nov. 26, 2007), as limited to "disruption of his business, lost profits [and] lost good will..."

(Opp. at 11).  Through its use of an ellipses, Plaintiff misleadingly eliminates the fact that the

plaintiff's allegations of harm also included out-of-pocket costs, which are not alleged here.

*Certain Underwriters*, 2007 WL 4249078 at *6 (alleging "substantial costs incurred in the

performance of unpaid legal services").  Plaintiff also places emphasis on *G&C Auto Body*, 2007

WL 4350907, but this case also fails to support Plaintiff's theory.  *G&C Auto Body* involved

claims by auto body repair companies that labor repair rate standards used by defendant insurance

companies were below reasonable rates. As a result, plaintiffs lost money *because* of defendants'

failure to pay plaintiffs' full rates and lost business *because* defendants actively steered customers

away from plaintiffs' shops. *Id.* at *3. The court found these harms had a "direct causal

connection to the acts that Plaintiffs contend constitute unlawful competition here." *Id.* In

contrast, Plaintiff cannot identify any actual sales or profits that it lost as a direct result of the

Sunham Defendants' alleged conduct. Instead, Plaintiff simply extrapolates that if the Sunham

Defendants did not enter into exclusive dealing arrangements with the unidentified Chinese

manufacturers and if the Sunham Defendants properly paid their taxes, Plaintiff's own sales

would increase. There is nothing in the FAC that supports this logical leap. Lastly, Plaintiff cites

*White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1083-84 (C.D. Cal. 2006), which involved the

preparation of consumer credit reports containing inaccurate information regarding plaintiffs'

debts. As a result, plaintiffs' credit reports were tainted and they suffered a loss of income. Even

if this case would pass scrutiny under the standard articulated in *Hall*, which is doubtful, it still

does not support the proposition that any allegation of loss profits—no matter how attenuated and

speculative—satisfies the standing requirements of § 17204. Moreover, Plaintiff's attempt to

distinguish a recent federal case which found standing to exist *only* because Plaintiff alleged

"more than an expectation of profit," *The Missing Link, Inc. v. ebay, Inc.*, No. C07-04487 RMW,

2008 WL 1994886, at *8 (N.D. Cal. May 5, 2008), ignores Plaintiff's own failure to do the same.

Despite *Hall*'s explicit rejection of allegations of harm that are "conjectural or

hypothetical," 158 Cal. App. 4th at 853, Plaintiff insists that the Court must accept its conclusory

allegations that it lost sales and business opportunities as a result of Defendants' alleged conduct.

But Plaintiff offers no factual support to demonstrate that its claim is based on anything more

than inappropriate speculation. For example, Plaintiff has not identified a single lost sale or a

single manufacturer who has refused to do business with Plaintiff as a result of Defendants'

alleged conduct. Instead, Plaintiff simply repeats the same conjecture from its original complaint.

(*see* Opp. at 5, FAC ¶ 49, Compl. ¶ 19) ("[Plaintiff] E&E has suffered competitive injury . . . in

the form of lost sales and lost business opportunities."). Having been given an opportunity to re-

1  plead, Plaintiff has confirmed that it does not have standing to pursue a claim under the UCL.

2  ### 2.  Plaintiff's UCL Claim Fails On The Merits

3  Not only does Plaintiff's entire UCL claim fail for lack of standing, Plaintiff's

4  claim also fails on the merits. As an initial matter, as the Court already found, Plaintiff's

5  failure to allege a Cartwright Act violation is fatal to its antitrust-premised UCL claim. (Order at 3).

6  The Court also already determined that Plaintiff's alternative theory regarding

7  unpaid tax obligations fails to state a claim under the unfairness prong of the UCL.[8]  *Id.*  This

8  ruling must stand, particularly because Plaintiff has alleged no new factual allegations in its FAC

9  relating to its tax theory. (*Compare* FAC ¶¶ 46-49 *with* Compl. ¶¶ 15-16, 19). Although Plaintiff

10  has tacked on a paragraph citing federal tax and conspiracy laws, the underlying factual

11  allegations supporting the theory are identical in the two pleadings. In particular, the main

12  paragraph describing the purported tax scheme in the FAC is copied virtually word-for-word from

13  the original complaint. (*See* FAC ¶ 46 and Compl. ¶ 15). Plaintiff's reassertion of this theory on

14  the same facts shows a blatant disregard for the Court's Order.

15  In any event, Plaintiff cites no authority supporting its argument that its tax-related

16  allegations satisfy the *Cel-Tech* definition of "unfairness." Instead, Plaintiff makes the

17  conclusory assertion that "[t]here is no more basic activity that violates the policy and spirit of the

18  UCL and that threatens and harms competition than the evisceration of competition through the

19  use of illegal methods." (Opp. at 14). But Plaintiff fails to cite a single case suggesting that

20  speculative allegations of an unfair competitive advantage are sufficient to state an unfairness

21  claim under the UCL. Plaintiff acknowledges that it needs to "show harm to competition," (*id.*),

22  but the FAC fails to put forth any factual support for this proposition. In *People's Choice*

23  *Wireless, Inc. v. Verizon Wireless*, 131 Cal. App. 4th 656, 668 (2005), the court found an

24  allegation that the defendant's "conduct indisputably reduces both consumer choice and price

25

26  [8] For the purposes of this Motion, Defendants did not argue that Plaintiff's tax-related allegations fail to state a claim under the "unlawful" prong of the UCL. Plaintiff cured the deficiency in its

27  prior pleading by citing numerous statutes which it claims Defendants violated. (FAC ¶ 48). Rather than arguing that Plaintiff failed to state a claim under each of these statutes, Defendants

28  rely on Plaintiff's lack of standing as the basis for dismissing this theory.

competition" insufficient to state a claim because the support plaintiff offered for this conclusion was unconvincing.  Here, Plaintiff offers no support whatsoever for its theory that competition has been harmed in the relevant market and its claim must be dismissed.

### D.   Plaintiff Fails To Show Sufficient Contacts To Support Personal Jurisdiction And Fails To Make A Showing That Jurisdictional Discovery Is Warranted

Howard Yung and Arthur Courbanou submitted sworn declarations establishing that they have no contacts with California that would warrant this Court's assertion of personal jurisdiction over them.  (Howard Yung Decl. ¶¶ 2-4; Arthur Courbanou Decl. ¶¶ 2-4). Notwithstanding these undisputed facts, Plaintiff claims that jurisdiction is present because of the "intentional nature" of the acts alleged in the FAC.  (Opp. at 25).  Even if the alleged acts were intentional, they were not "purposefully directed" at the residents of California.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).[9]  Thus, Plaintiff's reliance on *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 523 (9th Cir. 1989), a case interpreting Arizona's jurisdictional statute, is unavailing.  Not only does *Davis* interpret the law of a different forum, it involved shareholders who, unlike Messrs. Yung and Courbanou, purposefully directed their activities to residents of the forum state.  *Id.* (defendants accused of operating unlawful tax shelter met with Arizona resident to induce him to find Arizona investors).  In contrast, there are no allegations that Messrs. Yung or Courbanou met with California residents or otherwise purposefully directed the activities that gave rise to the purported injuries that are at issue in this litigation to California residents.   In any event, the only alleged acts attributed to Messrs. Yung and Courbanou are acts purportedly taken in their official capacities as agents of the Sunham Defendants.

Recognizing its failure to assert facts sufficient to establish jurisdiction, Plaintiff claims that it should be allowed to seek jurisdictional discovery into other hypothetical contacts Messrs. Yung and Courbanou may have with California.  Jurisdictional discovery may be granted only where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,

---

[9] Plaintiff does not contest that it fails to allege facts sufficient to sustain general jurisdiction over Messrs. Yung and Courbanou.

557 F.2d 1280, 1285 n.1 (9th Cir. 1977).[10]  For the following reasons, this Court should deny

Plaintiff's attempt to harass Sunham's high ranking officers with pointless and intrusive

discovery.

         *First*, Plaintiff fails even to *allege* the necessary facts to warrant personal

jurisdiction over Messrs. Yung and Courbanou.  *See* (FAC ¶ 19) (alleging that their contacts

consist of nothing more than "communicat[ing] and interact[ing] with California merchants,

employees, and salespeople on a routine or semi-routine basis.").   Alleged communications with

residents of the forum state on unrelated matters does not satisfy the test for specific jurisdiction.

Requests for jurisdictional discovery should be denied where the plaintiff "fail[s] to even allege

the necessary facts." *Robinson ex rel. Hunsinger  v. Daimlerchrysler AG*, No. 07-3258 SC, 2008

WL 728877, at *6 (N.D. Cal. Mar. 17, 2008).  *Second*, Plaintiff fails to make at least "a colorable

showing" that the Court can exercise jurisdiction over the defendants, which requires coming

"forward with 'some evidence' tending to establish personal jurisdiction over the defendant."

*Lovesy v. Armed Forces Benefit Assn.*, No. C07-2745 SBA, 2008 WL 696991, at *14 (N.D. Cal.

Mar. 13, 2008) (citation omitted).  *Third*, "Where a plaintiff's claim of personal jurisdiction

appears to be both attenuated and based on bare allegations in the face of specific denials made by

the defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy*,

453 F.3d 1151, 1160 (9th Cir. 2006).  *Fourth*, Plaintiff's request for jurisdictional discovery is

completely generic:  It fails to identify any topics on which it should be entitled to take discovery.

Thus, Plaintiff has "made no showing that any sworn testimony presented by defendants is

disputed, and [has] not pointed [to] any facts that, if shown, would warrant the exercise of

personal jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No.

C02-1486 PJH, et al, 2005 WL 2988715 (N.D. Cal. Nov. 7, 2005).

## III.   CONCLUSION

         For the reasons stated herein, the FAC should be dismissed with prejudice.

---

[10] Plaintiff's assertion—for which it offers no authority—that California procedure should govern
whether Plaintiff should be allowed to conduct jurisdictional discovery is patently wrong. *See
Data Disc*, 557 F.2d at 1285, n.1 (applying federal procedure for jurisdictional discovery in
diversity action).

1    Dated: July 18, 2008

Munger, Tolles & Olson LLP
GARTH T. VINCENT
AMY TOVAR


By: _____ /s/ Amy Tovar _____
                    AMY TOVAR

Attorneys for Defendants
KAM HING ENTERPRISES, INC.;
SUNHAM HOME FASHIONS, LLC;
HOWARD YUNG; and ARTHUR
COURBANOU