IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E&E CO., LTD., a California corporation, | No. C-08-0871 MMC |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| KAM HING ENTERPRISES, INC., et al. | |
| Defendants. | |

Before the Court is the motion filed June 13, 2008 by defendants Kam Hing Enterprises, Inc., Sunham Home Fashions, LLC (hereafter, collectively, "Sunham Defendants")[1], Howard Yung ("Yung"), and Arthur Courbanou ("Courbanou") to dismiss plaintiff's First Amended Complaint ("FAC") pursuant to Rules 12(b)(6) and 12(b)(2) of the Federal Rules of Civil Procedure. Plaintiff E&E Co., Ltd. has filed opposition, to which defendants have replied. Having considered the parties' submissions in support of and in opposition to the motion, the Court finds the matter appropriate for resolution without oral argument, and rules as follows.

---

[1] In the First Amended Complaint, plaintiff refers to the two entities collectively as "Sunham Defendants." (See FAC ¶ 10.) Defendants, while noting that Ham King Enterprises, Inc. and Sunham Home Fashions, LLC are "distinct entities with separate business operations," (see Mot. at 1 n.2), have adopted plaintiff's terminology for purposes of the instant motion, (see id.).

Previously, on March 7, 2008, defendants moved to dismiss plaintiff's original Complaint pursuant to Rules 12(b)(6) and 12(b)(2), which motion was granted in part,[2] and the complaint dismissed with leave to amend to cure the deficiencies noted by the Court. (See Order filed April 29, 2008 at 3:15-19.) Plaintiff subsequently filed its FAC, the pleading that is the subject of the instant motion; such pleading, however, remains deficient, as set forth below.

As a preliminary matter, the Court finds the sufficiency of the instant pleading is governed by federal law rather than state law. See, e.g., Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC, --- F.3d ----, 2008 WL 2697793 * 5 (9th Cir. 2008) (evaluating sufficiency of pleading, with respect to California state law antitrust claims as well as federal antitrust claims, under federal pleading standards); see also In re Graphics Processing Units Antitrust Litigation, 527 F.Supp.2d 1011, 1025 (N.D. Cal. 2007) (noting "[f]ederal pleading standards govern in federal court, even as to state claims"). Further, "[a]t least for the purposes of adequate pleading in anti-trust cases, the Court [in Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955 (2007)] specifically abrogated the usual 'notice pleading' rule," see Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 n.5 (9th Cir. 2008), and held that, in order to state an antitrust claim, a complaint must include "enough factual matter (taken as true) to suggest that an agreement was made," see Twombly, 127 S.Ct. at 1965.

With respect to plaintiff's claim under California's Cartwright Act, Cal. Bus. & Prof. Code § 16700, et seq. (hereafter "Cartwright Act"), plaintiff's allegations in the FAC again fail to state a claim for either a horizontal or vertical agreement in violation of such Act.

First, plaintiff has failed to allege a group boycott among direct competitors, see, e.g., NYNEX Corp v. Discon, Inc., 525 U.S. 128, 135 (1998) (holding group boycott

---

[2] The motion was denied in part to the extent defendants moved to dismiss defendants Yung and Courbanou pursuant to Rule 12(b)(2), without prejudice to defendants refiling such a motion in the event either Yung or Courbanou was named in an amended complaint. (See Order filed April 29, 2008 at 3:20-23.) Plaintiffs subsequently named Yung and Courbanou as defendants in the FAC and defendants have, in the instant motion, again moved to dismiss Yung and Courbanou pursuant to Rule 12(b)(2).

1 constitutes per se violation of antitrust law only if boycott "involv[es] horizontal agreements
2 among direct competitors"), whether under a "hub and spoke" theory or any other theory,
3 which allegation would constitute a per se violation of the Cartwright Act. In particular, as
4 discussed below, plaintiff fails to allege any facts regarding an agreement between
5 competitors, much less "enough factual matter . . . to suggest that an agreement was
6 made," see Twombly, 127 S.Ct. at 1965.

       Plaintiff alleges that the Sunham Defendants sent a letter to unidentified "key suppliers," (see FAC ¶ 24), reminding the recipients that "[e]xclusive cooperation is the precondition to partnership" with said defendants. (See id. ¶ 25.) Such allegation does not suffice to plead an agreement. Plaintiff's additional allegation that "manufacturers and/or designers of home textile goods in China . . . have conspired with the Sunham Defendants, and amongst each other," (see FAC ¶ 27), is insufficient to remedy the above-noted deficiency, as such allegation is conclusory and plaintiff does not otherwise allege facts to support an agreement among competitors, see Twombly, 127 S.Ct. at 1965-66 (holding "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"). Plaintiff's citation to Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207 (1959), is unavailing, for the reason that the pleading at issue therein identified ten appliance manufacturers who were alleged to be involved in the conspiracy, see id. at 209 n.2; plaintiff's FAC fails to provide a similar degree of factual specificity. Further, to the extent plaintiff argues the FAC contains "independent allegations" of an actual agreement, (see Opp'n at 19:3-7), plaintiff cites only to paragraph twenty of the FAC, in which no agreement among third-parties is referenced.[3]

       Contrary to plaintiff's argument that § 16756 of the California Business and Professions Code permits less detailed pleading to state a claim based on a group boycott theory, and assuming, arguendo, such pleading standard is applicable, such provision does

---

[3] Paragraph 20 of the FAC states, in its entirety:
    "On information and belief, in an effort to maintain their market share against competitors such as [plaintiff], Defendants engage in certain illegal and/or unfair business practices." (FAC ¶ 20.)

3

1 not obviate the need for specific factual allegations.  See Chicago Title Ins. Co. v. Great
2 Western Financial Corp., 69 Cal.2d 305, 317-18 (1968) (holding that, notwithstanding the
3 provisions of § 16756, "[g]eneral allegations of the existence and purpose of the conspiracy
4 are insufficient and [plaintiff] must allege specific overt acts in furtherance thereof").

5       Plaintiff similarly fails to allege facts sufficient to state a claim for vertical restraint of
6 trade.  Plaintiff alleges, for example, that "the Sunham Defendants demand exclusive
7 dealing arrangements with various manufacturers in China."  (See FAC ¶ 35.)[4]  Plaintiff
8 fails, however, to identify any entity or individual with whom the Sunham Defendants are
9 alleged to have entered an agreement,[5] the time at which such agreement was allegedly
10 entered, or the place at which the alleged agreement was entered.  See Twombly, 127
11 S.Ct. at 1970 n.10 (expressing doubt that complaint's references to "an agreement" would
12 have satisfied federal pleading standard, where "pleadings mentioned no specific time,
13 place, or person involved in the alleged conspiracies" and "furnishe[d] no clue as to which
14 of the [alleged conspirators] (much less which of their employees) supposedly agreed, or
15 when and where the illicit agreement took place").

16       Moreover, plaintiff has again failed to adequately define the relevant market, and to
17 adequately allege the Sunham Defendants have market power within such market, see,
18 e.g., Tanaka v. University of Southern California, 252 F.3d 1059, 1062-63 (9th Cir. 2001)
19 (affirming dismissal where plaintiff failed to identify "appropriately defined" market and failed
20 to allege defendant's conduct had "significant anticompetitive effects within a relevant
21 market, however defined"), which deficiencies were previously noted by the Court,
22 //
23 //

---

25,26     [4] Exclusive dealing arrangements are not evaluated as a "per se" violation of antitrust laws, but rather under the "rule of reason."  See Omega Envtl., Inc. v. Gilbarco, Inc., 127 F.3d 1157, 1162 (9th Cir. 1997).

27,28     [5] Indeed, plaintiff acknowledges that "[t]he true names and capacities of . . . the suppliers, designers and manufacturers who have coordinated with the Sunham Defendants in boycotting Plaintiff . . . are unknown to the Plaintiff."  (See FAC ¶ 14.)

4

(see Order filed April 29, 2008 at 2:13-21).  First, with respect to market definition,[6] plaintiff, without factual support therefor, attempts to limit the relevant market by reference to the location of suppliers in China.  Specifically, plaintiff fails to indicate why similar bed coverings originating from other countries would not be "reasonably interchangeable by consumers for the same purposes."[7]  See United States v. E.I. du Pont de Nemours and Co., 351 U.S. 377, 395 (1956) (holding relevant market is defined by "commodities reasonably interchangeable by consumers for the same purposes" as subject product; finding, where product was cellophane, relevant product market was "flexible packaging material market").  Further, with respect to market power, plaintiff's allegations that the Sunham Defendants "sell several or tens of millions of dollars of home bedding textile products to retail stores in California each year," (see FAC ¶ 17), "are among the largest importers of Chinese[-]made bed coverings in the United States," (see id. ¶ 38), and "are one of the three largest suppliers of bed quilts in the United States," (see id.), are insufficient.[8]  See, e.g., Rick-Mik Enterprises, 2008 WL 2697793 at *6 (finding, where gasoline franchises constituted relevant product market, allegation that defendant "rank[s] number one in the industry in branded gasoline stations" did not suffice to allege market power, absent further factual allegations as to, for example, percentage of gasoline franchises owned by defendant as compared to other branded franchises, "percentage of gasoline retail sales . . . made through non-franchise outlets," and "relative difficulty of a

---

[6] Plaintiff alleges "the specific market at issue in this case concerns the distribution channel through which top-of-the-bed linens, such as quilts, duvets, coverlets, and other such bed coverings that are manufactured in China, are imported/distributed into the United States."  (See FAC ¶ 2.)  Plaintiff further alleges that "the market affected by defendants['] unlawful conduct consists of these mid-quality, low-cost bed coverings that are sold by intermediaries such as Plaintiff to bulk-purchaser, value-oriented, directed retailers (e.g., Target, Mervyns) or warehouse stores (e.g., Sam's Club, Costco), who, in turn, ultimately resell such products to American consumers."  (See id.)

[7] Plaintiff does not allege, for example, that the geographic origin of the products at issue is in any manner significant to the relevant consumers.

[8] The Court's ruling in this regard is not based on any evidence for which defendants sought judicial notice.  Consequently, the Court does not reach the parties' arguments with respect to the propriety of the Court's taking such notice.

1  franchisee to switch franchise brands").

2  Defendants argue plaintiff should be provided no further leave to amend. As the
3  FAC constitutes plaintiff's first effort to plead a vertical agreement and a relevant market,
4  however, the Court will afford plaintiff another opportunity to plead its claims under the
5  Cartwright Act.

6  With respect to plaintiff's claim under the California Unfair Competition Law, Cal.
7  Bus. & Prof. Code § 17200, et seq. (hereafter "UCL"), plaintiff's allegation that defendants'
8  "wrongful conduct has injured Plaintiff by causing Plaintiff to lose sales and business
9  opportunities," (see FAC ¶ 45), which allegation the court takes as true for purposes of the
10 instant motion, is sufficient, at this stage of the proceedings, to establish plaintiff's standing
11 for seeking injunctive relief. See Cal. Bus. & Prof. Code § 17204 (providing UCL action for
12 injunctive relief may be brought "by any person who has suffered injury in fact and has lost
13 money or property as a result of the unfair competition"); see also White v. TransUnion,
14 LLC, 462 F.Supp.2d 1079, 1084 (C.D. Cal. 2006) (holding allegation that plaintiffs "have
15 suffered . . . loss of money or property" sufficient to establish standing under UCL; noting,
16 under UCL, standing for injunctive relief "does not require that the losses in question were
17 the product of the defendant's wrongful acquisition of the plaintiff's property").[9]  Plaintiff's
18 allegations are, however, as set forth above, insufficient to state a claim under the "unfair"
19 prong of the UCL, for the reason that plaintiff has failed to allege a violation of the
20 Cartwright Act. See Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone
21 Co., 20 Cal.4th 163, 187 (1999) (holding, for purposes of UCL, "'unfair' means conduct that
22 threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of
23 //
24 //
25 //

26
27  [9] Defendant's reliance on Buckland v. Threshold Enterprises, Ltd., 155 Cal.App.4th 798 (2007) is unavailing, for the reason that the court explicitly limited its conclusion therein to the facts of that case, "which involve[d] an individual who voluntarily [bought] a
28  defendant's product to pursue a UCL action in the public interest," see id. at 818 n.11.

those laws").[10]

Lastly, because the Complaint will be dismissed for failure to state a claim, the Court again does not reach defendants' alternative argument that the claims against individual defendants Yung and Courbanou are subject to dismissal for lack of personal jurisdiction, and, consequently, does not address at this time plaintiff's request for jurisdictional discovery.

Accordingly, for the reasons stated above:

1. Defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(6) is GRANTED, and the Complaint is DISMISSED with leave to amend to cure the above-noted deficiencies. Any amended complaint must be filed no later than September 22, 2008.

2. Defendants' motion to dismiss defendants Yung and Courbanou pursuant to Rule 12(b)(2) is DENIED, without prejudice to defendants' refiling such motion, in the event either Yung or Courbanou is named in a Second Amended Complaint. Plaintiff's request to conduct jurisdictional discovery likewise is DENIED without prejudice.

**IT IS SO ORDERED.**

Dated: August 25, 2008

MAXINE M. CHESNEY
United States District Judge

---

[10] Defendant does not argue plaintiff's allegations are insufficient under the "unlawful" prong of the UCL, (see Reply at 13 n.8), and plaintiff has not alleged a violation of the UCL under the "fraudulent" prong, (see FAC ¶ 50).

7